Michael S. Devereux  (State Bar No. 225240)
WEXFORD LAW
468 N. CAMDEN DRIVE, SUITE 200
BEVERLY HILLS, CALIFORNIA  90210
TELEPHONE: (424) 444-0883

Attorney for Defendant, MICHAEL MIRANDO

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>    v.<br><br>MICHAEL MIRANDO,<br><br>                    Defendant. | Case No.:<br>[CR 16-00215-PA]<br><br>MEMORANDUM IN SUPPORT OF MICHAEL MIRANDO'S 28 U.S.C.§ 2255 MOTION |

Michael Mirando, by and through his counsel, Michael Devereux, Esq., hereby respectfully submits this memorandum in support of his motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C.§ 2255.

DATED: June 5, 2023                    Respectfully submitted,


By *Michael Devereux*
Michael Devereux
Attorney for Michael Mirando

# Table of Contents

I. INTRODUCTION ................................................................................................ 4

II. JURISDICTION ............................................................................................... 6

III. BACKGROUND .............................................................................................. 7

    A.  Procedural History ..................................................................................... 7

    B.  Custody Status .......................................................................................... 8

    C.  Factual Background ................................................................................... 8

    D.  Despite retaining an expert several months before trial, the final expert report wasn't completed until months after trial ............................................... 10

    E. Trial counsel refused or failed to interview software developer ............... 11

    F. Trial counsel did not preserve the trial file for this case ........................... 12

IV. CLAIMS AND ARGUMENT ........................................................................ 12

    A.    Trial Counsel refused to let the Defendant testify ................................ 12

    B.    Trial counsel, ignorant of both governing law and critical facts, was pervasively ineffective, prejudicing Mr. Mirando ................................. 14

    C.    Trial counsel made several other unprofessional errors that further diminished, individually and in combination, the chances of an acquittal. ......... 19

    D.    Trial counsel was pervasively unprepared. ......................................... 20

V. CONCLUSION ................................................................................................ 22

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WEXFORD LAW

# TABLE OF AUTHORITIES

## CASES

*Hernandez v. Chappel*, 923 F.3d 544, 549 (9th Cir. 2019)..................................................13, 15

*Hinton v. Alabama*, 571 U.S. 263, 274 (2014 .........................................................................14

*Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986)................................................................15

*Maleng v. Cook*, 490 U.S. 488, 491 (1989)…..…………………………………….. .................6

*Matus-Leva v. United States*, 287 F.3d 758, 761 (9th Cir. 2002). .............................................6

*United States v. Edwards*, 897 F.2d 445, 446 (9th Cir. 1990), ...................................................12

*United States v. Joelson,* 7 F.3d 174, 177 (9th Cir. 1993) .........................................................12

*United States v. Martinez,* 883 F.2d 750, 756 (9th Cir.1989), ...................................................12

*United States v. Stever*, 603 F.3d 747, 755 (9th Cir. 2010) ......................................................16

*US v. Strickland*, 466 U.S. 668 (1984)................................................................................6, 13

## STATUTES

*18 U.S.C.§ 1347* ......................................................................................................................7

*28 U.S.C. § 2255* .....................................................................................................................6

# I. INTRODUCTION

This petition challenges a triply tainted conviction. It presents violations of the Sixth Amendment of the defendant's right to testify, and of *Strickland* on the part of defense counsel. It asks this Court to vacate Mr. Mirando's conviction as a result.

The cases arises from an Indictment alleging that beginning in 2005, Mr. Mirando as a member and owner of Holter Labs, LLC, would bill insurance companies for services that Holter Labs could not and did not perform. (Although, this allegation was wrong and unsupported by Medicare. (APP 012-015.) In addition, Indictment alleged that Mr. Mirando submitted invoices to insurance companies for services that the Holter Labs could perform but did not perform.

Further, the Indictment alleged that Mr. Mirando submitted or caused to be submitted, approximately $6 million in fraudulent claims, resulting in a payment of a little over $2 million by the various insurance companies.  (Again, the allegation was misleading and inaccurate as later indicated months after trial, when the expert witness, that was retained months before trial, provided the final expert report. APP 172-173, ¶ 9.)  Furthermore, the indictment alleged fifteen individual actions of fraud involving three insurance companies and four patients amounting to $10,245.  Although Stanton Crowley, Mr. Mirando's partner and co-owner of

4

Holter Labs, LLC was referenced in the Indictment by his initials, Mr. Mirando was the only individual charged.

Several sets of failings by Mr. Mirando's trial attorney impeded fair adjudication at trial.

First, was the defendant's right to testify which was relinquished not by the defendant, but determined, *not advised*, by his attorney that the defendant would not testify. The defendant, Mr. Mirando, would have testified to a variety of matters, including the credibility of informant Stanton Crowley.  Moreover, Mr. Mirando would have shown that the codes accused of being fraudulent on the device, was indeed authorized by medicare prior to the matter, thus negating the willful element of the charge(s).

Second, defense counsel did not display an understanding of the case and so did not establish a defense based upon the credibility of Stanton Crowley, nor argue the exculpatory findings of the expert witness retained by Mr. Mirando.

Third, despite the expert being retained in late January, no motion was made by defense counsel to continue the trial.  The expert report, meaningful and favorable to the defense, was not available until months after the trial.

Fourth, defense counsel refused or failed to investigate the matter, specifically the software developer that maintained the software that interfaced with the

5

hardware – which was meaningful because the software developer's testimony would have impeached the testimony of the hardware vendor.

Instead defense counsel put an erroneously high burden upon himself, ignoring key facts and refused or failed to establish a defense, the fundamental element to due process of law.  In doing such, trial counsel turned a strong defense into an unprepared effort.  The aforementioned and the following related failings, violate *Strickland*.[1]

This is a case, then, about a trial tainted with three several sets of constitutional violations, each and all of which "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles v. Whitley*, 514 U.S. 419, 435 (1995). This Court should grant Mr. Mirando's request for post-conviction relief and vacate his conviction.

## II. JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 2255 because Mr. Mirando is on supervised release, which satisfies the statute's "in custody" requirement. See

---

[1] *US v. Strickland*, 466 U.S. 668 (1984)

6

*Maleng v. Cook*, 490 U.S. 488, 491 (1989); *Matus-Leva v. United States*, 287 F.3d 758, 761 (9th Cir. 2002).

### III. BACKGROUND

#### A.  *Procedural History*

Michael Mirando was tried for healthcare fraud pursuant to *18 U.S.C.§ 1347*. The trial began on April 26, 2017. (ECF[2] 46.) The jury found Mr. Mirando guilty, and so the Court sentenced Mr. Mirando to 97 months. (ECF 102.) In addition, Mr. Mirando forfeited the family home. (ECF 99.)  Further, Mr. Mirando was ordered to pay restitution in the amount of $3,025,329.47.  (ECF 101.)

The Ninth Circuit remanded the matter for sentencing. (ECF 135.) Prior to resentencing the government offered a reduce plea if Mr. Mirando would waive appeal of sentence and any collateral attack.  (ECF 148.)   At resentencing, Mr. Mirando received a sentence of 87 months, three years supervised release. (ECF 156.) The Ninth Circuit affirmed that conviction on October 25, 2021. (ECF 177.) The matter was denied cert by the US Supreme Court on June 6, 2022.

---

[2] ECF refers to the docket number for items in criminal matter, CR 16-00215-PA.

1

*WEXFORD LAW*

### B. *Custody Status*

Mr. Mirando is presently on supervised release. His prison term ended on June 22, 2022, and his three-year supervised-release term then began. *See* Declaration of Michael Mirando, ¶ 3.

### C. *Factual Background*

At trial, the government presented testimony from four physicians who ordered Holter monitors for four individual patients. (APP[3] 0682-0701; 4/27/2017 RT 9-28; APP 0715-0734; 4/27/2017 RT 42-61; APP 0800-0819; 4/27/2017 RT 127-146; APP 0833-0848; 4/27/2017 RT 160-175.) All of the physicians testified that they ordered the individual patients to wear the monitors for 24-hour periods. (APP 685; 4/27/2017 RT 12; APP 0718-0719; 4/27/2017 RT 45-46; APP 0802-0803; 4/27/2017 RT 129-30; APP 0834; 4/27/2017 RT 161.) One of the physicians testified that Holter monitors can be worn for up to thirty days. (APP 0803; 4/27/2017 RT 130.) The government presented the testimony of four individual patients, all of whom testified that they wore the Holter monitors for one or two days. (APP 0807; 4/26/2017 RT 134; APP 0704-0705; 4/27/2017 RT 31-32; APP 0791-0792; 4/27/2017 RT 118-119; APP 0826; 4/27/2017 RT 153.) None of the

---

[3] All exhibits for this § 2255 petition have been placed into a consecutively Bates-numbered Appendix. Citations to the Appendix will appear as "App." followedby the Bates number for the page cited. The Appendix contains extensive PDF bookmarks to make items easier to locate.

8

doctors or patients testified about ever having any direct contact with Mr. Mirando.

Stanton Crowley, the co-founder and co-owner of Holter Labs, was the government's chief witness against Mr. Mirando. Although Mr. Crowley had previous experience with Holter monitors and medical billing (unlike Mr. Mirando), Mr. Crowley testified that Mr. Mirando was in charge of the company's billing. (APP 889; 4/27/2017 RT 216.) Mr. Crowley then placed responsibility for the scheme at Mr. Mirando's feet, and Mr. Crowley was the only witness who provided any insight into operations at Holter Labs. Trial counsel attempted to cross-examine Mr. Crowley regarding Mr. Crowley's own criminal liability and motivation for testifying, but was prevented from doing so by the district court. (APP 1023-1031; 4/28/2017 RT 115-123.)

Federal Bureau of Investigation Special Agent Kathleen Kennedy testified about the scope of the alleged scheme, which she estimated involved $10.3 million in fraudulent billing by Holter Labs, with corresponding payments totaling $3.5 million. (APP 1064; 4/28/2017 RT 156.) Ms. Kennedy testified that the government's loss estimate was based in part on Google searches and reviewing insurance company web sites. (APP 1040; 4/28/2017 RT 132.) Mr. Mirando, who

demanded to testify at trial, was repeatively informed that he could not testify at

trial by trial counsel. (Declaration of Michael Mirando, ¶ 4, APP 097, APP 130.

**D.  Despite retaining an expert several months before trial, the final expert report wasn't completed until months after trial**

On or about January 27, 2017, Michael F. Arrigo, was retained as an expert

to provide a report on over 60,000 pages of documents produced by the

government. APP. 016-089. On March 1, 2017, a rough six-page, first draft of

preliminary findings, was produced by the expert. APP. 091-096. There are no

further reports discovered in trial counsel's possession. *See* Declaration of Michael

Devereux, ¶¶ 5-7.

On or about April 3, 2017, the government offered a plea deal.  APP. 103-

104.  Trial counsel proffered a legal opinion to the defendant that based upon what

trial counsel has learned from reviewing discovery, he advised Mr. Mirando that he

liked the odds of trial. APP. 104.  The plea deal was rejected.

On or about April 12, 2017, trial counsel informs Mr. Mirando that the expert

report is incomplete and verifies that the expert will not be testifying.  APP 108.

Trial counsel demands to be paid the balance of the $100,000 retainer. APP 106.

Trial begins on April 26, 2017 -- trial counsel does not have a final copy of

the expert report since it isn't produced to months later.   APP 175.  In addition,

10

there is no documentation or notes between trial counsel and the expert witness. *See* Declaration of Michael Devereux, ¶¶ 5-7.

On October 9, 2017, the expert witness provides the final expert report to the sentencing attorney, Mr. Ed Robinson. APP 171-337. The final expert report provides a tremendous amount of exculpatory information which is discussed below. *See infra section IV(B).*

### E. Trial counsel refused or failed to interview software developer

At trial, the government called witness Jon Barron, owner of Datrix, LLC, the hardware manufacturer of ambulatory cardiac monitors. Mr. Barron testified to the limited functionalities of the hardware in an effort to attack the credibility of the billing from Holter Labs, LLC. (APP 631-652; 4/26/2017 RT 140-161.) Mr. Jim Brown, creator of the software used to compile the Holter reports, would have testified that government's testimony in regards to the limits of the hardware functionality was inaccuate and misleading. However, trial counsel refused or failed to interview or meet with the software developer. Moreover, trial counsel refused or failed to call the software developer at trial to rebut the government's testimony.

11

1

WEXFORD LAW

***F. Trial counsel did not preserve the trial file for this case.***

Trial counsel did not preserve his trial file for this case. Declaration of

Michael Devereux, ¶ 5. This has required post-conviction counsel to attempt to

reconstruct relevant parts of the trial file independently. Counsel contacted several

post-trial attorneys to rebuild the file.  (*See* Devereux Declaration ¶ 4.) Counsel did

not see any trial notes or any pretrial notes from trial counsel other than a rough

draft from the expert witness completed March 1, 2017.  APP 090-096.

## IV. CLAIMS AND ARGUMENT

### A.    *Trial Counsel refused to let the Defendant testify*

Because a defendant's right to testify "is personal, it may be relinquished only

by the defendant, and the defendant's relinquishment of the right must be knowing

and intentional." *United States v. Joelson,* 7 F.3d 174, 177 (9th Cir. 1993) (citing

*United States v. Edwards*, 897 F.2d 445, 446 (9th Cir. 1990), and *United States v.*

*Martinez,* 883 F.2d 750, 756 (9th Cir.1989), vacated on other grounds, 928 F.2d

1470 (9th Cir.), cert denied, 501 U.S. 1249 (1991)); see also *Pino-Noriega,* 189F.3d

at 1094. "[T]he ultimate decision whether to testify rests with the defendant."

*Joelson*, 7 F.3d at 177 (citing *Edwards*, 897 F.2d at 446-47).

Here, Mr. Mirando on several occasions made clear to his attorney that he

wanted to testify.  His attorney instructed Mr. Mirando that he could not testify.

12

WEXFORD LAW

On the first day of trial, Mr. Mirando was remanded into custody for saying hello to potential jurors and the prosecutor.  Apparently, trial counsel refused or failed to inform Mr. Mirando of the rules regarding contact, even eye contact or a hello between others and himself during trial.  Typically, a seasoned trial attorney will instruct his client to use a restroom on another floor, not to make eye contact with anyone and definitely do not greet anyone.  *See* Devereux Declaration ¶ 8.)  Here, trial counsel refused or failed to do such.  (*See* Declaration of Michael Mirando, ¶ 5.)

Accordingly, Mr. Mirando, who was out on his own recognigence, was remanded by the Honorable Percy Anderson for the duration of the trial.  Trial counsel refused or failed to object to the Honorable Percy Anderson's ruling, thus later leading to an enhancement for obstruction of justice at sentencing.

After being remanded, Mr. Mirando had no further contact with his attorney unless it was in front of the court.  *See* Declaration of Michael Mirando, ¶ 7.

Mr. Mirando was not aware of the consequences for his actions.  Although, there is no record from the court admonishing or warning Mr. Mirando that he lost or will lose his right to testify, the court also did not question Mr. Mirando about his intentions to testify.

13

**B.    Trial counsel, ignorant of both governing law and critical facts, was pervasively ineffective, prejudicing Mr. Mirando**

Mr. Mirando's conviction should also be set aside because of the ineffectiveness of trial counsel, Kevin McDermott, under Strickland. Trial counsel's "performance was deficient," and Mr. Mirando "suffered prejudice due to counsel's deficiency." *Hernandez v. Chappel*, 923 F.3d 544, 549 (9th Cir. 2019) (quoting *Strickland*, 466 U.S. at 687).

The case for deficient performance and prejudice is straightforward: trial counsel misunderstood and missed the glaring issues at the heart of this prosecution, the credibility of the witnesses and the credibility of the investigation because of his ignorance of both the governing law and the basic, operative facts.

Trial counsel may of course make strategic choices, but only "after thorough investigation of law and facts relevant to plausible options." *Strickland*, 466 U.S. at 688. "An attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point," the Supreme Court has elaborated, "is a quintessential example of unreasonable performance under *Strickland*." *Hinton v. Alabama*, 571 U.S. 263, 274 (2014). "The label of trial strategy does not automatically immunize an attorney's performance from sixth amendment challenges" when they are "the result of a misunderstanding of the law." *United States v. Span*, 75 F.3d 1383, 1390 (9th Cir. 1996) (cleaned up).

WEXFORD LAW

Indeed, the Ninth Circuit has had "a hard time seeing what kind of strategy, save an ineffective one, would lead a lawyer to deliberate omit his client's only defense, a defense that had a strong likelihood of success.…" *Span*, 75 F.3d at 1390. But that's just what trial counsel did here. As a result of this ignorance of the law and facts, trial counsel refused or failed to pursue a defense, a defense that would have had a bearing on the elements of the criminal charge, Mr. Mirando's willful conduct, thus making it easier for the jury to convict his client.

Trial counsel could have presented a defense, but refused to do such despite pleadings by Mr. Mirando.  Here, then, "'counsel's unprofessional errors'"—his failure to understand that criminal law turns fundamentally on whether the government can prove the elements of the offense, his failure to know and argue the correct and defense-friendly willful element, and his failure to know and stick to true facts—"'upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect.'" *Hernandez*, 543 F.3d at 549 (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986)). Nor is that all. Along the way, trial counsel made numerous, more granular unprofessional errors that further diminished the chances of an acquittal in this otherwise strong defense case.

WEXFORD LAW

Trial counsel refused or failed to mount a defense, when there was a strong meaningful defense available.  Trial counsel's strategy was to attack the credibitility of informant Stanton Crowley by asking him if he refused or failed to file income taxes for a period of time.  Trial counsel depended upon Stanton Crowley answering the question honestly.

There was no alternative plan, if Stanton Crowley would have answered the question inaccurately.  But in this case, the court, within its rights, limited the scope of Stanton Crowley's cross examination,. Now without: 1) defense witnesses; 2) the testimony of the defendant; 3) the expert's report, the defense failed to seize the opportunity to mount a meaningful defense.

Mr. Mirando "has the right to present his own witnesses to establish a defense. This right is the fundamental element of due process of law." *United States v. Stever*, 603 F.3d 747, 755 (9th Cir. 2010) (citation omitted). The touchstone is that "the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Id*. (internal quotations omitted).

For instance in the experts final report, produced many months after the trial, the expert summarizes the issues erroneous within the government's case, including but not limited to exculpatory evidence that was not presented on behalf of Mr. Mirando.  For example:

16

WEXFORD LAW

1.  The Government's methodologies do not form the basis for a statistically valid method to extrapolate to over $7 million in fraudulent bills and $2 million in fraudulent receipts and results in a 19% certainty level regarding total fraud rather than the industry standard of 51% reasonable degree of certainty (APP 172, ¶ 3);

2.  Duplicate charges are overstated. There are 90 actual duplicates which could be fraud or could be simply duplicate requests for payment. There are over 31,000 claims and a small percentage of these claims are 'adjacent' to each other by date of service (APP 172, ¶ 4);

3.  There were no audits conducted by any insurance company that confirmed the existence of fraud (APP 172, ¶ 5);

4.  It appears inconclusive which device was used to perform alleged fraudulent 'unable to perform' procedures (APP 172, ¶ 6);

5.  Based on the information available to me, it could not be determined if Mr. Mirando or others submitted the insurance claims produced by the Government (APP 172, ¶ 8);

6.  Since the suspect and duplicate claims are unproven in the expert's opinion to be fraud, $2,587,360.23 for these amounts, minus $1,339.180.04 in unpaid claims as an offset, minus $538,515.73 in unproven duplicates, minus

17

$2,574,940 for unable to perform procedures, plus the accurate fraud counts mathematical total of $10,695.06 equals a negative number of ($1,854,580.95) which means that subject to further audits, the payors (health insurance firms) in this case may owe Holter Labs for unpaid claims (APP 172, ¶ 9);

7.  Of over 40,000 documents produced by the Government, a single page states that the Government interviewed a witness who stated that the Datrix 512 could not possibly perform some of the medical diagnostic procedures in question due to its frequency. FDA 510(k) filings do not confirm that this is true as other devices with the same frequency are indeed used to perform these procedures (APP 174, ¶ 14(a));

8.  According to the American Medical Association, there are 14 steps involved in delivering care which would be used to determine the veracity or fraudulent nature of any claim. The Government methodology only sheds light onto partial information for four (4) of these fourteen (14) steps (APP 174, ¶ 14(b));

Since trial counsel refused or failed to seize the opportunity to mount a meaningful defense, the jury was deprived of the experts findings that subject to

further audits, the health insurance firms in this case may owe Holter Labs, LLC and Mr. Mirando for unpaid claims.

In the expert's opinion the net damages were zero "mathematically a negative number with may indicate that the payors [health insurance firms] owe money for unpaid claims." Moreover, in the experts opinion the government's methodology was lacking. Accordingly, trial counsel made numerous, additional unprofessional errors that further diminished the chances of an acquittal in an otherwise strong defense case.

**C.** ***Trial counsel made several other unprofessional errors that further diminished, individually and in combination, the chances of an acquittal.***

Trial counsel made several other unprofessional errors, including misleading the court with inaccurate information.

The previous subsections have presented the several pervasive, case-destroying problems with trial counsel's deficient approach to this case: he did not know the law governing the operative standard nor the relevant facts about the instrument, hardware and software. These subsections showed that because of that ignorance, trial counsel could not make an informed choice about how to defend this case.

This section briefly presents trial counsel's more granular failings, which further show how deficient trial counsel's performance was, and how this deficient performance prejudiced Mr. Mirando.

During the voir dire proceedings, the Court asked if both sides have carefully thought out their options.  APP 0420.  Trial counsel eluded to the fact that there were 60,000 pages of discovery so it was difficult to prepare for in a short period of time.  Accordingly, trial counsel represented to the Court that "it wasn't an offer that  made a lot of difference."  (APP 0420-0421.)

Here, trial counsel misled the Court since trial counsel had not received the expert's final report at the time.  But, trial counsel refused or failed to inform the court that he wasn't prepared to move forward although trial counsel did not have the benefit of the experts report, conducted a proper investigation, or was prepared to mount a meaningful defense, although there was a meaningful defense available, if he had been prepared.

### D.    Trial counsel was pervasively unprepared.

Pursuant to the expert's final report, produced months after trial, trial counsel failed to address the government's factual assertions that were not true but damaging.  These assertions included the exaggeration of the loss amount, if any, which the government put into the millions of dollars.  Such an exaggeration was

20

likely to poison the jury.  If trial counsel had waited for the expert's report, he would have been able to mount a meaningful defense.  Instead, there was no defense because trial counsel's ignorance of the law that is fundamental to his case combined with his failure to perform basic research on the law was not only deficient, but the performance or lack thereof, prejudiced Mr. Mirando.

Trial counsel failed to refute, in both his cross examination and in his closing, the government's methodology in the allegations of healthcare fraud.  In addition, trial counsel mishandled the expert witness who had important opinions relevant to the elements at the core of this case.  *See* supra.  Trial counsel failed to timely inform expert witness of the need for an expert report; failed to procure and submit an adequate expert report; and once a proper report was written, failed even to argue for the admissibility of the expert opinion. Trial counsel failed to investigate, locate, and call a helpful witness to testify, in this case the software developer who could have rebutted the developer's claims.

Trial counsel failed to object to me being remanded into custody, thereby ending in an obstruction of justice enhancement.  In addition, trial counsel's inadequate preparation cause my home to be forfeited and restitution in an amount in exess of three million dollars.

21

**V. CONCLUSION**

Trial counsel provided constitutionally ineffective assistance. Mr. Mirando suffered prejudice from each and all of these failings. The outcome of his trial is not one in which we should have any confidence. Moreover, trial counsel's failure to object to Mr. Mirando remand for the trial,

For each of these reasons, Mr. Mirando asks this Court to vacate his conviction.

DATED: June 5, 2023                    Respectfully submitted,


                                        By *Michael Devereux*
                                             Michael Devereux
                                             Attorney for Michael Mirando

22