# Exhibit – A / Emails

**Michael Mirando**

---

**From:**       WarLawyer@aol.com
**Sent:**        Tuesday, November 1, 2016 5:08 PM
**To:**          mike@holterlabs.com
**Subject:**     discovery

Mike,

Dropped a stick in the mail fed ex for delivery tomorrow.  Did a cursory spin through and it is all Cast and civil....

Have me an outline of all that is in there by Friday......

And with this case moving along as it will, get the trust account with another payment.

*Kevin Barry Mc Dermott, Esq.*

*Law Offices of Kevin Barry Mc Dermott*
300 Spectrum Center Drive Suite 1420
Irvine, California 92618

949-596-0102
949-861-3825 facsimile
*WarLawyer@aol.com*
*WarLawyer.com*

*(please note – as of February 2, 2015, our building address changed from 8001 Irvine Center Drive to 300 Spectrum Center Drive due to a local street readdressing.  This is an address change only, not a physical relocation of our offices.)*

The foregoing message(s) is confidential and intended for the designated recipient only. The foregoing information may be protected by attorney-client and/or work product privilege. Accordingly, if you have received this message in error, please contact this office immediately, and delete the message without reviewing, copying, or making further use of the information contained therein.

Confidentiality Notice: This email message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited.

App. 007

## Michael Mirando

| | |
|---|---|
| **From:** | Michael Mirando <mike@holterlabs.com> |
| **Sent:** | Thursday, November 3, 2016 12:54 PM |
| **To:** | WarLawyer@aol.com |
| **Cc:** | mike@mirandofamily.com |
| **Subject:** | Mirando Discovery Overview |
| **Importance:** | High |

**\*\* Attorney – Client Privileged Communication \*\***

Kevin,

Here is a breakdown, folder by folder, regarding the contents of the flash-drive that you sent me yesterday. We need to go over this in more detail, but this should shine some light on the contents. I also broke down the page count of each folder; lots of garbage and redundant pages.

**1_Cardiac Device from Dr Simpkins** (7 items, 8 total pages)
This folder contains pictures of my cardiac monitor and its belt holder that was used by one of my accounts; Dr. Ruby Simpkins, MD in Los Angeles. This device was confiscated by the investigator.

**2_Cast v Mirando** (13 items, 209 total pages)
This folder contains documents pertain to the civil suit including but not limited to the original complaint, amended complaint, cross complaint, case summary and judgment.

**3_Websites** (5 items, 6 total pages)
This folder contains screenshots of my website, www.holterlabs.com.

**4_Database Queries** (26 items, 152 total pages)
This folder contains background checks done on myself Jim Cast and Stan Crowley. Stan Crowley was arrested on 08/21/1993 for the charge of Aggravated Battery/Great Bodily Harm. My background check came up clear with no criminal history. There was also a query on firearms owned of which came back positive as he and I both own firearms. There was also a request to see how frequently I travel out of the country.

This folder also contains queries on any business filings such as Holter Labs LLC, Holter Labs Inc, Finzer LLC and Pelagic Properties, LLC. We started out as Holter Labs, LLC and shortly after I moved to Oregon, at the advice of my accountant, I changed company tax designation from an LLC to an S-Corp. This is why we are now Holter Labs, Inc (formally LLC) and with this change, we also changed our Tax ID. Finzer and Pelagic Properties are LLC's for the purpose of real estate investments and rental properties. I use to have Pelagic Properties of NC, Pelagic Properties or SC and Pelagic Properties of MS for the rentals that I owned in those states. I still own the properties, but they are now in my name (for refinance purposes) and I no longer use the aforementioned names or LLC's.

They have a query for all companies with 'Pelagic' and 'Finzer'. Many came up, but I am only affiliated with Finzer, LLC (primary residence) and Pelagic Properties, LLC. These are both LLC located in the state of Oregon. They also have "West Coast Home Solutions" and "West Coast Real Estate Holdings" to which I am NOT affiliated with. West Coast Home Solutions is

App. 008

owned by my contractor that remolded my home in Portland in 2011. "TL Remodel" is owned by another contractor buddy that has done some work for me in the past as well as some "Fix and Flips".

**5_Holterlabs.com Screenshots** (9 items, 15 total pages)
This folder contains more screen shots of my website www.holterlabs.com.

**6_Godaddy.com** (7 items, 253 total pages)
This folder contains a court order and responses sent to GoDaddy.com to provide contact information and activity on who owns and operates www.holterlabs.com. I purchased our company domain name and others via my GoDaddy account.

**7_Health Markets** (1 item, 1 page)
This folder contains an e-mail letter sent to Special Kathleen Kennedy from 'HealthMarkets' stating that they could not find and billing records related to our company. I have no idea who or what 'HealthMarkets' is all about.

**8_Holter Labs Inventory** (83 items, 214 total pages)
This folder contains invoices of when we purchased equipment and supplies from IntriCon Datrix, Lynn Medical, Lead-Lok and Vermed. This folder also includes an interview with Jon Barron, General Manager of IntriCon Datrix stating that we purchased recorders through Lynn Medical and that they have done some repairs for our company in the past. This is all true. Jon Barron also explains the functionality of our device. Below is an excerpt from the Interview. I was told that this equipment could perform all of these tests.
From File: *Interview_of_Jon_Barron,_General_Manager,_Intricon_Datrix_Redacted.pdf*
*"Datrix has not filed with the FDA that an intended use of the DR512*
*model was to perform microvolt T-wave alternans for the assessment of*
*ventricular arrhythmia. BARRON noted that the device is capable of*
*performing such a test but it would need software that would be capable of interpreting the data collected to*
*perform such an assessment. BARRON knows that Caird Technology's software is not capable of performing a*
*microvolt T-wave."*

**9_Interviews** (104 items, 457 total pages)
This folder contains immunity agreements, copies of marketing fliers (the same one the Crowley and Burns new company copied), copies of a spreadsheet containing contacts, patient name and physician phone numbers. This was a file that I made to keep track of our practices. No direct billing information or HIPAA info was contained in this document. This folder also contains e-mails and interview notes with Stan Crowley, Jim Cast, two practice managers and nine patients. Most of the patients' state that they wore a monitor but could not remember if their insurance was billed or if they saw a related EOB (Explanation of Benefits) from their insurance carrier. The same Jon Barron (General Manager of IntriCon Datrix) interview as stated above has been in three different locations on this flash drive. Most of the documents contain redundant e-mail threads between Crowley and Special Agent Kathleen Kennedy.

Regarding the dates of the aforementioned interviews, The Jon Barron interview took place in March 2014, the patient interviews took place in April of 2014. The Jim Cast interview took place in October of 2015 and the Crowley interviews date back to 2013 if not earlier. The two practice managers' interviews took place in March 2016; one month before the indictment.

***Cast Interview***: From File: *Interview of Jim Cast_Redacted.pdf*
Cast admits to working with Crowley at their former company (they also attended the same High School) and they were both involved in the qui tam lawsuit for improper billing. Cast also states that his responsibilities at Holter Labs was sales and <u>submitting claims</u>. Cast states that he "*could not recall*" any discussion with Mirando about the proper codes in which to bill. **This is a lie**. He is the one who set up the billing software and taught me

2

App. 009

how to submit claims and what codes to bill if others do not get paid. Other parts of the interview contain some inaccurate information that it would be easier to explain when we review these documents in person when I fly down.

***Crowley Interview:*** From File: *2013 09 17.Interview_of_Stanton_Ross_Crowley_Redacted.pdf*
The first item that stands out is that Crowley states the he approached me to start this business. This is a lie; it was the other way around. I had a successful career working for Intel at the time and Crowley approached me stating that we would like to start a business. This was occurred sometime in 2004 in our condo complex in Aliso Viejo where we lived as neighbors.

Crowley stated that Mirando did NOT have prior experience in the Holter business. Crowley also states that Cast responsibilities would be to answer phone and handle the <u>medical billing</u>. Crowley also states that he believed "*Mirando learned how to submit the medical claims to insurance companies from Cast*". Crowley also <u>lied</u> about Mirando being the only one that wanted Cast out after he did not meet his capital contribution; we BOTH wanted him out. "CROWLEY did not have an opinion either way as to CAST's removal from HL".

Another lie that Crowley brought up (page 3 of 8) was that I shredded all of the paper claims before I left to Oregon. This is a complete lie. Any and all paper claims were out of my possession when I physically submitted them to the insurance companies via mail. There was nothing to shred. I did not sherd any documents as Crowley as stated. Crowley also states in the same paragraph that *"CROWLEY recalled seeing some of the billing and he did not notice anything unusual or inaccurate in the billing"*. I thought that he had nothing to do with the billing? This proves that he had access.

Crowley states (page 4 of 8) that I was a "good friend" with 'Jim Brown' our software supplier and now technician that works for me upon Crowley departure. We are NOT good friends, just business associates. Jim Brown (resides in South Carolina) complies all of the reports and develops the scanning software that renders the reports to the ordering physicians. I have met Jim Brown one time when I was living in CA and we speak about once a week regarding business only.
Other parts of the interview contain some inaccurate information - even more than that of the Cast interview - that it would be easier to explain when we review these documents in person when I fly down. Some of which are lies about me possessing Fully Automatic weapons and statements that I did not make. We can go over this on more detail when I see you next. Ear mark the aforementioned document.

**10_Interviews with Beneficiaries** (4 items, 5 total pages)
This folder contains four interviews with patients. All patient interviews contained in this folder are duplicates to that of four by the same name located in "9_Interviews" folder.

**11_Murrieta Medical Supply** (2 items, 3 total pages)
This is a DBA that I started in January 2007 that is no longer in use. I will tell you the reason why when I speak to you in person.

**12_Request for Investigative Assist. Enrollment** (2 items, 11 total pages)
This folder requested provider enrollment records from insurance companies Aetna, Anthem, Cigna and Optum. All four companies responded that they have no contracts with Holter Labs or Michael Mirando.

**13_Surveillance** (6 items, 11 total pages)
This folder contains Physical Surveillance notes that was put on my primary residence in May of 2016 for the purpose of a tentatively scheduled search and arrest warrant that was to take place on May 25th, 2016.

Thanks,

App. 010

Michael Mirando
949-466-3015
** Attorney – Client Privileged Communication **

4

App. 011

## Michael Mirando

**From:**        WarLawyer@aol.com
**Sent:**        Thursday, November 10, 2016 9:49 AM
**To:**          'mike@holterlabs.com'
**Subject:**     Re: Medicare Approval Letter


Got all of the files from the civil case today. Will start going through.
==This e-mail is big.==
In a message dated 11/10/2016 9:47:34 A.M. Pacific Standard Time, mike@holterlabs.com writes:

> Kevin,
>
>
> I found this e-mail that I sent to Medicare in 2014 when we starting billing for our services. We did not bill Medicare when I was with Stan Crowley nor are they accusing me of billing Medicare in the incitement. In the attached e-mail, I specially asked if we are approved to bill for some codes that the government is accusing me of wrongfully billing. Stating our devices could not perform these procedures. They gave me permission as you can see. In order to get this far, they already audited our reports and equipment and we passed. This shows that I thought I was doing the right thing all along.
>
>
> Like I have said before, I have no idea on what these devices can do or not do. Stan and now Jim Brown do all of the scanning of the cardiac data from our recorders. I just run the business and bill for services that we provide.
>
>
> I do not want to open up a can of worms or jet jammed-up and have them look in to my Medicare billing after Stan's departure. In the event you are wondering, we never billed Medicare when Stan was with me because he stated that he does not have nor could pass the certification that Medicare requires for us to get past the application approval process. Now, I do not know if this was motive or bull-shit. We are now certified (via Jim Brown) and bill Medicare.
>
>
> Just an FYI to use as more ammo if needed. You should be receiving that USB stick tomorrow. The attached e-mail is NOT on that stick.
>
>
> Thanks,
>
>
> Michael Mirando
>
> Holter Labs, Inc
>
> -----------
>
> P: 888-821-4667
>
> C: 949-466-3015

App. 012

F: 888-821-4677

E: mike@holterlabs.com

App. 013

**Michael Mirando**

| | |
|---|---|
| **From:** | MARTIN.A.SMITH@palmettogba.com |
| **Sent:** | Wednesday, December 31, 2014 8:52 AM |
| **To:** | mike@holterlabs.com |
| **Subject:** | RE: Holter Labs Questions |

All rejected claims will need to be resubmitted.


Andy Smith
Palmetto GBA
J11 MAC
Provider Enrollment Analyst
**Direct dial - 803-763-0180**
http://www.palmettogba.com/disclaimer

---

**From:** Michael Mirando <mike@holterlabs.com>
**Sent:** Wednesday, December 31, 2014 11:47 AM
**To:** MARTIN A SMITH
**Subject:** RE: Holter Labs Questions

Great. Will I need to resubmit the claims that were previously submitted with the newly added codes? Or will they be automatically retroactively processed?


-Michael Mirando
 (sent via phone)


-------- Original message --------
From: MARTIN.A.SMITH@palmettogba.com
Date:12/31/2014 8:32 AM (GMT-08:00)
To: mike@holterlabs.com
Subject: RE: Holter Labs Questions

You will need to contact the MY MAC at 855-696-0705 regarding the hardcopy statements. As for the other, they have been added and it appears the letter was just mailed today. Have a great new years


Andy Smith
Palmetto GBA
J11 MAC
Provider Enrollment Analyst
**Direct dial - 803-763-0180**
http://www.palmettogba.com/disclaimer

---

1

App. 014

**From:** Michael Mirando <mike@holterlabs.com>
**Sent:** Wednesday, December 31, 2014 10:04 AM
**To:** MARTIN A SMITH
**Subject:** Holter Labs Questions

Hey Andy,

Two questions before you leave for the new year =)

1. How do we sing up for "Paperless Statements". We DO NOT wish to receive hard copy statements on our billing. My third party service already provides me with online statements so how do we STOP the paper statements in regarding to billing?

2. Can you please verify if we are approved to bill the following codes? We have not received any motives yet.
      Codes: 93229, 93271    (direct codes, no modifier needed)

I hope that you are having a great Holiday Season.

Thanks,

Michael Mirando
Holter Labs
   -------------
Main: 888-821-4667
Cell: 949-466-3015
E-Mail: mike@holterlabs.com
Web: www.HolterLabs.com

App. 015

## Michael Mirando

**From:** WarLawyer@aol.com
**Sent:** Friday, January 27, 2017 10:41 AM
**To:** mike@holterlabs.com
**Subject:** Expert witness
**Attachments:** 20161010ExpertRetentionAgreement-BLANKhmb10.docx; 20161021ExpertMichaelArrigoCases.pdf; 20161114MichaelArrigoExpertCV.pdf

Michael,

After you have reviewed the attached, please give me a call. I have interest a half dozen experts on the topic of health care billing and codes and Dr. Michael Arrigo is top of the line and one that the government has had to deal with a number of times in the past.  I want to jump on this asap and get him started next week.

Talk soon.

S/

***Kevin Barry Mc Dermott, Esq,***

**Law Offices of Kevin Barry Mc Dermott**
300 Spectrum Center Drive, Suite 1420
Irvine, California 92618


949-596-0102
949-861-3825 facsimile
*WarLawyer@aol.com*
*WarLawyer.com*

*(please note – as of February 2, 2015, our building address changed from 8001 Irvine Center Drive to 300 Spectrum Center Drive due to a local street readdressing.  This is an address change only, not a physical relocation of our offices.)*

The foregoing message(s) is confidential and intended for the designated recipient only.  The foregoing information may be protected by attorney-client and/or work product privilege.  Accordingly, if you have received this message in error, please contact this office immediately, and delete the message without reviewing, copying, or making further use of the information contained therein.

Confidentiality Notice:  This email message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information.  Any unauthorized review, use, disclosure or distribution is prohibited.

App. 016

DRAFT Case List for Expert Witness Michael F. Arrigo

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

**Michael F. Arrigo Expert Witness Litigation Experience**
**October 21, 2016**

**Not for Publication**
**DRAFT**
This document is for discussion purposes only between Mr. Arrigo and
prospective retaining counsel. It is not to be used as a representation of Mr.
Arrigo's testimony for any particular case in any venue

App. 017

DRAFT Case List for Expert Witness Michael F. Arrigo

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

# SECTION I – HEALTHCARE: COMPLEX CASES, CLASS ACTIONS, QUI TAM WHISTLEBLOWER CASES (FALSE CLAIMS ACT, HITECH ACT, AFFORDABLE CARE ACT, HIPAA, ETC.)

SECTION I – HEALTHCARE: COMPLEX CASES, CLASS ACTIONS, QUI TAM WHISTLEBLOWER CASES (FALSE CLAIMS ACT, HITECH ACT, AFFORDABLE CARE ACT, HIPAA, ETC.) ............................................................. 6

**A.   HIPAA Privacy and Security, Physical Security, Proper Screening of Health Care Workers** 6

- (P) *Graewingholt et al v St. Josephs' Health System* ............................................................. 6
- (P) *Premera Blue Cross Customer Data Breach Litigation* .................................................. 7
- (D) Confidential Plaintiff v. Pasadena School District ........................................................ 8
- (P) *R.D., a Pseudonym, Individually, Plaintiff, vs. Providence Family Medicine Manito Clinic d/b/a/ Providence Physician Services, Co, Providence Health Services et al* ........................................ 8
- (D) Confidential Plaintiff (Jane Doe) v. Brigham and Women's Hospital. ............................ 10
- (P) Madden v. Radiology Regional. ..................................................................................... 10
- (P) Plaintiffs v. 21st Century Oncology. ............................................................................. 11
- (D) *Billrite billing solutions, Inc. v Vinay M. Reddy, MD* ................................................. 12

*(P) U.S. DOJ Investigation: Attorney General v. Confidential Electronic Health Record Software Firm* - 13

*(P) Jane Doe vs United Medical Center a/k/a Not-For-Profit-Hospital and Innovative Staffing Solutions.* 13

**B.   Anti-Trust, Interoperability, ICD-10, Meaningful Use of Electronic Health Records and Revenue Cycle** ........................................................................................................................ 15

- *(P) Confidential v. Confidential in matter before Federal Trade Commission; as well as preparation for litigation filings in California, New York, Florida, Texas State Attorneys General* ............................... 15
- *(P) Northern California Minimally Invasive Cardiovascular Surgery and Dr.* ...................... 15
- *(P) HITECH Medical Consulting v. NextCare* .................................................................. 16
- (P) *Seiler v. Sanford Medical Center* ................................................................................ 17
- *(D) Paulette Diaz, et al, vs. MDC Restaurants, LLC et al;* ................................................ 17
- (D) *Natalie Torres v Pocatello Children and Adolescent Clinic, et al* ................................ 18
- (D) *King v. Pediatric Surgical Group, Baptist Hospital of Miami, Baptist Children's Hospital et al* 18
- (D) *Bradley Welding v Franscali and Orthopedic Associates of Northern Illinois* .............. 19

App. 018

DRAFT Case List for Expert Witness Michael F. Arrigo

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

- *(D) McDermott v. Children's Hospital of Philadelphia* ............................................................... **19**

- (D) *U.S. Attorney General and Carefirst v. Confidential* ............................................................ **20**

- (D) *California State Compensation Insurance Fund (SCIF) v Drobot, Pacific Hospital et* ............... **20**

- *(D) U.S. Attorney General v. Confidential Hospital System in Ohio* **-** ....................................... **21**

- *('R) United States of America ex. rel. Olivia Graves v. Plaza Medical Centers, Humana* ............... **21**

- (D) *Laurence Peter Reininger v. Cedars Sinai Medical Center and CPLM, a Pathology Group Affiliated with Cedars Sinai and Dr. M. Amin* ........................................................................ **23**

- *('R) United States Ex. Rel. Manijeh Nikakhtar MD v. Mission City Community Network, Nick Gupta et al* **24**

- (P) California Kidney Medical Group v Thakkar et al ................................................................. **26**

## SECTION II – HEALTHCARE: ECONOMICS RELATED TO MEDICAL CODING, CLINICAL DOCUMENTATION AND VALUE OF HEALTH CARE SERVICES (USUAL, CUSTOMARY AND REASONABLE COST OF CARE (UCR)), PAYOR DETERMINATION OF MEDICAL NECESSITY, ECONOMIC VALUE OF HEALTHCARE CLAIMS, REVENUE ATTRIBUTION ................... 27

- (P) *Vovea v. Vinh et al* ........................................................................................................ **27**

- (P) *Giraldo v. Canta and Groceryworks.com et al* .................................................................. **27**

- (P) *Seiler v. Sanford Medical Center* ..................................................................................... **28**

- (D*) Minton v City of Thousand Oaks, Time Warner Cable* **-** ..................................................... **29**

- (P) *UCLA Medical Center v. Blue Cross* ................................................................................ **29**

- (P) *Allstate v Confidential Defendants* .................................................................................. **29**

- (P) *Rhodes v Renown* ........................................................................................................ **30**

- (P) *John D. Thomson v. HMC Group, Torrance Medical Center* .................................................. **30**

- (D) *Joann Hilton v. USA Logistics Carriers, LLC and Jose Juan Soto-Estrada***,** ......................... **31**

- (D) *Jorge Uribe v. City of Maywood and Andrew Serrata* ......................................................... **31**

- (P) *Jim Casciani v. Gerald Anger, Jr., et al***;** ........................................................................ **32**

App. 019

DRAFT Case List for Expert Witness Michael F. Arrigo

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

- (D)*Raul Martinez v. Lee Ill Young,* ................................................................... 32
- (P) *Smith vs. Musinski MD et al* ....................................................................... 32
- (P) *California Accounts Service v. William Henry Tarkington* ........................... 32
- (D) *Billrite billing solutions, Inc. v Vinay M. Reddy, MD* ................................. 33
- *(D) Rose v. Herfy's and Lee* ............................................................................. 33

## SECTION III – HEALTHCARE: EXPERT ADVISOR / CONSULTANT ............ 34

- (D) *Preferred Care Medicare Part C* .................................................................. 34
- (D) *Cullman Regional Medical Center, Alabama –* ............................................ 34
- (D) *United Healthcare, Florida* **-** ....................................................................... 34
- (P) *Optum, Minneapolis* .................................................................................... 34
- (P) *Boies Schiller & Flexner, LLP* **-** ................................................................. 35
- (D) *Regence BlueCross BlueShield, Seattle, Salt Lake, Portland* ........................ 35
- *(D) Public Employees Health Plan of Utah (PEHP)* .......................................... 35
- (D) *Conemaugh Health System (owned by Duke Lifepoint Health System)* ......... 35
- (D) TennCare II – Tennessee State Medicaid .................................................... 37
- *(D) Wal-Mart – Expert advisor to largest self-insured employer globally re: CORE Operating Rules, Medicare Part C* ............................................................................................. 37
- *Essence Health Plan, Medicare Advantage / Part C* ......................................... 38
- Citra Health Solutions, Jacksonville FL ......................................................... 38
- *Advisor: E.H.R., Accountable Care Organizations, practice management IT companies* **-** ................. 38
- *Medicare Advantage / Part C* ........................................................................... 39
  BCBS OF MICHIGAN MUTUAL INSURANCE COMPANY ........................................... 39
  UPMC HEALTH PLAN, INC. ................................................................................. 39
  TRIPLE S ADVANTAGE, INC. ............................................................................... 39
  BLUE CARE NETWORK OF MICHIGAN .................................................................. 39
  EXCELLUS HEALTH PLAN, INC. ........................................................................... 39
  CARE1ST HEALTH PLAN ...................................................................................... 39

App. 020

DRAFT Case List for Expert Witness Michael F. Arrigo

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

REGENCE BLUECROSS BLUESHIELD OF OREGON ................................................................39
PROVIDENCE HEALTH PLAN ................................................................39
BLUE CROSS AND BLUE SHIELD OF FLORIDA, INC. ................................................................39
EXCELLUS HEALTH PLAN, INC. ................................................................39
HEALTH CARE SERVICE CORPORATION ................................................................39
SELECTHEALTH, INC. ................................................................39
BLUE CROSS OF IDAHO CARE PLUS, INC. ................................................................39
REGENCE BLUESHIELD ................................................................39
HORIZON INSURANCE COMPANY ................................................................39
PREFERRED CARE ................................................................39

*Advanced Medical Optics (Now Abbott Medical Optics) v. Confidential* ........................................................ **40**

•     *('R) United States of America ex. rel. (Confidential) vs. Confidential defendants – advise during sealed case investigation.* ................................................................ **41**

•     *(P) Pharmacy Benefit Management (PBM)* analytics ................................................................ **41**

•     *Ability Networks and Medicare Administrative Contractors (MACs) for Confidential Private Equity Firm* **42**


## SECTION IV - FINANCIAL SERVICES REGULATIONS ................................... **43**

•     *First American - ("FACTA") Fair Credit Reporting Act (FCRA). FACTA §312(a), (FACTA§312(c), FCRA §623(e)(1)), FCRA §623(a)(8)) – Lead executive on CredCo process and systems teams to ensure compliance with FCRA and FACTA with respect to loan origination and refinancing* ................................ **43**

App. 021

DRAFT Case List for Expert Witness Michael F. Arrigo

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

# Section I – Healthcare: Complex Cases, Class Actions, Qui Tam Whistleblower cases (False Claims Act, HITECH Act, Affordable Care Act, HIPAA, etc.)

### A. HIPAA Privacy and Security, Physical Security, Proper Screening of Health Care Workers

- (P) *Graewingholt et al v St. Josephs' Health System* - *Judicial Council Coordinated Proceeding No. 4716 Master Class Action Complaint in Superior Court of the State of California, County of Orange - class action before Honorable Kim G. Dunning, 8 Dep't CX 104; filed conditionally under seal per CRC 2.551 class action litigation related to HIPAA privacy and security breach involving $8 billion health system, disclosures under HIPAA Privacy and Security, California Confidentiality of Medical Information Act (CA Civil Code §56 et seq.) Opinions: laws, best practices and procedures for privacy and security, duty to keep records protected, ICD-9, DRG, CPT coding, and pricing, and economic impact. Third party FOIA discovery with CMS, OIG, OCR, related contractors, ARRA HITECH Act and Meaningful Use attestations and payments. Review of 31,000 patient records for CMIA medical data stored in Meditech, including diagnosis codes, problem lists, lab data, BMI and other HIPAA PHI. Statutes and best practices including:*

  - *HIPAA Privacy and Security (45 CFR §162.1002 45 CFR §164.308 (subsections)),*
  - *45 CFR §164.410 (subsections), notification by a business associate*
  - *45 CFR §164.502 (subsections), Uses and disclosures of protected health information*
  - *45 CFR 164.512 - Uses and disclosures for which an authorization or opportunity to agree or object is not required, especially § 164.512(j)(1) Uses and disclosures to avert a serious threat to health or safety and § 164.512(j)(2-4) Use or disclosure not permitted.*
  - *45 CFR §170.314 (subsections); electronic health record certification criteria*

App. 022

DRAFT Case List for Expert Witness Michael F. Arrigo

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

*(Meaningful Use)*

- *31 U.S.C. § 3729.  (a) False Claims Act;*
- *California Confidentiality of Medical Information Act (CA Civil Code §56 et seq.)*
- *ARRA HITECH Act reporting procedures and documentation, attestations and stimulus funds eligibility based on evaluation of over 33 measures, information safeguards, operating procedures.*

**VERDICT / OUTCOME: SETTLEMENT AFTER MY DESIGNATION AND REPORT BUT IMMEDIATELY BEFORE MY TESIMONY AT TRIAL, PENALTIES AGAINST DEFENDANT ST. JOSEPH'S HEALTH SYSTEM OF OVER $30 MILLION**

- (P) *Premera Blue Cross Customer Data Breach Litigation* - Case No. 3:15-md-2633-SI class action litigation related to HIPAA privacy and security breach involving breach of 11 million records at multi $billion health plan, disclosures under HIPAA Privacy and Security,  Opinions: industry best practices and guidelines for privacy and security, duty to keep records protected, ARRA HITECH Act and Meaningful Use attestations and payments. Review of subsection of 11,000,000 patient records, including diagnosis codes, problem lists, lab data, BMI and other HIPAA PHI.  Statutes and best practices including:

  - HIPAA Privacy and Security (45 CFR §162.1002 45 CFR §164.308 (subsections)),
  - 45 CFR §164.410 (subsections), notification by a business associate
  - 45 CFR §164.502 (subsections), Uses and disclosures of protected health information
  - 45 CFR §170.314 (subsections); electronic health record certification criteria (Meaningful Use)
  - 31 U.S.C. § 3729.  (a) False Claims Act;
  - ARRA HITECH Act reporting procedures and documentation, attestations and

App. 023

DRAFT Case List for Expert Witness Michael F. Arrigo

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

stimulus funds eligibility based on evaluation of over 33 measures,
information safeguards, operating procedures.

- HIPAA Covered Entities and Business Associates, Business Associate
  Agreements.

- (D) Confidential Plaintiff v. Pasadena School District*, BC 457 096 Superior
  Court of the State of California for the County of Los Angeles. HIPAA privacy and
  security, disclosures under **HIPAA Privacy and Security**. Opinions: laws, best
  practices and procedures for privacy and security, duty to keep records protected,
  whether there is a duty to disclose records. Relevant statutes and best practices
  include: 45 CFR 164.512 - Uses and disclosures for which an authorization or
  opportunity to agree or object is not required, especially § 164.512(j)(1) Uses and
  disclosures to avert a serious threat to health or safety and § 164.512(j) (2-4) Use
  or disclosure not permitted (Tarrasoff standard)*

- (P) *R.D., a Pseudonym, Individually, Plaintiff, vs. Providence Family
  Medicine Manito Clinic d/b/a/ Providence Physician Services, Co,
  Providence Health Services et al*, 14-2-33747-7 SEA in The Superior Court of
  the State of Washington in and for the County of King – HIPAA privacy and
  security breach involving alleged unauthorized breach of HIV diagnosis at multi-
  billion-dollar health system, disclosures under HIPAA Privacy and Security.
  Examine EPIC EMR and Onbase implantation compliance according to industry
  best practices and guidelines. Opinions: laws, best practices and procedures for
  privacy and security, duty to keep records protected, , related contractors, ARRA
  HITECH Act and Meaningful Use attestations and security best practices. Potential
  citations of statutes and cases including:

  - HIPAA Privacy and Security (45 CFR §162.1002 45 CFR §164.308
    (subsections)),
  - 45 CFR §164.410 (subsections), notification by a business associate

App. 024

DRAFT Case List for Expert Witness Michael F. Arrigo

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

- 45 CFR §164.502 (subsections), Uses and disclosures of protected health information

- 45 CFR §170.314 (subsections); electronic health record certification criteria (Meaningful Use)

- 31 U.S.C. § 3729. (a) False Claims Act;

- ARRA HITECH Act reporting procedures and documentation, attestations and stimulus funds eligibility based on evaluation of over 33 measures, information safeguards, operating procedures.

- Joint Commission standards for healthcare staffing firms, Medicare and Medicaid eligibility Conditions of Participation (CoPs) or Conditions for Coverage (CfCs)

- Wash. Admin. Code § 246-455-080 Security and Release of Reported Hospital Patient Discharge Data

  (2) … security and system safeguards to prevent and detect unauthorized access, modification, or manipulation of individually identifiable health information. Accordingly, the safeguards will include:

  (a) Documented formal procedures for handling the information;

  (b) Physical safeguards to protect computer systems and other pertinent equipment from intrusion;

  (c) Processes to protect, control and audit access to the information;

  (d) Processes to protect the information from unauthorized access or disclosure when it is transmitted over communication networks;

  (e) Processes to protect the information when it is physically moved from one location to another;

  (f) Processes to ensure the information is encrypted when:

  (i) It resides in an area that is readily accessible by individuals who are not authorized to access the information (e.g., shared network drives or outside the agency data centers);

App. 025

DRAFT Case List for Expert Witness Michael F. Arrigo

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

(ii) It is stored in a format that is easily accessible by individuals who are not authorized to access the information (e.g., text files and spreadsheets);

- Wash. Rev. Code § 70.02.170 Civil remedies

- *(D) Confidential Plaintiff (Jane Doe) v. Brigham and Women's Hospital.* *C.A. No. 2014-0007-B Suffolk Superior Court, Massachusetts. Evaluate whether best practices in HIPAA Privacy and Security were used to prevent HIPAA privacy breach. Opinions: laws, best practices and procedures for privacy and security, duty to keep records protected. Third party FOIA discovery with CMS, OIG, OCR, related contractors, ARRA HITECH Act and* **Meaningful Use attestations patient portal security best practices***. Potential citations of statutes and cases including:*

  - *Massachusetts State Statute: Standards for the Protection of Personal Information of Residents of the Commonwealth, as set forth in M.G.L. c. 93H and 201 C.M.R. 17.00, et seq HIPAA Privacy and Security (45 CFR §162.1002 45 CFR §164.308 (subsections)),*
  - *45 CFR §164.502 (subsections), Uses and disclosures of protected health information*
  - *45 CFR §170.314 (subsections); electronic health record certification criteria (Meaningful Use)*

- *(P) Madden v. Radiology Regional.*  Class Action in and for the Twentieth Judicial Circuit in and for Lee County Florida involving a breach of PHI by a records disposal company resulting in unauthorized disclosure of thousands of patient records.

  - Federal laws including but not limited to the Health Insurance Portability and Accountability Act (HIPAA Privacy Rule 45 CFR Part 160 and Subparts A and E of §164, and HIPAA Security Rule 45 CFR §160 and

10

App. 026

DRAFT Case List for Expert Witness Michael F. Arrigo

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

Subparts A and C of §164),

o   implementation of information safeguards 45 CFR 164.530(c),

o   securing proper arrangements for disposal of PHI under 45 CFR 164.308(b), 164.314(a), 164.502(e), and 164.504(e),

o   proper workforce training under 45 CFR 164.306(a)(4), 164.308(a)(5), and 164.530(b) and (i) and

o   State laws, including but not limited to the Florida Deceptive and Unfair Trade Practices Act (FDUTPA),

o   The Florida Information Protection Act of 2014 (FIPA), and notification provisions of Fla. Stat. § 501.171.

o   Radiology Regional's workforce including but not limited to agents, subcontractors, or employees failed to comply with requirements for HIPAA covered entities that acquire, maintain, store or use personal information, to properly monitor, maintain, safeguard and protect the PHI pursuant to industry best practices, guidelines, policies and procedures and to undertake all reasonable measures to mitigate harm to affected patients by failing to notify them within 30 days.

- (P) Plaintiffs v. 21st Century Oncology.  Class Action in and for the Twentieth Judicial Circuit in and for Lee County Florida involving a breach of PHI by a records disposal company resulting in unauthorized disclosure of millions of patient records.

    o   Best practices to comply with Federal laws including but not limited to the Health Insurance Portability and Accountability Act (HIPAA Privacy Rule 45 CFR Part 160 and Subparts A and E of §164, and HIPAA Security Rule 45 CFR §160 and Subparts A and C of §164),

11

App. 027

DRAFT Case List for Expert Witness Michael F. Arrigo

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

o   implementation of information safeguards 45 CFR 164.530(c),

o   securing proper arrangements for disposal of PHI under 45 CFR 164.308(b),
    164.314(a), 164.502(e), and 164.504(e),

o   proper workforce training under 45 CFR 164.306(a)(4), 164.308(a)(5), and
    164.530(b) and (i) and

o   State laws, including but not limited to the Florida Deceptive and Unfair
    Trade Practices Act (FDUTPA),

o   The Florida Information Protection Act of 2014 (FIPA), and notification
    provisions of Fla. Stat. § 501.171.

o   Radiology Regional's workforce including but not limited to agents,
    subcontractors, or employees failed to comply with requirements for HIPAA
    covered entities that acquire, maintain, store or use personal information, to
    properly monitor, maintain, safeguard and protect the PHI pursuant to
    industry best practices, guidelines, policies and procedures and to undertake
    all reasonable measures to mitigate harm to affected patients by failing to
    notify them within 30 days.

* (D) *Billrite billing solutions, Inc. v Vinay M. Reddy, MD, individually and
  doing business as Spine and & Nerve Diagnostic Center.* 34-2014-00166608
  SUPERIOR COURT OF THE STATE OF CALIFORNIA COUNTY OF SACRAMENTO-
  serve as expert consultant regarding billing practices and HIPAA Privacy and
  Security practices in a case involving outsourced medical billing. Opinions
  regarding 45 CF § 164.402(1) definition of Breach, exclusions for good faith and
  inadvertent disclosures; 45 CFR 160.103(4)(3) definition of HIPAA Covered Entity
  and duties; policies and procedures to address security incidents.  This includes (i)
  identifying and responding to suspected or known security incidents, (ii) mitigating,
  to the extent practicable, harmful effects of security incidents that are known to the

App. 028

DRAFT Case List for Expert Witness Michael F. Arrigo

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

covered entity, and (iii) documenting security incidents and their outcomes.  (See 45 CFR 164.308(a)(6).) obtain satisfactory assurances to protect ePHI (164.314(a)); HITECH Act of 2009, a BA's disclosure, handling and use of PHI must comply with HIPAA Security Rule and HIPAA Privacy Rule mandates.  Industry best practices and guidelines regarding Business Associates, Business Associate Agreements.


VERDICT / OUTCOME: AFTER MY DECLARATION COURT ORDERED OPPOSING PARTY TO RELEASE ALL RECORDS AND NOT USE HIPAA AS AN EXCUSE TO FAIL TO PRODUCE INFORMATION.  CASE IS ONGOING.

- *(P) U.S. DOJ Investigation: Attorney General v. Confidential Electronic Health Record Software Firm* **- -** Prepare and deliver presentation before AUSA, OIG, HHS and FBI re: investigation into Meaningful Use of Electronic Health records (ONC certification of software and CMS, Medicaid Attestations) related to potential litigation in to False Claims Act.   Retained by DOJ to assist in investigation related to $30 billion in stimulus funds paid to health care providers, facilitated by statements and attestations made by electronic health records companies.

45 CFR §170.314 (subsections); 45 CFR §170.304 electronic health record certification criteria (Meaningful Use)
HIPAA Privacy and Security Assessments and HITECH Act to ensure the privacy and security and safeguarding of information.
Accuracy of clinical information
31 U.S.C. § 3729.  (a) False Claims Act with respect to IT systems, processes and people to maintain accurate records.

- *(P) Jane Doe vs United Medical Center a/k/a Not-For-Profit-Hospital and Innovative Staffing Solutions.*  Opinions regarding industry best practices and

App. 029

DRAFT Case List for Expert Witness Michael F. Arrigo

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

guidelines for health care providers and the Certification Review Process / Health
Care Staffing Services Certification Personnel File Review.  Joint Commission
standards for healthcare staffing firms, Medicare and Medicaid eligibility
Conditions of Participation (CoPs) or Conditions for Coverage (CfCs)

1.  Current licensure, certification, or registration required by the state, the firm, or
    customer from primary sources

2.  Education and training associated with residency or advanced practice, experience,
    and competency appropriate for assigned responsibilities

3.  Clinical work history/references

4.  Initial and ongoing evaluation of competency

5.  Information on criminal background according to law, regulation, and customer
    requirements

6.  Compliance with applicable health screening and immunization requirements
    established by the firm or customer

7.  Information on sanctions or limitations against an individual's license is reviewed
    upon hire, and upon reactivation or expiration. For

8.  individuals who are practicing as Licensed Independent Practitioners, in addition to
    the aforementioned requirements, the firm performs the following according to law,
    regulation, and firm policy: Voluntary and involuntary relinquishment of any license
    or registration is verified and documented

9.  Voluntary and involuntary termination of hospital medical staff membership is
    verified and documented

10. Any evidence of an unusual pattern or an excessive number of professional liability
    actions resulting in a final judgment against the applicant is investigated and
    documented

11. Documentation that the clinical staff person has received orientation from the
    organization

App. 030

DRAFT Case List for Expert Witness Michael F. Arrigo

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

 *(P) Spencer v. St. Joe*

(P) Spencer v. St. Joe

### B.  Anti-Trust, Interoperability, ICD-10, Meaningful Use of Electronic Health Records and Revenue Cycle

- *(P) Confidential v. Confidential in matter before Federal Trade Commission; as well as preparation for litigation filings in California, New York, Florida, Texas State Attorneys General - Estimates of financial impact on U.S. health population under fee for service Medicine and health insurance reimbursement rates under both fee for service medicine and risk adjusted value based care, and how rates are set based on Computer Assisted Coding and the Affordable Care Act. Litigants are two of the largest healthcare firms in America with market capitalizations of over $10 billion. Medical coding and economics healthcare expert consultant for landmark litigation;; worked directly with former RAND Economists, Jonathan Schiller at Boies Schiller and Flexner LLP re provider ICD-9, CPT and ICD-10 medical coding and billing as provided for in 45 CFR 162.1002 that adopted the ICD-10-CM and ICD-10 PCS code sets as HIPAA standards. Prepared for expert testimony which counsel anticipated would go before Commissioner Brill or Ramirez regarding functions of encoder software, computer assisted coding, Meaningful Use of Electronic Health Records under the ARRA HITECH Act, access to data as precursor to computer assisted coding, anti-trust and macroeconomics of care in health plans based on data interoperability; consideration of IT switching costs, payor-provider contracting practices and economics; preparation for expert report and Daubert hearing; case settled and sealed. Development of peer-reviewed expert report, facilitating review with MD, PhD in Computer Science, PhD in economics. Due to the terms of the settlement agreement, the case is sealed and I am not permitted to disclose the names of the litigants.*

- *(P) Northern California Minimally Invasive Cardiovascular Surgery and Dr.*

App. 031

DRAFT Case List for Expert Witness Michael F. Arrigo

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

*Ramzi Deeik MD v. Northbay Healthcare Corporation,* Case No. 3:15-cv-06283-WHA, United States District Court for the Northern District of California.  Provide guidance on discovery of cardiology billing data, market definition for anti-trust case and retaliatory actions of hospital against a physician.

- *(P) HITECH Medical Consulting v. NextCare* Case No. CV2015-00435D Superior Court of the State of Arizona, County of Maricopa.  Breach of contract, Unjust Enrichment, Contractual Bad Faith involving consulting firm's implementation of Electronic Health Records in an effort to comply with the ARRA HITECH Act of 2009, Meaningful Use, and HIPAA Standards.  Retained to educate attorneys and trier of fact regarding the Electronic Health Records, HITECH, and HIPAA, what the implementation and compliance process is, meaningful use core measures and menu measures, quality reporting, meaningful use audits, false information and risks of false claims act.  Explain what patient engagement, smoking status, inoculations, clinical decision support patient education materials are and why relevant to compliance with Meaningful Use.  Discuss certification process for Electronic Health Records and billing with respect to medical diagnosis, medical procedures and associated medical codes.  Discuss role of U.S. HHS Centers for Medicare and Medicaid, Office of National Coordinator, Regional Extension Centers in achieving Meaningful Use.  Discuss attestation attempts, failures, and success rates as reported by U.S. HHS / CMS and why this is relevant.  Some relevant statutory requirements of the case involving my testimony included but were not  limited to:

  - 45 CFR §170.314 (subsections); 45 CFR §170.304 electronic health record certification criteria (Meaningful Use)
  - HIPAA Privacy and Security Assessments and HITECH Act to ensure the privacy and security and safeguarding of information.
  - Accuracy of clinical information
  - 31 U.S.C. § 3729.  (a) False Claims Act with respect to IT systems, processes and people to maintain accurate records.

16

App. 032

DRAFT Case List for Expert Witness Michael F. Arrigo

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

- (P*) Seiler v. Sanford Medical Center* Civ. No. 14-3033 Second Judicial Court State of South Dakota, Minnehaha County- Retained in a case involving both personal injury and complex Third Party Liability rules for insurance claims of auto insurance and health insurance payors.  Alleged intentional refusal by a hospital to submit patient's charges to health insurance for payment in anticipation of a more favorable reimbursement as the result of a tort claim, as tortious interference with client's contract with his health insurance.  Opine re role, industry best practices and guidelines of Patient financial services, Medical coding, liens, balance billing, usual customary and reasonable (UCR) cost of care and documentation.

- *(D) Paulette Diaz, et al, vs. MDC Restaurants, LLC et al;* Case A 701633 Department XV class action complaint in the Eighth Judicial District Court in and for Clark County, State of Nevada. Served as rebuttal expert in a case concerning what constitutes "health insurance," qualified health insurance plans, and those expenses covered generally under insurance and specifically under ACA plans, Medicaid and Medicaid waivers and under what conditions they would be covered.  Apply national perspective to health insurance coverage under The Nevada Administrative Code§ 608. and §608.104, Nevada Labor Commissioner's regulations and opinions regarding the convolution of the Act, and a review of specific benefits offered by an employer of minimum wage workers in comparison to national industry best practices and guidelines in respect to the Patient Protection :md Affordable Care Act ("ACA"), including Medicaid Expansion in Nevada, Minimum Essential Coverage ("MEC"), out-of-pocket limits, and Federal Poverty Level (FPL) guidelines. Areas of testimony also included the tenets of cost-sharing subsidies and minimum essential coverage (MEC), benchmark plans, , generally, as well as within federal laws such as the Health Insurance Portability and Accountability Act of 1996 (HIPAA), Employee Retirement Income Security Act of 1974 (ERISA) and related issues, including Taft-Hartley trusts and Centers for Medicare and Medicaid (CMS).

17

App. 033

DRAFT Case List for Expert Witness Michael F. Arrigo

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

- (D) *Natalie Torres v Pocatello Children and Adolescent Clinic, et al*., Case CV-2013-1553. District Court of Sixth Judicial District of the State of Idaho, Bannock County.  Expert opinion re: future medical expenses and those expenses covered generally under insurance and specifically under ACA plans, Medicaid and Medicaid waivers and under what conditions they would be covered.  Review deposition testimony of opposing counsel's healthcare economist, medical experts and consider Affordable Care Act and the policies of insurance available under the ACA through the Idaho Exchange, as well as Medicaid under a §1915(c) of the Social Security Act, Home and Community-Based Services Waiver Medicare-Medicaid Coordinated Plan (MMCP), as described in Idaho Law (IDAPA 16.03.17).  Determine applicability of Prohibition of Preexisting Condition Exclusions (45 CFR § 147.108), Medicare Expansion and Health Insurance Exchanges.

- (D) *King v. Pediatric Surgical Group, Baptist Hospital of Miami, Baptist Children's Hospital et al*, In the Circuit Court of the 11th Judicial District In-and for Miami Dade County Florida General Jurisdiction Division State of Florida Case 09-47443 CA 11. Expert opinion re: future medical expenses for pain management and other treatments under the Affordable Care Act.  Opinion regarding those expenses covered generally under insurance and specifically under ACA plans, Medicaid and Medicaid waivers and under what conditions they would be covered. Review deposition testimony of opposing counsel's healthcare economist, medical experts and consider Affordable Care Act and the policies of insurance available under the ACA through the Florida Insurance Exchange, Medicaid expansion, Federal Poverty Level (FPL) calculations, as well as dual eligible Medicare and Medicaid post age 65, Medicaid under a §1915(c) of the Social Security Act, Home and Community-Based Services Waiver Medicare-Medicaid Coordinated Plan (MMCP), as described in Florida Law.  Evaluate metal plan coverage by actuarial value, and cost sharing subsidies to estimate maximum out of pocket for lifetime of patient. Determine applicability of Prohibition of Preexisting Condition Exclusions (45 CFR § 147.108).

18

App. 034

DRAFT Case List for Expert Witness Michael F. Arrigo

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

- (D) *Bradley Welding v Franscali and Orthopedic Associates of Northern Illinois*, In the State of Illinois in the Circuit Court of the 17th Judicial Circuit Winnebago County, Illinois Case 12 L 323. Expert opinion re: accuracy of data for future medical expenses including pain management modalities (Ketamine Infusions, Continuous Epidural Spinal Infusion, Continuous Spinal Cord Stimulator, Dorsal Root Ganglia Stimulator) and supporting medical durable medical equipment (DME) pain management device (s).  Review deposition testimony of opposing counsel's healthcare economist, medical experts and consider Affordable Care Act and the policies of insurance available under the ACA through the Illinois Exchange, Medicaid expansion, Federal Poverty Level (FPL) calculations, as well as dual eligible Medicare and Medicaid post age 65, Medicaid under a §1915(c) of the Social Security Act, Home and Community-Based Services Waiver Medicare-Medicaid Coordinated Plan (MMCP) for disabled insureds as described in Illinois Law. Evaluate "metal plan" (bronze, silver, etc.) coverage by actuarial value, and cost sharing subsidies to estimate maximum out of pocket for lifetime of patient. Condition Exclusions (45 CFR § 147.108).

- (D) *McDermott v. Children's Hospital of Philadelphia, In the State of Pennsylvania, County of Philadelphia, Case December 2014 term, NO. 003103.* Opinions regarding alleged $9.8 million in future medical expenses covered generally under insurance and specifically under ACA plans, Medicaid and Medicaid waivers and under what conditions they would be covered.  Review deposition testimony of opposing counsel's healthcare economist, medical experts and consider Affordable Care Act and the policies of insurance available under the ACA through the New Jersey or Pennsylvania Insurance Exchanges, Medicaid expansion, Federal Poverty Level (FPL) calculations, as well as dual eligible Medicare and Medicaid post age 65, Medicaid under a §1915(c) of the Social Security Act, Home and Community-Based Services Waiver Medicare-Medicaid Coordinated Plan (MMCP), Minimum Essential Coverage (MEC) and Essential Health Benefits (EHB), analysis as described in New Jersey Law (case venue is Pennsylvania, at the time of this update the court has

App. 035

DRAFT Case List for Expert Witness Michael F. Arrigo

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

determined it will be heard under New Jersey Law).  Evaluate metal plan coverage by actuarial value, and cost sharing subsidies to estimate maximum out of pocket for lifetime of patient. Compare Life Care plans and prescribed medical services to those covered in State Benchmark Plans. Determine applicability of Prohibition of Preexisting Condition Exclusions (45 CFR § 147.108) and disabilities. Discuss impact of ACA on companion laws and standards that cover disabled individuals and workplace accommodations for essential job functions, such as Rights and Responsibilities under Section 504 and the Americans with Disabilities Act (ADA) and the Olmstead Plan (including duties of 'Covered Entities' aka "HIPAA Covered Entities" which means, health care providers, payors and others).  Section 1557 of the Patient Protection and Affordable Care Act (ACA), punctuates other pre-existing regulations regarding people with disabilities.  Section 1557 is intended to "…ensure that an individual is not excluded from participating in, denied benefits because of, or subjected to discrimination as prohibited under Section 504 of the Rehabilitation Act of 1973 (disability).

- (D) *U.S. Attorney General and Carefirst v. Confidential* - Prepare and provide input for presentation for AUSA re: benefits management systems, policies, industry best practices and guidelines and statutes related to an investigation into accuracy of data in payor – provider relationships involving alleged fraud; qualified health insurance for self-insured employers.  Prepare summary of enrollment technology in health plans for group insureds by self-insured employers.

- (D) *California State Compensation Insurance Fund (SCIF) v Drobot, Pacific Hospital et* al; Case No. 13-00956 AG (CWx) in United States District Court, Central District of California.  Opinion re: 18 U.S.C. § 1962(c) (CIVIL RICO); 18 U.S.C. § 1962(d) (CIVIL RICO CONSPIRACY); FRAUD; UNFAIR COMPETITION, (Bus. & Prof. Code § 17200) with respect to lack of accurate data in fraudulent claims under worker's compensation; opinion on SIU, Utilization Management, Relative Value Units (RVUs) and physician compensation Independent

App. 036

DRAFT Case List for Expert Witness Michael F. Arrigo

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

Bill Review, State Rates and duty to ensure accuracy of records, "Experience Modification Rate" or XMod

### C. Qui Tam / False Claims Act, Meaningful Use, Medicare Advantage Risk Adjustment, Best Practices in Medical Coding and Reimbursement, Duty of MAO to Ensure Accuracy of Information, Damages Calculations

- *(D) U.S. Attorney General v. Confidential Hospital System in Ohio* - - Prepare and deliver presentation before AUSA, OIG, HHS and FBI re: investigation into Meaningful Use of Electronic Health records (ONC certification of software and CMS, Medicaid Attestations) to defend client against potential litigation related to False Claims Act.

  - 45 CFR §170.314 (subsections); 45 CFR §170.304 electronic health record certification criteria (Meaningful Use)
  - HIPAA Privacy and Security Assessment
  - 31 U.S.C. § 3729.  (a) False Claims Act with respect to IT systems, processes and people to maintain accurate records.

- *('R) United States of America ex. rel. Olivia Graves v. Plaza Medical Centers, Humana* et al; 10-23382-CIV-Moreno in United States District Court, Southern District of Florida.  *Opinion re: Duty of Medicare Part C health plan to ensure accuracy of patient records including coding, billing and risk adjustment focusing on population of diabetics (or alleged diabetics) with comorbid conditions (CCs) and major comorbid conditions (MCCs); nephropathy and other complications. Opinion re: Duty of Medicare Part C health plan to ensure accuracy of patient records including coding, billing and risk adjustment. Patient Protection and Affordable Care Act (minimum certification standards and responsibilities of qualified health plan (QHP) issuers,) 45 CFR Parts 146, 147, 148, 153, 155, 156, 158; False Claims Act, 31 USC 3729 false claims act section a1g; §422.118; Confidentiality and accuracy of enrollee records; Requirement to submit accurate data to CMS 42 CFR §§ 422.308 (c) and 422.310; Affordable Care Act 42 USC 1320(a)-7k; Risk adjustment, Risk*

App. 037

DRAFT Case List for Expert Witness Michael F. Arrigo

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

*Corridors, RADV audit methodology - duty to ensure accuracy of clinical documentation and coding, HEDIS scores under Medicare Part C.  Damages calculations using CMS risk adjustment calculations, encounter and claims data, ICD-9 diagnoses grouped to HCC risk adjustments.*

*Evaluate potential risk adjustment factors and economic reimbursement for the following subcategories:*

- *acute urate nephropathy*
- *amyloid nephropathy*
- *analgesic nephropathy*
- *Balkan nephropathy*
- *BK polyomavirus nephropathy*
- *cadmium nephropathy*
- *cast nephropathy*
- *cholemic nephropathy*
- *chronic urate nephropathy*
- *contrast nephropathy*
- *C1q nephropathy*
- *diabetic nephropathy*
- *familial juvenile hyperuricemic nephropathy*
- *gouty nephropathy*
- *heavy metal nephropathy*
- *HIV-associated nephropathy*
- *hypokalemic nephropathy*
- *IgA nephropathy*
- *IgM nephropathy*
- *immunoglobulin A nephropathy*
- *immunoglobulin M nephropathy*
- *ischemic nephropathy*

DRAFT Case List for Expert Witness Michael F. Arrigo

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

- *kaliopenic nephropathy*
- *lead nephropathy*
- *light chain nephropathy*
- *membranous nephropathy*
- *mercury nephropathy*
- *minimal change nephropathy*
- *mycotoxic nephropathy*
- *myeloma cast nephropathy*
- *obstructive nephropathy*
- *polyomavirus type BK nephropathy*
- *potassium-losing nephropathy*
- *radiocontrast nephropathy*
- *reflux nephropathy*
- *salt-losing nephropathy*
- *saturnine nephropathy*
- *sickle cell nephropathy*
- *sodium-losing nephropathy*
- *thin basement membrane nephropathy*
- *toxic nephropathy*
- *urate nephropathy*
- *vasomotor nephropathy*

- (D*) Laurence Peter Reininger v. Cedars Sinai Medical Center and CPLM, a Pathology Group Affiliated with Cedars Sinai and Dr. M. Amin* – Provide expert rebuttal opinion regarding molecular diagnostic pathology laboratory coding and billing and best practices in 31 U.S.C. § 3729.  (a) False Claims Act; opinions based in part on NCCI (National Correct Coding Initiative), and industry best practices and guidelines regarding CPT coding for pathology, diagnostics, clinical

DRAFT Case List for Expert Witness Michael F. Arrigo

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

dosages, and physician supervision and Medicare Part C reimbursement under risk adjustment scenarios.  Evaluation of use of combination of codes including:

    i.    CPT **87491** infectious agent detection by nucleic acid (DNA or RNA); Chlamydia trachomatis, amplified probe technique

    ii.    CPT **87623** Infectious agent detection by nucleic acid (DNA or RNA); Human Papillomavirus (HPV), low-risk types (e.g., 6, 11, 42, 43, 44),

    iii.    **87624** Infectious agent detection by nucleic acid (DNA or RNA); Human Papillomavirus (HPV), high-risk types (e.g., 16, 18, 31, 33, 35, 39, 45, 51, 52, 56, 58, 59, 68),

    iv.    **87625** Infectious agent detection by nucleic acid (DNA or RNA); Human Papillomavirus (HPV), types 16 and 18 only, includes type 45, if performed;

    v.    Modifiers including:

    vi.    **91** (repeat clinical diagnostic laboratory test is used to report the <u>same lab test</u> when performed on the <u>same patient, on the same day</u>, to obtain subsequent test results) and

    vii.    **59** (when reporting lab procedures, modifier 59 is used when the <u>same lab procedure</u> is done, but <u>different specimens</u> are obtained, or the <u>cultures are obtained from different sites</u>).

- *('R) United States Ex. Rel. Manijeh Nikakhtar MD v. Mission City Community Network, Nick Gupta et al* – CASE NUMBER CV 12-3692-PSG (SHX) - United States District Court, Central District of California.  Opinion re: industry best practices and guidelines to comply with Section 10501(i)(3)(B) of the Affordable Care Act, and whether data reporting under the ACA is also a financial matter of reimbursement for both CMS / Medicare and California State Medi-Cal during the transition from the All-Inclusive Rate Reimbursement (AIRR) to a new Prospective Payment System (PPS) for Federally Qualified Health Centers (FQHC) and any differences in reimbursement based on national and regional standards and unit of work measures called Relative Value Units (RVUs).  Evaluation of Freedom of Information Act (FOIA) obtained materials regarding FQHC compliance to U.S. HHS / Health Resources and Services (HRSA) standards and Medicare Part C reimbursement under risk adjustment scenarios.  Evaluation and management (E&M), pathology, medication management fees and other coding and billing regulations and industry best practices.  Patient population includes skilled nursing, behavioral health,

App. 040

DRAFT Case List for Expert Witness Michael F. Arrigo

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

ambulatory settings.

Continued, please see next page

25

App. 041

DRAFT Case List for Expert Witness Michael F. Arrigo

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

- (P) California Kidney Medical Group v Thakkar et al.  Case BC587216 Evaluate business plan and provide opinion of future revenue streams for nephology and pathology business.  Review medical documentation, coding and claims reimbursement practices re: diagnostic and interventional procedures related to patients' dialysis access needs.  Opinions based on all-inclusive fees for risk-adjusted patients with End Stage Renal Disease ("ESRD") Medicare Part C reimbursement under risk adjustment scenarios including "Medicare composite rate," routine pathology tests associated with ESRD patients, non-routine 'send out' tests, and compliance with 42 CFR Part 422 – Medicare Advantage Program, 42 CFR §422 and ESRD Prospective Payment System (ESRD PPS) – Section 153(b) of Pub. L. 110-275, the Medicare Improvements for Patients and Providers Act of 2008 (MIPPA) amended section 1881(b) of the Social Security Act to require the implementation of an ESRD bundled payment system and updates from 2004 as well as updates through 2015. Evaluate potential issues with double billing / fraud.  Tests include these as well as 'esoteric tests':

| | | | |
|---|---|---|---|
| Albumin | Homocysteine | Blood Type (ABO) | PD Fluid Cell Count |
| Alkaline Phosphate | Iron | Blood Type (Rh) | Progesterone |
| ALT/SGPT | LDH | C. Difficile Toxin | Prolactin |
| Aluminum | Lipid Panel | CA 125 | PSA Free |
| Anti HCV | Magnesium | Calcium Ionized | Renin Activity (plasma) |
| AST/SGOT | Microalbumin (24 hr) | Carnitine | Rheumatoid Factor |
| B Type Natruiretic Peptide | Microalbumin (random urine) | CEA | SHBG |
| Basic Metabolic Panel | Occult Blood | CK-MB | SPEP |
| Bilirubin Direct | Parathyroid Hormone | Complement 3 (C3) | Sputum Culture |
| Bilirubin Total | Phosphorus | Complement 4 (C4) | Stool Culture |
| Blood Urea Nitrogen | Potassium | C-Peptide | Swab Culture |
| Calcium | Prealbumin | CPK | T3 Uptake |
| Carbon Dioxide | Protein Total | Creatine Kinase Isoenzymes | Tacrolimus |
| Chloride | Protime | Cyclosporine | Testosterone Free |
| Cholesterol | PSA | Dilantin | Testosterone Total |
| CK-CPK (Creatinine Kinase) | PSA Total | Drug Screen (serum) | Total T3 |
| Complate Blood Count (platelet) | PTT | Drug Screen (serum) confirm | UPEP (24 hr) |
| Complete Blood Count (CBC) | Reticulocyte Count | Erythropoeitin | UPEP (random) |
| Creatinine | Sodium | Estradiol | Urinalysis |
| Creatinine Clearance | Thyroid Stimulating Hormone | Estriol | Urinalysis Complete w/ |
| Creatinine Urine (24 hr) | Total Iron Binding Capacity | Free T3 | Urinalysis Complete w/ |
| Creatinine Urine (random) | Total Protein Urine (24 hrs) | Free T4 | Urine C&S |
| Digoxin | Total Protein Urine (random) | FSH | Valporic Acid |
| Electrolyte Panel | Total Protein/Creatinine Ratio | Gentamycin | Vitamin A (retinal) |
| Erythrocyte Sedimentation Rate | Total T4 | Giardia Antigen | Vitamin B 1 (thyamin) |
| Ferritin | Triglycerides | Gram Stain | Vitamin B2 (riboflavin) |
| Folate (Folic Acid) | UIBC | Hepatitis B Core IgM Antibody | Vitamin B6 (pyridoxine) |
| GOT | Uric Acid | Hepatitis B Core Total | Vitamin C |
| Glucose | Vancomycin | Hepatitis C RNA by PCR | Vitamin D 25 Hydroxy |
| Hematocrit | Vitamin B1 2 | Hepatitis C RNA by PCR | Vitamin D Di-hydroxy |
| Hemoglobin | **Send Out Tests** | Hepatitis C w/ RIBA | Vitamin D Panel |
| Hemoglobin A 1c | Alfa Fetaprotein | HIV Screening | Vitamin E (tocopherol) |
| Hemoglobin A 1c w/ MBG (eAG) | Amikacin | Immunofixation, serum | |
| Hepatic Function Panel | Ammonia | LH | |
| Hepatitis B Antibody (HBsAb | Amylase | Lipase | |
| Hepatitis B Antigen (HBs AG) | ANA w/ reflex to titer | Methylmelonic Acid | |
| High Density Lipoprotein | ANCA | Myoglobulin | |
| Highly Sensitive C Reactive Protein | Blood Culture | Ova & Parasites (O&P) | |

App. 042

DRAFT Case List for Expert Witness Michael F. Arrigo

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

## Section II – Healthcare: Economics related to Medical Coding, Clinical Documentation and Value of Health Care Services (Usual, Customary and Reasonable Cost of Care (UCR)), Payor Determination of Medical Necessity, Economic value of healthcare claims, revenue attribution

### Damages Calculations, Usual Customary and Reasonable Cost of Care

- (P) *Vovea v. Vinh et al* Case 115CV280641 Superior Court of California, County of Santa Clara.  Rebuttal expert regarding whether emergency medical fees including Trauma Activation, ambulance transportation (including mileage, supplies, other fees) are reasonable customary and necessary according to industry best practices and guidelines. Specifically, evaluate the documentation by an emergency response team and whether it supports U.S. Centers for Disease Control (CDC) Guidelines for Field Triage of Injured Patients: Recommendations of the National Expert Panel on Field Triage, 2011; Federal Interagency Committee on Emergency Medical Services (FICEMS), established by Public Law 109-59, and section 10202 (*18*) California Health and Safety Code § 1371.4 a provision of the Knox-Keene Act.  Provide geographic market analysis of usual customary and reasonable (UCR) fees for orthopedic, pain management, medical device (s) and supplies, medication, behavioral health, rehabilitation medical expenses; ICD-9 diagnosis, CPT outpatient procedures, HCPCS medical supplies, ambulance fee medical coding.

- (P) *Giraldo v. Canta and Groceryworks.com et al* Case CGC-15-544893 Superior Court of California, County of San Francisco.  Rebuttal expert regarding whether emergency medical fees including Trauma Activation, ambulance transportation (including mileage, supplies, other fees) are reasonable customary and necessary according to industry best practices and guidelines. Specifically, evaluate the documentation by an emergency response team and whether it supports U.S.

27

App. 043

DRAFT Case List for Expert Witness Michael F. Arrigo

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

Centers for Disease Control (CDC) Guidelines for Field Triage of Injured Patients:
Recommendations of the National Expert Panel on Field Triage, 2011; Federal
Interagency Committee on Emergency Medical Services (FICEMS), established by
Public Law 109-59, and section 10202 (*18*) California Health and Safety Code §
1371.4 a provision of the Knox-Keene Act.  Provide geographic market analysis of
usual customary and reasonable (UCR) fees for orthopedic, pain management,
medical device (s) and supplies, medication, behavioral health, rehabilitation medical
expenses; ICD-9 diagnosis, CPT outpatient procedures, HCPCS medical supplies,
ambulance fee medical coding.

- *(P) Seiler v. Sanford Medical Center* Civ. No. 14-3033 Second Judicial Court State
  of South Dakota, Minnehaha County- Retained in a case involving both personal
  injury and complex Third Party Liability rules for insurance claims of auto insurance
  and health insurance payors.  Alleged intentional refusal by a hospital to submit
  patient's charges to health insurance for payment in anticipation of a more favorable
  reimbursement as the result of a tort claim, as tortious interference with client's
  contract with his health insurance.  Opine re role, industry best practices and
  guidelines of Patient financial services, Medical coding, liens, balance billing, usual
  customary and reasonable (UCR) cost of care and documentation of necessity for
  ambulance transportation, orthopedic, medical device (s), pain management,
  neurological inpatient (ICD-9 and Diagnosis Related Groupings or DRGs) trauma
  activation fees, surgical procedure and outpatient CPT codes. Applicable Statutes
  include: Federal statutes and best practices: Fair and Accurate Credit Transactions
  Act ("FACTA**")** Fair Credit Reporting Act (FCRA). FACTA §312(a),
  (FACTA§312(c), FCRA §623(e)(1)), FCRA §623(a)(8)); Ability of patients as
  consumers to dispute information with companies that report to credit bureaus;
  Affordable Care Act ( not for profit hospitals required to offer community benefit in
  exchange for its tax-exempt status[1] (see Rev. Rul. 69-545, 1969-2 C.B. 117.)),

---

[1]"Examples illustrate whether a nonprofit hospital claiming exemption under section 501(c)(3) of

App. 044

DRAFT Case List for Expert Witness Michael F. Arrigo

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

Common Law - duty to mitigate damages by health center.  Prepare for trial – provide overview of how health care claims process and third party liability works to educate trier of fact.

- (D*) Minton v City of Thousand Oaks, Time Warner Cable -* Usual customary and reasonable fees, coding and billing and resulting charges including CPT, MRI, CPT, ED, ambulance, orthopedic surgical, chiropractic, pharmacy (NDC codes for medication) physical therapy, and other procedures; duty to mitigate costs, ambulance and non-emergency transportation costs, three-day payment rule 42 CFR 412.2(c)(5); medical device (s), supplies, evaluate potential merits for U.S.C. § 3729. ICD-9, CPT, DRG, HCPCS and hospital revenue coding, duty to mitigate damages under California statutes, Section 1886(d) of the Social Security Act and Title 42: Public Health Part 412—Prospective Payment Systems for Inpatient Hospital Services.

- (P) *UCLA Medical Center v. Blue Cross Blue Shield* – Binding arbitration with AAA case no. 722013001112.  Pre-arbitration expert consultant for mediation with JAMS reference number 1200051271. Provide expert opinion on role of Medicare Administrative Contractors (MACs) in providing reimbursement rates and the historical pricing guidance and usage of nuclear medicine codes. Provide expert opinion on reimbursement for Technical Component (TC) and Professional Component (PC) as well as Relative Value Units (RVUs) of diagnostic imaging services primarily used for Oncology (Nuclear Medicine, PET-Scan) based on specific services by CPT code.

- (P) *Allstate v Confidential Defendants* – Michigan retained as expert advisor to evaluate nationwide diagnostic imaging reimbursement for professional component (PC) and technical component (TC) as well as RVUs focusing on Magnetic

---

the Code is operated to serve a public rather than a private interest; Revenue Ruling 56-185 modified.″  – IRS.gov/pub/irs-tege/rr69-545.pdf  (see Rev. Rul. 69-545, 1969-2 C.B. 117.)[1]

App. 045

DRAFT Case List for Expert Witness Michael F. Arrigo

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

Resonance Imaging (MRI) Usual, Customary and Reasonable pricing, CPT coding and billing and resulting charges, and supporting clinical data - Criteria for determining reasonable charges 45 CFR §405.502; Michigan State automobile insurance (no-fault).

- (P) *Rhodes v Renown* – CV14-02054 in the Second Judicial District Court of the State of Nevada in and for the County of Washoe. Patient financial services, Medical coding, usual customary and reasonable (UCR) cost of care and documentation of necessity for outpatient obstetrics surgical procedure and CPT codes, medical device (s) and supplies. Applicable State Statutes include: Uninsured patient discount (NRS 439B.260); Federal statutes and best practices: Fair and Accurate Credit Transactions Act ("FACTA**")** Fair Credit Reporting Act **(**FCRA). FACTA §312(a), (FACTA§312(c), FCRA §623(e)(1)), FCRA §623(a)(8)); Ability of patients as consumers to dispute information with companies that report to credit bureaus; Affordable Care Act ( not for profit hospitals required to offer community benefit in exchange for its tax-exempt status[2] (see Rev. Rul. 69-545, 1969-2 C.B. 117.))

- (P) *John D. Thomson v. HMC Group, Torrance Medical Center* Et al. CV13 - 03273 D M G United States District Court, Central District of California Expert opinion regarding hospital facility revenues for use in damages calculations for surgical suites based on industry best practices and statutes associated with damages related to intellectual property rights litigation.  Evaluation of revenues attributable to surgical suites based on Inpatient Prospective Payment System (IPPS) and Outpatient Prospective Payment System (OPPS) using defendant provided materials as well as government sources from HHS / CMS.  Demonstrated expertise in statutory mandates such as Diagnosis Related Groupings (DRGs), ICD-9, ICD-10 and CPT codes.

---

[2]"Examples illustrate whether a nonprofit hospital claiming exemption under section 501(c)(3) of the Code is operated to serve a public rather than a private interest; Revenue Ruling 56-185 modified." – IRS.gov/pub/irs-tege/rr69-545.pdf  (see Rev. Rul. 69-545, 1969-2 C.B. 117.)[2]

App. 046

DRAFT Case List for Expert Witness Michael F. Arrigo

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

Applicable statutes include: Section 1886(d) of the Social Security Act and Title Tax
Equity and Fiscal Responsibility Act of 1982 (TEFRA) P.L. 98–21, Approved April
20, 1983, 42: Public Health Part 412, Criteria for determining reasonable charges 45
CFR §405.502, 42 CFR 412.2(c)(5) ).  § 412.2 "Basis of payment" and 42 CFR
412.60 - DRG classification and weighting factors provides the method to calculate
DRGs.

- (D) *Joann Hilton v. USA Logistics Carriers, LLC and Jose Juan Soto-Estrada*,
  Case No. C879214-J, in the 430th District Court of Hidalgo County, Texas.   Usual
  customary and reasonable fees, coding and billing and resulting charges including
  CPT, MRI, CPT, ED, ambulance, emergency room (including explanation to court of
  of Level 1, Level 2, Level 3, Level 4, Level 5 ED visits), trauma activation fees, cost
  of ER and OR per minute, spinal fusion procedure (orthopedic surgical), medical
  device (s) including surgical screws, surgical screws, supplies, chiropractic, pharmacy
  (NDC codes for medication), pain management, physical therapy, and other
  procedures; duty to mitigate costs, ambulance and non-emergency transportation
  costs, three-day payment rule 42 CFR 412.2(c)(5); evaluate potential merits for
  U.S.C. § 3729. ICD-9, CPT, DRG, HCPCS and hospital revenue coding, duty to
  mitigate damages under Texas statutes, Section 1886(d) of the Social Security Act
  and Title 42: Public Health Part 412—Prospective Payment Systems for Inpatient
  Hospital Services.

- (D) *Jorge Uribe v. City of Maywood and Andrew Serrata* J.S.I.D. File 10-0416
  L.A.S.D. URN 010-00058?3199-055 Los Angeles County District Office Bureau of
  Fraud and Corruption Prosecutions Justice System Integrity Division. Determination
  of Usual Customary and Reasonable (UCR) cost of care for approximately $500,000
  in medical bills including surgery for internal injuries caused by gunshot wounds –
  trauma activation fees, ambulance transportation, cardiology, orthopedics, pathology /
  lab tests and interpretations, and diagnostic imaging medical specialties including CT
  and MRI, room charges, operating room minutes, medications, anesthesia, evaluation
  and management (E&M). Evaluate codes and episodic groupings (DRGs) for

31

App. 047

DRAFT Case List for Expert Witness Michael F. Arrigo

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

inpatient days, ambulatory procedures, rehabilitation, surgical procedures, supplies and device costs, duty to mitigate damages. Relevant statutes, industry standards and best practice: Section 1886(d) of the Social Security Act and Title 42: Public Health Part 412—Inpatient Prospective Payment System (IPPS) for Hospital Services and customary rehabilitation charges and reimbursement.

- (P) *Jim Casciani v. Gerald Anger, Jr., et al*; SCV-255002 Santa Rosa CA Sonoma County Superior Court. Expert report - usual, reasonable and customary (UCR) for medical imaging coding and billing and resulting charges – trauma activation fees, MRI, ER, orthopedic, dental, pathology, and other procedures, inpatient DRG, ICD-9 and ambulatory CPT coding as it pertains to cost of care.

- (D)*Raul Martinez v. Lee Ill Young*, – BC489656, Superior Court of the State of California for the County of Los Angeles, Central District Determination of Usual Customary and Reasonable (UCR) cost of care medical bills including spinal fusion surgery for orthopedics, and diagnostic imaging medical specialties. Evaluate codes and episodic groupings (DRGs), ICD-9, CPT for inpatient days, ambulatory procedures, rehabilitation, surgical procedures, supplies and device costs, Section 1886(d) of the Social Security Act and Title 42: Public Health Part 412—Prospective Payment Systems for Inpatient Hospital Services. Patient's duty to mitigate medical costs.

- (P) *Smith vs. Musinski MD et al* – 37-2014-000-5897-CU-PL-NC in San Diego Superior court; Provide opinion regarding Usual, Customary and Reasonable charges for evaluation and management (E&M) encounters and coding, supporting clinical documentation as well as inpatient and ambulatory surgery center procedures for Obstetrics and gynecology. Provide opinion regarding potential fraudulent documentation and coding by physician.

- (P) *California Accounts Service v. William Henry Tarkington* - Determination of Usual Customary and Reasonable (UCR) cost of care medical bills including surgery. – Superior Court of California, County of San Diego, Central Division. Usual

App. 048

DRAFT Case List for Expert Witness Michael F. Arrigo

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

customary and reasonable fees, coding and billing and resulting charges including CPT, MRI, CPT, ED, ambulance, orthopedic surgical, chiropractic, physical therapy, and other procedures; duty to mitigate costs, three-day payment rule 42 CFR 412.2(c)(5); evaluate potential merits for U.S.C. § 3729.  (a) False Claims Act; - ICD-9, CPT, DRG, HCPCS and hospital revenue coding.

- (D) *Billrite billing solutions, Inc. v Vinay M. Reddy, MD, individually and doing business as Spine and & Nerve Diagnostic Center.* 34-2014-00166608 SUPERIOR COURT OF THE STATE OF CALIFORNIA COUNTY OF SACRAMENTO- provide opinion regarding industry best practices and guidelines for outsourced medical billing for pain management, electromyogram ("EMG") which are used for among other medical applications, advanced pain management,  diagnostics such as Nerve Conduction Studies (NCS), Epidural Steroid Injection (ESI) and Urine Toxicology Studies for a health care provider and whether medical coding and billing was being performed in compliance with industry best practices and guidelines. Evaluate whether proper coding in compliance with California Workers' Compensation Reform Senate Bill 863 (SB 863) and the National Correct Coding Initiative (NCCI) which provides for guidelines on proper bundling of services (and, flags incorrectly unbundled services which may be due to fraud or up coding). Evaluate claims under California Workers' Compensation and California SB 863 which standardized Workers' Compensation based on Medicare billing rules; Medical Treatment Utilization Schedule (MTUS) which focus on reducing costs and utilization for procedures including chronic pain treatment, neck / upper back procedures, elbow disorders, forearm, wrist, hand, low back, knee procedures, cost of surgical screws and medical device (s).

- (D) *Rose v. Herfy's and Lee* NO. 15-2-14145-7 SEA SUPERIOR COURT OF THE STATE OF WASHINGTON FOR KING COUNTY.  Evaluate over $1.5 million in medical bills including orthopedic procedures, medical device (s) and supplies rehabilitation and skilled nursing billings. Perform regional analysis for Seattle metropolitan area on usual customary and reasonable charges from other providers;

App. 049

DRAFT Case List for Expert Witness Michael F. Arrigo

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

prepare declaration and expert report, pending trial appearance.

# Section III – Healthcare: Expert Advisor / Consultant

## Medicare Advantage, Risk Adjustment, Utilization Management, CMS Regulations

- (D) *Preferred Care Medicare Part C – Florida* - Medicare Advantage HEDIS 5-Star Ratings, provider network clinical data, Utilization Management, Coordination of Benefits, Case Management and claims processing, chart review quality audits and analytics, risk adjustment using HCC and ICD-9 coding, RADV audit methods, RAPS file analytics.

- (D) *Cullman Regional Medical Center, Alabama –* staff productivity on claims processing, liens, balance billing statutes, subrogation claims.  Industry best practices and guidelines for usual, customary and reasonable cost of care.

- (D) *United Healthcare, Florida* - Medicare Advantage HEDIS 5-Star Ratings, provider network clinical data, Utilization Management, Coordination of Benefits, Case Management and claims processing using HCC and ICD-9 coding, RADV audit methods, RAPS file analytics.

- (P) *Optum, Minneapolis* – Expert consultant, Revenue Cycle Management, Healthcare Economics, coding, encoders that support diagnosis and procedure coding using ICD-9 and ICD-10, risk adjustment methods. Advise litigation team at one of the largest law firms in the U.S. on macroeconomic economic issues regarding coding and reimbursement, computer assisted coding, electronic health records; based on prior research in ICD-10 reimbursement risks.

34

App. 050

DRAFT Case List for Expert Witness Michael F. Arrigo

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

- (P) *Boies Schiller & Flexner, LLP* - *Expert advisor and consultant, Revenue Cycle Management, Healthcare Economics, coding, encoders that support diagnosis and procedure coding using ICD-9 and ICD-10, risk adjustment methods. Advise litigation team at one of the largest law firms in the U.S. on economic issues regarding coding and reimbursement.*

## HIPAA Transaction Standards, Medical Coding Standards, Applicability of HIPAA Privacy and Security Rules

- (D) *Regence BlueCross BlueShield, Seattle, Salt Lake, Portland* – ***Medicare Part C, Medicare Part D, Commercial Lines*** - HITECH Act, HIPAA 5010, ICD-10 processes, HIPAA Privacy and Security, DRGs, Ambulatory claims, Inpatient Claims, Ancillary Services, and IT architecture to enable these capabilities, chart review quality audits and analytics, risk adjustment using HCC and ICD-9 coding, RADV audit methods, RAPS file analytics.

- (D) *Public Employees Health Plan of Utah (PEHP)* - HIPAA 5010, ICD-10 processes, HIPAA Privacy and Security, DRGs, Ambulatory claims, Inpatient Claims, and IT architecture to enable these capabilities.

- (D) *Conemaugh Health System (owned by Duke Lifepoint Health System)* - Expert report on ICD-10, clinical documentation and meaningful use of electronic health records including HIPAA Privacy and Security and revenue cycle / reimbursement. Applicable regulations included Department of HHS final regulation (45 CFR §162.1002), 45 CFR §164.308 (subsections), 45 CFR §164.410 (subsections), 45 CFR §164.502 (subsections), 45 CFR §170.314 (subsections); re §31 U.S.C. § 3729 (a) False Claims Act; Usual, Customary and Reasonable medical and prescription charges under ICD-10, Section 1886(d) of the Social Security Act

App. 051

DRAFT Case List for Expert Witness Michael F. Arrigo

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

and (42 CFR §412, Prospective Payment Systems for Inpatient Hospital Services.
Analyzed over 1 million billing and medical records with respect to revenue cycle
management reimbursement risk with leading payers including Medicare, Medicaid,
Blue Shield, Cigna, and Aetna; prompt pay act in Texas (Sec 28.002); Evaluate over
$1 billion in health care claims for risk adjustment, audit quality using RADV
methods, clinical documentation coding quality.

36

DRAFT Case List for Expert Witness Michael F. Arrigo

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

## Medicaid and CHIP Eligibility

- (D) TennCare II – Tennessee State Medicaid and TN Insurance Exchange eligibility - *Expert advisor and consultant regarding TennCare application and eligibility determination process and the implementation of the Affordable Care Act and Medicaid expansion and resulting mandated changes to eligibility. TennCare II is a continuation of the state's demonstration, funded through titles XIX and XXI of the Social Security Act. Focus: state exchange including income and federal poverty level ("FPL") percentage cancelations, behavioral health components, Federal (HHS) Exchanges "Federally-Facilitated Marketplace (FFM)," and State Based Exchange ("SBEs"), State MMIS – Medicaid Management Information Systems, which provide some of the eligibility technology platform for the Exchanges. Focus components include: Behavioral health, Assisted Care Living Facilities (ACLF), prior authorizations for medications via Magellan partnership.*

- *(D) Wal-Mart – Expert advisor to largest self-insured employer globally re: CORE Operating Rules, Medicare Part C, Patient Protection and value of care under the Affordable Care Act, ICD-10 medical coding; HIPAA 5010 EDI (45 CFR §162) Administrative Requirements for healthcare claims processing, employer costs; evaluation of Third Party Administration provided by Blue Cross Blue Shield; (45 CFR § 162.1002) and Usual, Customary and Reasonable medical and prescription charges under ICD-10third party liability claims and worker's compensation insurance. On site advisory at global headquarters with health & wellness leadership chart review quality audits and analytics, risk adjustment using HCC and ICD-9 coding, RADV audit methods, RAPS file analytics of underlying Arkansas Blue Plan.*

App. 053

DRAFT Case List for Expert Witness Michael F. Arrigo

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

### Value Based Care, Accountable Care Organizations, Medicare Part C and Medicare Part D Under Affordable Care Act

- *Essence Health Plan, Medicare Advantage / Part C, Medicare Part D* – **on behalf of Kleiner Perkins Caufield & Byers, St. Louis MO.** *compliance risk in coding, clinical documentation, for compliance with the Affordable Care Act, HITECH Act, ICD-10, Medicare Part A, Medicare Part B, Medicare Part C (Medicare Advantage), Medicare Part D. Accountable Care (Medicare Shared Savings Plan 'MSSP'), Economic value, IT and processes for patient and provider referrals and network management in value based care. Evaluate risk of coding and clinical documentation using RADV audits, analytics, §31 U.S.C. § 3729 (a) False Claims Act; Usual, Customary and Reasonable medical and prescription charges under ICD-10, Section 1886(d) of the Social Security Act and (42 CFR §412, Prospective Payment Systems for Inpatient Hospital Services*

- Citra Health Solutions, Jacksonville FL – *Advisor to CEO. Advise leadership regarding value based care, HIPAA privacy and security, meaningful use, strategic partnerships and acquisitions for Medicare Advantage and Accountable Care market and EZ Cap claims system. Focus on Value Based Pricing, Medicare Advantage Risk Adjustment using HCCs; population health, patient and physician engagement and quality reporting.*

- *Advisor: E.H.R., Accountable Care Organizations, practice management IT companies* - *manage a team that has advised over 100 companies on Meaningful Use, Medicare Advantage, ACA, ICD-10 regulations. Ambulatory, acute care – MU1, MU2, DSM-5, CPT, ICD-9, ICD-10, clinical documentation, HIPAA, Clinical Quality Measures, CA Civil Code §56;*

38

App. 054

DRAFT Case List for Expert Witness Michael F. Arrigo

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

- *Medicare Advantage / Part C Risk Adjustment Methods Under ICD-10*
  including *Risk adjustment, Risk Corridors, RADV audit methodology - duty to ensure accuracy of clinical documentation and coding, HEDIS scores, physician financial incentives / gain share for Medicare Part C.*

| Legal Entity Name | Parent Organization | CMS Region Responsible | | Enrollment | Number of H Plan Nos. |
|---|---|---|---|---|---|
| BCBS OF MICHIGAN MUTUAL INSURANCE COMPANY | Blue Cross Blue Shield of Michigan | Chicago | IL | 336,511 | 34 |
| UPMC HEALTH PLAN, INC. | UPMC Health System | Philadelphia | PA | 121,665 | 12 |
| TRIPLE S ADVANTAGE, INC. | Triple-S Management Corporation | New York | NY | 108,734 | 10 |
| BLUE CARE NETWORK OF MICHIGAN | Blue Cross Blue Shield of Michigan | Chicago | IL | 74,639 | 7 |
| EXCELLUS HEALTH PLAN, INC. | Lifetime Healthcare, Inc. | New York | NY | 69,430 | 7 |
| CARE1ST HEALTH PLAN | California Physicians' Service | San Francisco | CA | 62,190 | 6 |
| REGENCE BLUECROSS BLUESHIELD OF OREGON | Cambia Health Solutions, Inc. | Seattle | WA | 55,545 | 5 |
| PROVIDENCE HEALTH PLAN | Providence Health & Services | Seattle | WA | 49,015 | 5 |
| BLUE CROSS AND BLUE SHIELD OF FLORIDA, INC. | Guidewell Mutual Holding Corporation | Atlanta | GA | 47,172 | 4 |
| EXCELLUS HEALTH PLAN, INC. | Lifetime Healthcare, Inc. | New York | NY | 45,932 | 4 |
| HEALTH CARE SERVICE CORPORATION | Health Care Service Corporation | Dallas | TX | 27,140 | 3 |
| SELECTHEALTH, INC. | Intermountain Health Care, Inc. | Denver | CO | 35,575 | 3 |
| BLUE CROSS OF IDAHO CARE PLUS, INC. | Blue Cross of Idaho Health Services, Inc. | Seattle | WA | 19,982 | 2 |
| REGENCE BLUESHIELD | Cambia Health Solutions, Inc. | Seattle | WA | 22,498 | 2 |
| HORIZON INSURANCE COMPANY | Horizon Healthcare Services, Inc. | New York | NY | 24,048 | 2 |
| PREFERRED CARE | Horizon Healthcare Services, Inc. | Miami | FL | n/a | 1 |

App. 055

DRAFT Case List for Expert Witness Michael F. Arrigo

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

## FDA Compliance and Medical Devices

### *Advanced Medical Optics (Now Abbott Medical Optics) v. Confidential*

Development of AMO's global complaint handling system for Adverse Event reporting mandated by the U.S. Food and Drug Administration.  Roll out solution in U.S., Europe, and Asia for company's medical device and pharmaceutical products.  Lead team to develop all documentation of policies and procedures, integration with SAP Customer Relationship Management System (CRM) and development of systems and reports for compliance.  Serve as expert consultant re: investigation into compliance by Regulatory Affairs.   Second project: Lead development of embedded systems for medical instruments and ensure FDA compliance to standards.

App. 056

DRAFT Case List for Expert Witness Michael F. Arrigo

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

## Percutaneous Testing for Allergens

- *('R) United States of America ex. rel. (Confidential) vs. Confidential defendants – advise during sealed case investigation.*  Review of coding, billing, and applicable industry best practices and statutes regarding percutaneous tests (scratch, puncture, prick) with allergenic extracts, including test interpretation and report, number(s) of tests, and professional services for the supervision of preparation and provision of antigens for allergen immunotherapy; single or multiple antigens. Provide opinion on appropriate billable dosages and whether they vary from physician prescribed clinical dosages and appropriate medical documentation and coding.

## Pharmaceutical Claims and Pharmacy Benefits Management Pricing

- *(P) Pharmacy Benefit Management (PBM)* analytics to review industry best practices on pricing.  Use of analytics to assess Average Wholesale Price (AWP) using First Data Bank and MediSpan and forensic audits to find price manipulation and irregularities in pricing to detect the following tactics:

  - *Re-Defining AWP*
  - *% Factor*
  - *NDC price reporting*
  - *Mark-Ups & Price Spreads*
  - *Backroom Processor Schemes*
  - *Rebate Schemes*
  - *Flat, Access, Market Share*
  - *Rebate Disguising*
  - *Rebate Pumping*
  - *Re-Defining "Brand" and "Generic"*
  - *Formulary Steering*
  - *Pre-Authorization Schemes*
  - *Clinical Rules & Protocols*
  - *Mail-Order Schemes*
  - *Leveraging Captive Facility*
  - *Multiple MAC Lists*
  - *Drug Switching*
  - *Drug Repackaging*
  - *Fraudulent Plan Design*
  - *Zero Cost Scripts*
  - *Higher Than Logic*
  - *Pocketing Refunds, Reversals and Returns*
  - *Payor Account Crediting Tricks*
  - *Specialty Drug Issue*

41

App. 057

DRAFT Case List for Expert Witness Michael F. Arrigo – Updated February 2, 2016

## Medicare Administrative Contractors, Claims, HIPAA Transactions

- *Ability Networks and Medicare Administrative Contractors (MACs) for Confidential Private Equity Firm* – Expert advisor re: diligence in pending $500 million acquisition of the largest network provider of data services and connectivity to all Medicare Administrative Contractors (MACs) in the United States; role of MACs, determination of pricing and eligibility, access to data, anti-trust, HIPAA Privacy and Security, evaluation and opinion regarding future of Medicare MACs in the industry.

App. 058

DRAFT Case List for Expert Witness Michael F. Arrigo – Updated February 2, 2016

## Section IV - Financial Services Regulations

- *(D) First American Financial Corporation (FAF) – Sarbanes Oxley* - *Served as Expert leading largest and most complex Sarbanes Oxley Financial IT audit in the U.S. (according to accounts by PwC) for a Fortune 100.  Report to Audit Committee, outside legal counsel and outside financial audit firm re: SOX Application Controls and General Controls using Control OBjectives for Information and related Technology (COBIT) published by the Information Systems Audit and Control Foundation (ISACF) derived from COSO (Committee of Sponsoring Organizations of the Treadway Commission) which is approved by SEC using 34 IT Governance Processes & 318 Financial and Operational Control Objectives; audit oversight of electronic data resource utilization and security similar in intent to HIPAA privacy and security rules and California Confidentiality of Medical Information Act. Applicable statutes include 17 CFR PARTS 210, 228, 229, 240, 249, 270 and 274; Management's Report on Internal Control Over Financial Reporting and Certification of Disclosure in Exchange Act Periodic Reports, especially Section 404 — Management Assessment of Internal Controls, 29 CFR Part 1980 – Procedures for handling  retaliation complaints under § 806 of the Sarbanes-Oxley Act of 2002, as amended; § 31 U.S.C. § 3729 (a) False Claims Act; 17 CFR Part 210, Retention of records for audits and reviews.*

- *First American - ("FACTA") Fair Credit Reporting Act (FCRA).* FACTA §312(a), (FACTA§312(c), FCRA §623(e)(1)), FCRA §623(a)(8)) – *Lead executive on CredCo process and systems teams to ensure compliance with FCRA and FACTA with respect to loan origination and refinancing*

- *First American - 15 U.S. Code § 1639e - Appraisal independence requirements Office of the Comptroller of the Currency (OCC) standards for real estate lending by national banks in Real Estate Lending Appraisals 12 CFR 23; interagency Appraisal and Evaluation Guidelines OCC 2010-42 (December 10, 2010)*

App. 059

DRAFT Case List for Expert Witness Michael F. Arrigo – Updated February 2, 2016

Index

Affordable Care Act, 6, 18, 19, 20, 23, 26, 30, 31, 38, 39

ambulance, 28, 29, 30, 32, 33, 34

*ARRA HITECH Act*, 6, 7, 8, 9, 10, 16

*Blue Cross*, 30, 38, 40

*Blue Shield*, 30, 37, 38, 40

*CPT*, 6, 16, 25, 28, 29, 30, 31, 32, 33, 34, 39

device, 33

*DRG*, 6, 30, 32, 33, 34

EPIC, 8

ESRD, 27

*Fair Credit Reporting Act*, 29, 31, 44

*False Claims Act*, 6, 7, 8, 9, 13, 17, 22, 23, 25, 34, 37, 39, 44

*HIPAA*, 6, 7, 8, 9, 10, 11, 12, 13, 16, 17, 18, 22, 36, 37, 38, 39, 43, 44

ICD-10, 16, 32, 36, 37, 38, 39

*ICD-9*, 6, 16, 23, 28, 29, 30, 32, 33, 34, 35, 36, 37, 38, 39

Joint Commission, 14

*Meaningful Use*, 6, 7, 8, 9, 10, 13, 16, 17, 22, 39

Medicaid, 13, 18, 19, 20, 21, 22, 37, 38

medical device, 20, 28, 29, 30, 31, 32, 35, 41

Medicare composite rate, 27

*Medicare Part C*, 23, 25, 26, 27, 39, 40

*Part C*, 22, 35, 36, 38, 39, 40

pharmaceutical, 41

risk adjustment, 25, 26, 27, 35, 36, 37, 38

subrogation, 35

supplies, 28, 30, 31, 32, 33, 35

surgical screws, 32, 35

transportation, 28, 29, 30, 32, 33

usual, customary and reasonable, 35

App. 060

not for publication in any form other than in litigation consulting with permission when retained

# Michael F. Arrigo
marrigo@noworldborders.com

*Offices in Boston, Pittsburgh, New York, Washington DC, Nashville, Raleigh, Atlanta, Jacksonville Seattle, Salt Lake City, Denver, Chicago, Dallas, San Francisco, Palo Alto, Orange County, San Diego, Honolulu*

## Education



- **Stanford Medical School, Palo Alto CA -** Studies in Biomedical Informatics (*see end note [i]*) studies in **Bio Ethics at Harvard Medical School.**

- **University of Southern California, Marshall School of Business, Los Angeles –** Bachelor of Science, Business Administration, 1981; studied in Entrepreneur Program which focuses on the management, marketing and finance of startups, first of its kind U.S.

- Clinical documentation, medical coding, billing reimbursement, HIPAA transactions, value based care, risk adjustment matters (*see* **CV Attachment 11** in this CV).

## Professional Affiliations

- Medical Group Management Association (MGMA)
- Health Information Management
- American Academy of Professional Coders (AAPC)
- American Health Information Management Association (AHIMA)
- Systems Society (HIMSS)
- American Academy of Pain Medicine (AAPM)
- Workgroup for Electronic Data Interchange (WEDI)
- Information Systems Audit and Control Association (ISACA)
- Volunteer, Children's Hospital of OC, Medical Intelligence innovation committee
- Guest lecturer, writer (see details herein) Contributor, Strategic Financial Management Newsletter, Healthcare Financial Management Association; prior contributor, Healthcare IT News, GovHealth IT, Mobile Health News, Financial Health News

## Additional Coursework and Training

- **Villanova University** – Lean Six Sigma and Process improvement 2007

- **Wharton School, University of Pennsylvania –** Leadership Strategies - 1982

- **University of Calif., Irvine –** Computer Science, Statistics, Economics '76 – '78

not for publication in any form other than in litigation consulting with permission when retained

## Legal Experience (*See* **Separate Document for List of Cases & Opinions**)

1. Retained by **U.S. DOJ** re: Federal investigation into medical data, Health IT / E.H.R. stimulus funds and False Claims Act

2. Retained by former RAND Economists and Health IT firm for testimony before Federal Trade Commission involving anti-trust and access to clinical data impacting billing and revenue cycle.

3. Federal, State, written testimony in expert reports, depositions, and court appearances re: ACA, HIPAA, medical coding and billing, usual customary and reasonable cost of care, Medicaid Expansion, Medicaid waivers for disabled insureds, and ACA Qualified Health Plans, subsidies, rates and actuarial value.

4. Engaged by plaintiffs, class action attorneys, relators, defendants with experience across payors (including Medicare, Medicaid, social security, workers' compensation, private insurance / health plans), hospital systems and physician groups, patients, healthcare IT, (**see Attachment 11** for experience in various medical specialties). User of eDiscovery tools such as *Relativity* for document discovery work.

## Publications & Lectures

*Arrigo, M. F. (2016) Strategic Financial Management for Healthcare Providers: Clinical Documentation Improvement and Accuracy as a Foundation for Risk Adjustment and Value Based Care. Peer reviewed by editors, compliance staff, clinical and business executives at one of the largest academic medical centers in the U.S. Healthcare Financial Management (HFMA). Published August 17, 2016* https://www.hfma.org/sfp/

*Arrigo, M. F. (2015) Mobile Health, HIPAA Privacy and Security*
*Blackberry Sharpens Security with Good Technology Acquisition. Gov. Health IT*
*http://www.govhealthit.com/blog/commentaryblackberry-sharpens-security-good-technology-acquisition*

*Arrigo, M. F. (2015) Five Interest-Piquing Trends at HIMSS15.  Gov. Health IT*
*http://www.govhealthit.com/news/5-interest-piquing-trends-himss15*

not for publication in any form other than in litigation consulting with permission when retained

Arrigo, M. F. (2014) *Cloud and Mobile Convergence: The Regulatory View.*  Gov. Health IT

*http://www.govhealthit.com/blog/cloud-and-mobile-convergence-regulatory-view*

Arrigo, M.F. (2014) *HIPAA Plain and Simple / HIPAA for Behavioral Health – Credible Behavioral Health E.H.R. Software Users Conference, Baltimore Maryland (18 March 2014)*

Arrigo, M.F. (2014) *DSM 5 and ICD-10 – Credible Behavioral Health E.H.R. Software Users Conference, Baltimore Maryland (18 March 2014)*

Arrigo, M.F. (2014) *Managed Care and Accountable Care for Behavioral Health – Credible Behavioral Health E.H.R. Software Users Conference, Baltimore Maryland (18 March 2014)*

Arrigo, M. F. (2011) *ICD-10 financial impact vs. mortgage crisis? Gov. Health IT*

*http://www.govhealthit.com/news/could-icd-10-have-big-financial-impact-mortgage-crisis*

Arrigo, M. F. (2012) *How a Flaw in the ACO Model Leaves Patients Out.  Gov. Health IT*

http://www.govhealthit.com/news/how-flaw-aco-model-leaves-patients-out

Arrigo, M. F. (2012) *10 ICD-10 Regulation Myths Demystified.  Gov. Health IT*

*http://www.govhealthit.com/news/10-icd-10-regulations-demystified*

Arrigo, M. F. (2012) *Real-time location, mobile health gain traction. Gov. Health IT*

*http://www.govhealthit.com/news/real-time-location-and-mobile-health-solutions-gain-traction-show-roi*

Arrigo, M. F. (2013) *3 Top Priorities for CommonWell.  Gov. Health IT*

*http://www.govhealthit.com/news/3-top-priorities-commonwell*

Arrigo, M. F. (2013) *Commentary: ICD-10 Arrives Early, New Claims Form.  Gov. Health IT*

*http://www.govhealthit.com/news/commentary-icd-10-arrives-early-claims-CMS-coding-HIPAA-icd-9*

Arrigo, M. F. (2014) *Increased Spending - Big Data, Cloud, mHealth Social.  Gov. Health IT*

*http://www.govhealthit.com/blog/increased-spending-and-savings-tap-big-data-cloud-mhealth-and-social*

App. 063

not for publication in any form other than in litigation consulting with permission when retained

*Arrigo, M. F. (2014) Ebola: How cloud, mHealth, and ICD-10 could help.  mHealth News*
*http://www.mhealthnews.com/blog/ebola-how-cloud-mhealth-and-icd-10-could-help*


*Arrigo, M. F. (2014) How Cloud and mHealth Ease Claims Processing (also coverage of Prior*
*Authorization / eligibility HIPAA EDI 270/271, referral EDI 278 transaction.  Gov. Health IT*
*http://www.govhealthit.com/news/how-cloud-and-mhealth-promise-ease-claims-processing*


*Arrigo, M. F. (2014) How to Get Behavioral Health Codes Right.  Gov. Health IT*
*http://www.govhealthit.com/blog/how-get-your-behavioral-health-codes-right*


**Lectures, Adjunct Faculty, Conference Speaking Engagements**


- Arrigo, M. (Speaker) (2015, November 2015) **Medical Device Reimbursement, FDA, FCC and CMS regulatory disruption and opportunities under the Affordable Care Act, ICD-10 and HITECH Act.**  BioMed Device and Wireless Device Conference, San Jose California


- Arrigo, M. (Speaker) (2015, September 2015). **Meaningful Use of Electronic Health Records, HIPAA Privacy and Security and potential damages for breaches under the HITECH Act as a foundation for the International Classification of Diseases from the World Health Organization (ICD-10)** – Discussion of risks and opportunities in these two regulations; discrete data, quality measures, medical codes: clinical Documentation, clinical decision support, physician and patient engagement, HIPAA Privacy and Security and revenue cycle.  Wolters Kluwer Corporate event presented to audience of over 1,800 participants.


- Arrigo, M. and Nichols J. MD - (Speakers) (2013, November). Claims Data, Clinical Data – Working together to Improve Clinical Documentation for **International Classification of Diseases from the World Health Organization (ICD-10)**. **Workgroup for Electronic Data Interchange (WEDI)** National Conference.


- Arrigo, M. (Speaker) (2012, April 14). **The Perfect Storm in Healthcare - How Disruptive Regulations and Technologies Create Risks and Opportunities** for Medical Coding and Revenue Cycle Management. Affordable Care Act, ICD-10, CORE Operating Rules,

App. 064

not for publication in any form other than in litigation consulting with permission when retained

and HITECH Act. American Academy of Professional Coders (AAPC) National Conference. Lecture conducted from Las Vegas, NV. http://news.aapc.com/icd-10-monitor-wish-i-were-in-las-vegas/

- Arrigo, M. (Speaker) (2012, June 14). **ICD-10: Impact on Payment Reform**. **Wisconsin Medical Society**. Lecture conducted from Madison, Wisconsin. http://bit.ly/16acIDy

- Arrigo, M. (Speaker) (2013, April 23). **The Perfect Storm in Healthcare** - How Disruptive Regulations and Technologies Create Risks and Opportunities for Medical Coding and Revenue Cycle Management. Affordable Care Act, ICD-10, CORE Operating Rules, and HITECH Act. **Scripps Healthcare Summit 2013. Lecture conducted from La Jolla, San Diego California**.

- Arrigo, M. (Speaker) (2012, May). How **ICD-10 and Payment Reform Will Change the Radiology Revenue Cycle**. **Radiology Business Management Association (RBMA), Orlando Florida.**

- Arrigo, M. (Speaker) (1994 - 1995).  **Impact of the Internet on medical and financial businesses**, **Loyola University, Los Angeles CA**

- Arrigo, M. (Speaker) (1994 - 1995).  **Impact of the Internet on medical and financial businesses**, **University of California, Irvine CA**

<u>2010 to present</u> **Instructor, HIPAA Privacy and Security, HITECH Act Electronic Health Records, value based care, medical coding and billing audits, Affordable Care Act,** Best practices in HIPAA and HITECH Act Information Privacy and Security[1] and Meaningful Use, Best practices Health IT, process improvement, eligibility and coverage determinations for value based care[2]  Recent courses included instruction at these venues:

- American Health Information Management Association 2016, Baltimore, MD
- JP Morgan Healthcare Conference 2015, San Francisco, CA
- Wolters Kluwer 2015 webcast
- Duke Life Health System 2013, Pittsburgh, PA
- HIMSS 2014
- AAPC Annual Conference 2012, Las Vegas

---

[1] Trained by published author in HIPAA privacy and security and advisor to CMS, HHS on Meaningful use of Electronic Health Records, currently lead training sessions for HIPAA covered entities
[2] Lead training for pharmacists, hospitals, physicians, health IT value based care firms

not for publication in any form other than in litigation consulting with permission when retained

## Non- Litigation Consulting in Healthcare, Software, Financial Services

<u>2007 to Present</u> **- No World Borders** – I lead a healthcare data, regulatory, and economic consulting firm as Managing Partner**.** Our business provides advisory services on disruptive health care regulations for hospitals, insurance companies, self-insured employers, and health IT companies and investors.

### Summary of Accomplishments and Experience

I work with hospital systems, physician groups, and health IT companies, health plans, investors, and law firms. I was selected as an expert for a landmark Federal Trade Commission case regarding healthcare data, regulations and economics.  I currently serve as managing partner of No World Borders.  I am:

- A writer and speaker quoted in Wall Street Journal, and a regular speaker with published works as an expert in the field.

- Prepared by leading litigation firm in Rule 702 including applying scientific or specialized knowledge (702(a)); facts (702(b)); application of principles and methods (702(c)); application of criteria, principles, methodology, test methods (amended in *Daubert*, 2000 - (702(d)) before FTC Commissioner.

- An advisor to value based care companies including Medicare Advantage, Medicare Shared Savings Accountable Care Organizations.

- Led investor diligence on $4 billion in health care merger and acquisition transactions.

- Trained in clinician, coder, medical billing, claims, E.H.R, hospital and practice management software, regulatory, usual, customary and reasonable (UCR) medical and prescription charges.

- Opinions on over $1 billion in medical reimbursements for inpatient facilities (inpatient prospective payment system or IPPS and DRGs, ICD-9) and ambulatory (non-facility using CPT codes)

not for publication in any form other than in litigation consulting with permission when
retained

**Regulatory Consulting for Health Care Provider and Healthcare I.T. Firms**

I competed for, won and led these among other account engagements where large global
firms were also bidding on the business:

- **Duke Life Point Academic Medical Ctr Pittsburgh -** *ACO, ICD-10, Revenue Cycle
  Strategy; HCC risk adjustment for Medicare Advantage.  Evaluate over $1 billion in health
  care claims for risk adjustment, audit quality using RADV methods, clinical documentation
  coding quality.  Evaluate Meaningful Use compliance risk with respect to storage and
  security of discrete data from medical records, data conversion strategies, analytics
  strategies.*

- **Advisory to E.H.R., Accountable Care Organizations, practice management IT
  companies -** *manage a team that has advised over 100 companies on Meaningful Use,
  Medicare Advantage, ACA, ICD-10 regulations. Ambulatory, acute care – MU1, MU2,
  DSM-5, CPT, ICD-9, ICD-10, clinical documentation, HIPAA, Clinical Quality Measures,
  CA Civil Code §56;*

- **Nemours Children's Hospital, Orlando Florida** *Meaningful Use of Electronic Health
  Records, HIPAA transactions for claims processing, HIPAA secure clinical and physical
  plant data interoperability strategy of clinical and health care claims data using enterprise
  web services solutions.  Sharing of data in emergencies between clinical staff and security
  to protect pediatric patients.*

- **Credible, Inc. a leading behavioral health electronic health record software vendor**
  Advise regarding compliance with HIPAA Privacy and Security in general and specific
  privacy and security rules for the Behavioral Health specialty, International Classification
  of Diseases version 10 versus DSM 5, Accountable Care Organizations and Managed
  Care for Behavioral Health.

not for publication in any form other than in litigation consulting with permission when retained

## Regulatory Consulting for Health Plan, Self-Insured Employer Regulations

I competed for, won and led these among other account engagements where large global firms were also bidding on the business:

- **Excellus Blue Cross Blue Shield** – Rochester New York.  Lead consulting engagement to remediate health plan enrollment process and TriZetto Facets Claims system.  Rescue project from off-budget, off plan and restore to on time on budget.

- **Blue Cross Blue Shield / Triple – S** (Salud Puerto Rico) – Lead implementation of TriZetto QNXT claims system including all process models, software implementation and project management office.

- **Preferred Care – Florida -** Medicare Advantage HEDIS 5-Star Ratings, provider network clinical data, Utilization Management, Coordination of Benefits, Case Management and claims processing, chart review quality audits and analytics, risk adjustment using HCC and ICD-9 coding, RADV audit methods, RAPS file analytics.

- **United Healthcare, Florida -** Medicare Advantage HEDIS 5-Star Ratings, provider network clinical data, Utilization Management, Coordination of Benefits, Case Management and claims processing using HCC and ICD-9 coding, RADV audit methods, RAPS file analytics.

- **Public Employees Health Plan – Salt Lake City Utah –** Advise and assess re: new medical coding and medical policy management remediation to comply with ICD-10 which impacts medical policy plan design, actuarial processes, covered amounts, utilization management, eligibility, referrals, covered amount and other factors.

- **Regence BlueCross BlueShield, Seattle, Salt Lake, Portland -** HITECH Act, HIPAA 5010, ICD-10 processes, DRGs, Ambulatory claims, Ancillary Services, and IT architecture to enable these capabilities which impacts medical policy plan design, actuarial processes, covered amounts, utilization management, eligibility, referrals, covered amount calculations and other factors.

- **Walmart – largest self-insured non-military employer globally –** advice regarding HIPAA insurance claims transactions, CORE operating rules, ICD-10, Affordable Care act business and regulatory issues and underlying systems and process issues for the largest self-insured employer in the world.

- **TennCare – Tennessee Medicaid and TN Insurance Exchange eligibility**

- ***Citra Health Solutions, Jacksonville FL*** *– Advisor to CEO.  Advise leadership regarding value based care, HIPAA privacy and security, meaningful use, strategic*

App. 068

not for publication in any form other than in litigation consulting with permission when retained

*partnerships and acquisitions for Medicare Advantage and Accountable Care market. Focus on Value Based Pricing, Medicare Advantage Risk Adjustment using HCCs; population health, patient and physician engagement and quality reporting.*

## Investor Diligence - $4 billion in Health IT M&A transactions

Selected as advisor, investor diligence on large healthcare mergers and acquisitions.

- **London PE Firm -** pre-IPO cloud security business for healthcare.

- **Kleiner Perkins Caufield & Byers**, Silicon Valley **–** work with founding partners of VC that funded Google, Netscape, Amazon, Amgen, Intel, Sun Microsystems on largest cloud healthcare investment *in Medicare Advantage and Accountable Care population health management and analytics*

- In-Network and Out of Network medical charges, 340B Drug discount provider

- **NY PE Firm** – diligence on $500 million acquisition of Medicare Administrative Contractor (MAC) electronic data connectivity and services company. Evaluate financial projections and growth potential, capabilities regarding claims status, new EDI standards, medical policy plan design, actuarial processes, covered amounts, utilization management, eligibility, referrals, covered amount calculations and other factors.

## Medical Device, Pharmaceutical Regulatory Compliance

**Abbott Labs, Medical Optics Div (formerly Advanced Medical Optics) - Regulatory Affairs, FDA Compliance –** led global complaint handling roll out (US, UK, EU, Asia) of pharmacovigilance solution supporting FDA Adverse event reporting rules, National Drug Codes (NDCs), HCPCS, formularies, and health insurance coverage determinations for pharmaceuticals.

## Prior Experience

**October 2002 to February 2007** – **First American** / **CoreLogic - SVP eCommerce –** *Banking solutions $8 billion firm. Led one of the largest most complex Sarbanes Oxley IT audits in the U.S. according to attorneys and accounting firm. Led roll out of single platform eCommerce solution to integrate Wells Fargo, JP Morgan Chase, Bank of America and other transactions for mortgage loan origination (credit, valuation, tax, flood, title, etc.), closing, securitization.*

**2002 to October 2003 – Fidelity - SVP eCommerce** – *Banking solutions $12 billion firm*

App. 069

not for publication in any form other than in litigation consulting with permission when retained

**May 2000 to 2002 – Citrix Systems –** President & CEO (Erogo, a SaaS Cloud billing company) Built *cloud SaaS billing company from $500k to $10 million in revenue and investment by Citrix*

**June 1997 to October 1999 to 2000** *Axway / Worldtalk,* Silicon Valley – VP Marketing for a secure email and Cloud / Internet of Things (IoT) interoperability company.

**June 1997 to October 1999** - **Heidrick & Struggles,** Silicon Valley – President & CEO**, LeadersOnline** – *Set strategy acquired assets led launch of Internet recruiting business as portion of IPO prospectus (S-1) and IPO road show with Goldman Sachs adding $100 million to market cap of Heidrick at IPO*

**September 1981 – May 1997** – Smith Tool, **Oracle, HP, Symantec, Intel, ParcPlace Systems, Borland, Ashton-Tate** – Silicon Valley, Southern California, Boston – roles from analyst to Product Manager, VP Marketing and Sales, Corporate Development. Built a company from $2 million to $50 million buyout, owner of $350 million P&L and brand re-launch, turn around.

App. 070

not for publication in any form other than in litigation consulting with permission when retained

## CV ATTACHMENT 1
## Healthcare Transactions and Processes
## to Support Claims, Care Coordination and Financial Value of Care

**Health Care Processes – Health Plans**

- **Value Based Care Reporting** for **Medicare Part C** and **Medicare Shared Savings Plan Accountable Care Organizations** including: HEDIS, MSSP 33 measures, HCC coding, risk adjustment, risk corridors, RADV and RAC audits, compliance platforms

- **Payor - provider contracting** – Mr. Arrigo leads a team that has over **30 years of health care provider and health insurance contract negotiation experience for hospitals, clinics and diagnostic services providers.** Mr. Arrigo and his team have advised 18 hospitals and clinics, four medical device and pharmaceutical firms, two healthcare IT firms, and two four insurance firms as well as CMS in all 50 states on new regulatory impacts. He and his team have advised on over 2,000 contracts.

- **Explanation of benefits** – Mr. Arrigo's team advises health plans on the revisions in EOBs that must be made to comply with new laws and regulations such as ICD-10.

- **Actuarial & Underwriting** – Mr. Arrigo and his team advise health plans on shifts in coverage determinations and medical policy based on the Affordable Care Act, ICD-10, CORE Operating rules and other regulations.

- **Coverage determination** planning and policy, IT systems supporting new regulations.

- **Claims processing metrics** – pass through rates, manual vs. electronic claims adjudication and **Utilization Management (UM) rates**.

**Health Care Processes and IT – Hospitals, Clinics Physicians and Other Providers**
- Payor - provider contracting – Mr. Arrigo leads a team that has over **30 years of health care provider and health insurance contract negotiation experience for hospitals, clinics and diagnostic services providers.** Mr. Arrigo and his team have advised 18 hospitals and clinics, four medical device and pharmaceutical firms, two healthcare IT firms, and two four insurance firms as well as CMS in all 50 states on new regulatory impacts. Over time he and his team have advised on over 2,000 contracts.

- Readmissions metrics
- Clinical documentation, coding, claims reimbursement
- Admission and discharge processes and metrics
- Revenue cycle management and metrics (DNFB – discharged not final billed, etc.)

- Four of the Top 10 Electronic Health Record Companies – Cerner, Athenahealth, NextGen; assessed five mid-tier E.H.R. companies with respect to Meaningful Use, HIPAA and Information Safeguards compliance.

App. 071

not for publication in any form other than in litigation consulting with permission when retained

## CV ATTACHMENT 2
## Private Payor, ACO, IDN, Medicare (Part A, B, C, D), Health IT Experience

**Additional Experience with Health Systems Providers**
ICD-10, HIPAA 5010, HIPAA Privacy and Security, Clinical Quality Measures Consulting Expert Work

**Feather River Hospital** -
http://www.frhosp.org

**Frank R. Howard Memorial Hospital** -
http://www.howardhospital.com

**Glendale Adventist Medical Center** -
http://www.glendaleadventist.com

**Loma Linda University and Loma Linda Medical Center** -
http://www.llu.edu/llumc/

**San Joaquin Community Hospital** -
http://www.sjch.us

**Selma Community Hospital** -
http://www.adventisthealthcv.com

**Sonora Community Hospital** -
http://www.sonoramedicalcenter.org

**St. Helena Hospital** -
http://www.sthelenahospital.org

**Ukiah Valley Medical Center** -
http://www.uvmc.org

**White Memorial Medical Center** -
http://www.whitememorial.com

**Additional Experience with Health Plans**

ICD-10, HIPAA 5010, HIPAA Privacy and Security, Clinical Quality Measures Consulting Expert Work

- Blue Cross Blue Shield of Oregon
- Blue Cross Blue Shield of Utah
- Public Employees Health Plan of Utah
- Blue Cross Blue Shield of Idaho
- Blue Cross Blue Shield of Washington State
- CareFirst Blue Cross – Mid-Atlantic Region
- BCBS of Tennessee – Chattanooga, TN

Over ten **Value Based Care Organizations** (**Accountable Care Organizations or ACOs** and **Medicare Advantage / Part C** Plans including Essence Health Plan St. Louis, United Healthcare and Preferred Care Partners.

not for publication in any form other than in litigation consulting with permission when retained

## CV ATTACHMENT 3
# Investor Transactions and Diligence

| Investor | Target Company | Enterprise Value ($millions) |
|---|---|---|
| Confidential $4 billion PE fund, New York | Ability Networks (leading Medicare claims technology infrastructure) | $550 |
| Confidential $4 billion PE fund, New York | HealthPort, an electronic release of HIPAA information service provider | $120 |
| PE fund, confidential, west coast | Confidential ePCR (electronic patient care record) EMS (emergency management system) platform | Confidential |
| $300 million specialty PE fund, New York | Orange Health (now Citra Health) (Value based care for ACOs, MA plans) | $25 |
| $300 million specialty PE fund, New York | MZI, a health care claims processing software vendor | $25 |
| Kleiner Perkins Caufield & Byers, Menlo Park CA | Lumeris, an Essence Global Holdings Co. (Value based care for ACOs, MA plans) | $600 |
| Large Private Equity firm, London | Covisint, a spin out of Compuware (cloud user access mgmt.) | $450 |
| U.S. Private Equity firm, San Francisco | Evaluation of Diabetic population insulin initiation and titration mobile technology for glycemic control compared with standard clinical practices. | TBD |
| U.S. Private Equity firm | Drug formulary business, impact of specialty reimbursement in endocrinology, hematology and dermatology and new drug discoveries | Confidential |
| Public Debt Investor | E.H.R. software co. debt offering | confidential |
| Confidential | Confidential healthcare analytics co. | $280 |
| Confidential | Confidential hospital revenue cycle management (RCM) business | $190 |
| Confidential | Confidential Electronic Data Interchange claims co. health insurance | $150 |
| Confidential | Genetic Testing and Precision Medicine | $300 |
| Confidential | Health system with multi-site hospital, physician group, clinic diagnostic imaging | $1,000 |
| Confidential | Health IT solutions : Dispensary automation for oral and Intravenous Anti-Emetic Drugs for Chemotherapy Chemotherapeutic Regimen | confidential |
| Confidential | Pharmacy Benefit Management  (PBM) | $600 |
| | **Total Enterprise Value ($millions)** | $4,934 |

App. 073

not for publication in any form other than in litigation consulting with permission when retained

## CV ATTACHMENT 4 (page 1 of 2)
# Affordable Care Act, Medicaid, Social Security, Insurance Exchange, Benefits Determination and Orthotics Reimbursement

Experience with regulations, technology and requirements for systems supporting 15 State HHS Medicaid insurance Exchange eligibility systems including these business requirements, which in turn provide state-by-state eligibility for Affordable Care Act insurance mandates:

**Types of Exchanges and Enrollee Characteristics:**
- Federal (HHS) Exchanges "Federally-Facilitated Marketplace" ("FFM") which are being used in states such (FL, GA, NC, SC, VA, AL, MS, MO, AR, LA, OH, PA, IL, OK, MT, UT, ND, SD, NE) and provider contracting
- State Based Exchange ("SBEs") and state-by-state variances (CA, WA, ID, CO, KY, MN, NY, VT, RI, CT, MA, DE, MD, DC)
- State MMIS – Medicaid Management Information Systems, which provide some of the eligibility technology platform for the Exchanges

**Eligibility Process, Technology for State Health and Public Welfare**
- Request for insurance, pre-existing conditions under Affordable Care Act
- **42 CFR MAGI** – Modified Adjusted Gross Income (U.S. Citizenship, criminal and State Residency, household size and FPL % [see FPL])
- FPL percentage – percent of Federal Poverty Level
- TANF – Temporary Assistance to Needy Families (formerly AFDC) / The Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (Public Law 104-193) and **TEFRA**
- SNAP – Supplemental Nutrition Assistance Program (formerly food stamps)
- Medicaid – free and low-cost health care to low income families
- CHIP – Children's Health Insurance Program (Medicaid for kids)
- Women, Infants & Children (WIC) – nutritional supplement for pregnant women, infants and children (until school age)
- Section **1619(b) of the Social Security Act** re: Social Security beneficiaries, Medicaid eligibility.

# Durable Medical Equipment, Prosthetics, Orthotics, Supplies (DMEPOS)
Generally familiar with 280 classifications of HCPS and specifically:

1. Alarm Device
2. Ambulatory Traction Device
3. CPAP Device
4. Dynamic Flexion Devices
5. EMG Device
6. Foot Off Loading Device
7. Monitoring Feature/Device
8. Ocular Prosthetics
9. Oral Device to Reduce Airway Collapsibility
10. Orthopedic Devices
11. Pain Management
12. Passive Motion Exercise Device
13. Power Mobility Devices
14. Reaching/Grabbing Device
15. Repair of Prosthetic Device
16. Repair/Modification of Augmentative Communicative System or Device
17. Skin Piercing Device
18. Speech Generating Device
19. Standing Devices/Lifts
20. Stimulation Devices
21. TMJ Device and Supplies
22. Ventricular Assist Devices

App. 074

not for publication in any form other than in litigation consulting with permission when retained

## CV ATTACHMENT 4 (page 2 of 2)
## State HHS Eligibility Systems and Jurisdictions

| Jurisdiction | State Systems and Processes |
|---|---|
| **Alaska** | Eligibility Information System (EI) |
| **Arizona** | Arizona Technical Eligibility Computer System (AZTECS) |
| **Georgia** | SHINES, COMPASS, Vitale Events, Medicaid Data Broker |
| **Hawaii** | Hawaii Automated Welfare Information System (HAWI) |
| **Kansas** | Kansas Automated Eligibility & Child Support Enforcement System (KAECSES) |
| **Louisiana** | Medicaid Eligibility Data System (LA MEDS) |
| **Massachusetts** | Mass 21st Century Disability Policy (MA-21) |
| **Minnesota** | MAXIS – state, county eligibility for public assistance, health care; exchanges data with Medicaid Management Information System (MMIS), MN Employment and Economic Development, MN Dept. of Finance, and US Social Security Admin |
| **Mississippi** | Mississippi Applications Verification Eligibility Reporting Information and Control System (MAVERICS) |
| **Pennsylvania** | COMPASS – health care, cash, long-term, home, supplemental nutrition (SNAP) eligibility |
| **Rhode Island** | INRhodes and ] UHIP data and functions for the Family Independence Program, Food Stamps, Child Support Enforcement, Medicaid Eligibility, Child Care, Public Assistance |
| **South Carolina** | Family Independence Financial System (FIFN) |
| **Tennessee** | TennCare and **SSI** (Supplemental Security Income Under Social Security Administration) |
| **Vermont** | ACCESS |
| **Washington DC** | Automated Client Eligibility Determination System (ACEDS) |
| **Wyoming** | EPICS (Eligibility Payment Information Computer System) |

App. 075

15

not for publication in any form other than in litigation consulting with permission when retained

### CV ATTACHMENT 5
## Meaningful Use of Electronic Health Records

Mr. Arrigo manages a team that has worked with over 100 electronic medical records vendors and health care providers regarding achieving Meaningful Use (MU) under the HITECH Act as well as MU audit defense v. CMS, OIG and CMS Auditors

Meaningful Use (**MU**) is composed of a complex list of Objectives, including HIPAA privacy, Personal Health Information Safeguards, Clinical Quality Measures (**CQMs**), clinical decision support (**CDS**), transitions of care, data portability, auditable events, patient engagement, and other measures.  Mr. Arrigo has opined as an Expert regarding MU provides opinions and guidance on all of the following factors:

- Authorized Testing and Certifications Bodies (ATCBs) and processes
- Eligible Hospital (EP) and Eligible Provider (EP) attestations and audit defense under Medicare and Medicaid in Civil and Criminal defense cases.  Data quality check on numerators and denominators in live data vs. attestation reporting.
- Stimulus funds, OIG, CMS auditors
- HHS OCR, HIPAA breaches, State CMIA breaches and stimulus eligibility
- Modular and Complete E.H.R. certifications
- Discrete data structures
- HIPAA Privacy and Security Assessments as a Component of MU and the Administrative, Physical, Technical Safeguards of HITECH Act as well as Operational Policies, Procedures and Documentation and HIPAA overlapping requirements.
- Clinical workflow for both acute care and ambulatory E.H.R.s

**Meaningful Use Stage 1:**

Eligible professionals:

- 13 required core objectives
- 5 menu objectives from a list of 9
- Total of 18 objectives

Eligible hospitals and CAHs:

- 11 required core objectives
- 5 menu objectives from a list of 10
- Total of 16 objectives

**Meaningful Use Stage 2:**

Eligible professionals:

- 17 core objectives
- 3 menu objectives that they select from a total list of 6
- Total of 20 objectives

Eligible hospitals and CAHs:

- 16 core objectives
- 3 menu objectives that they select from a total list of 6
- Total of 19 objectives

App. 076

not for publication in any form other than in litigation consulting with permission when retained

**CV ATTACHMENT 6**
# Healthcare Business Transactions, Supporting HIPAA X12 Electronic Transactions

### 45 CFR Part 162 Health Insurance Reform; Modifications to the Health Insurance Portability and Accountability Act (HIPAA); Final Rules

1. Health Care Eligibility Benefit Inquiry and Response – EDI 270/271

2. Health Care Claim Status Request / Response – EDI 276/277

3. Health Care Services Request for Review / Response (Prior Auth.) – EDI 278

4. Payroll deductions for premiums – EDI 820

5. Benefit enrollment and maintenance – EDI 834

6. Health care claim: Payment / Advice – EDI 835,

7. Health Care Claim: institutional, professional / dental – EDI 837, Pharmacy claim (NCPDP), Coordination of Benefits (COB) and third party liability

Modifications to § 162.1102, § 162.1202, § 162.1302, § 162.1402, § 162.1502, § 162.1602, § 162.1702, and § 162.1802 to adopt the ASC X12 Technical Reports Type 3 (TR3), Version 005010 (Version 5010) reporting of clinical data, enabling the reporting of ICD–10–CM diagnosis codes and ICD–10–PCS procedure codes

App. 077

not for publication in any form other than in litigation consulting with permission when retained

**CV ATTACHMENT 7**
# Revenue Cycle Management, Clinical Documentation and Coding Processes

*Lead team that implements hospital system assessments for ICD-10 and CPT coding compliance and quality, including:*

CDI (Clinical Documentation Improvement) strategy and alignment between HIM department, coders, nursing, physicians. Benefits of coder-physician collaboration, and securing results in improved coding.  Engage case managers to focus on CDI trends, work with physicians that are the largest admitters.  Understanding of key processes including:

| Patient intake |
|---|
| Patient assessment |
| Documentation of care |
| Insurance coverage determination |
| Discharge activities |
| Provider communications |
| Referrals |
| Prior authorizations |
| Coding |
| Charge capture, super bills |
| Billing |
| Revenue collection |
| Vendor impacts |
| EHR and other system readiness to support CDI |
| IT plans |
| Impact on concurrent initiatives |
| Reporting |
| Quality improvement efforts |
| Payor readiness and processes; medical policy assumptions for contracting |
| Institutional Review Board (IRB) impact review for ICD-10 |
| Data warehouse and business intelligence "retooling" of analytics required. |
| National Correct Coding Initiative (NCCI), Modifiers, Bundling and Unbundling Criteria According to Centers for Medicare and Medicaid |

App. 078

not for publication in any form other than in litigation consulting with permission when retained

## <u>CV ATTACHMENT 8</u> – Drug Pricing Practices

# Experience using analytics to identify UCR (Fair Market Value) in Pharmaceutical Pricing

- Re-Defining AWP
- % Factor
- NDC price reporting
- Mark-Ups & Price Spreads
- Backroom Processor Schemes
- Rebate Schemes
- Flat, Access, Market Share
- Rebate Disguising
- Rebate Pumping
- Re-Defining "Brand" and "Generic"
- Formulary Steering
- Pre-Authorization Schemes
- Clinical Rules & Protocols

- Mail-Order Schemes
- Leveraging Captive Facility
- Multiple MAC Lists
- Drug Switching
- Drug Repackaging
- Fraudulent Plan Design
- Zero Cost Scripts
- Higher Than Logic
- Pocketing Refunds, Reversals and Returns
- Payor Account Crediting Tricks
- Specialty Drug Issue

App. 079

not for publication in any form other than in litigation consulting with permission when retained

## CV ATTACHMENT 9
# HIPAA Privacy Rule and HIPAA Security Rule, HITECH Act Information Safeguards and State Statutes in WA, CA, NV, NY, MA, FL
*Lead team that assesses and advises regarding industry best practices and implementation of HIPAA Privacy and Security as well as HITECH Act, including:*

## Security best practices for HIPAA Covered Entities

## HHS Security Standards:

1. **Administrative** Safeguards
2. **Physical** Safeguards
3. **Technical** Safeguards
4. **Organizational Policies and Procedures** and Documentation Requirements

## Opinions regarding but not limited to:

- "Breach" under the Privacy Rule, including but not limited to, 45 C.F.R. § 164.402.
- "Business Associate" under the Privacy Rule, including but not limited to, 45 C.F.R. § 160.103.
- "Covered Entity" under the Privacy Rule, including but not limited to, 45 C.F.R. § 160.103.
- "Designated Record Set" under the Privacy Rule, including but not limited to, 45 C.F.R. § 164.501.
- "Disclosure" under the Privacy Rule, including but not limited to, 45 C.F.R. § 160.103.
- "Electronic Protected Health Information" or "ePHI" under the Privacy Rule, including but not limited to, 45 C.F.R. § 160.103.
- "Individual" under the Privacy Rule, including but not limited to, 45 C.F.R. § 160.103.
- "Minimum Necessary" under the Privacy Rule, including but not limited to, 45 C.F.R. §§ 164.502(b) and 164.514(d).
- "Privacy Rule" Standards for Privacy of Individually Identifiable Health Information at 45 C.F.R. Part 160 and Part 164, Subparts A and E.
- "Protected Health Information" or "PHI" in 45 C.F.R. §§ 160.103 and 164.501, and is the information created or received by BA
- "Required by Law" in 45 C.F.R. § 164.103.
- "Security Incident" shall have the meaning given to such term under the Security Rule, including but not limited to, 45 C.F.R. § 164.304.
- "Security Rule" 45 C.F.R. Part 160 and Part 164, Subparts A and C.
- "Subcontractor" under the Privacy Rule, including but not limited to, 45 C.F.R. § 160.103.
- "Unsecured Protected Health Information or PHI" under the Privacy Rule, including but not limited to, 45 C.F.R. § 164.402.
- "Use" under the Privacy Rule, including but not limited to, 45 C.F.R. § 160.103.

App. 080

not for publication in any form other than in litigation consulting with permission when retained

### CV ATTACHMENT 10 Rural Health Centers (RHCs), Critical Access Hospitals (CAHs), Federally Qualified Health Centers (FQHCs)

Section 10501(i)(3)(B) of the Affordable Care Act

Rural Health Clinics Act (P.L. 95-210)

- Use of grants under TRICARE program under chapter 55 of title 10, United States Code for administrative programs.

- All-Inclusive Rate Reimbursement (**AIRR**)

- Prospective Payment System (**PPS**)

- CMS 222 financial reports for RHCs and FQHCs and basis for reports supported by clinical documentation and medical coding

- Baseline Practitioner Productivity Standards

- Historical perspective regarding Benefits Improvement and Protection Act of 2000 (BIPA) and State Medicaid program reimbursement RHCs (In lieu of cost-based reimbursement, Medicaid shifted RHCs to a PPS methodology)

- Industry best practices and guidelines and compliance to U.S. HHS / Health Resources and Services (HRSA) standards including:

| | | STATUTE |
|---|---|---|
| **1.** | Needs Assessment | Section 330(k)(2) of the PHS Act<br>Section 330(k)(3)(J) of the PHS Act |
| **2.** | Required and Additional Services | (Section 330(a) of the PHS Act)<br>(Section 330(h)(2) of the PHS Act) |
| **3.** | Staffing Requirement | (Section 330(a)(1), (b)(1)-(2), (k)(3)(C), and (k)(3)(I) of the PHS Act) |
| **4.** | Accessible Hours of Operation/Locations | (Section 330(k)(3)(A) of the PHS Act) |
| **5.** | After Hours Coverage | (Section 330(k)(3)(A) of the PHS Act and 42 CFR Part 51c.102(h)(4)) |
| **6.** | Hospital Admitting Privileges and Continuum of Care | (Section 330(k)(3)(L) of the PHS Act) |
| **7.** | Sliding Fee Discounts | (Section 330(k)(3)(G) of the PHS Act, 42 CFR Part 51c.303(f)), and 42 CFR Part 51c.303(u)) |
| **8.** | Quality Improvement/Assurance Plan | (Section 330(k)(3)(C) of the PHS Act, 45 CFR Part 74.25 (c)(2), (3) and 42 CFR Part 51c.303(c)(1-2)) |

App. 081

not for publication in any form other than in litigation consulting with permission when retained

| 9. | Key Management Staff | (Section 330(k)(3)(I) of the PHS Act, 42 CFR Part 51c.303(p) and 45 CFR Part 74.25(c)(2),(3)) |
|---|---|---|
| 10. | Contractual/Affiliation Agreements | (Section 330(k)(3)(I)(ii), 42 CFR Part 51c.303(n), (t)), Section 1861(aa)(4) and Section 1905(l)(2)(B) of the Social Security Act, and 45 CFR Part 74.1(a) (2)) |
| 11. | Collaborative Relationships | (Section 330(k)(3)(B) of the PHS Act and 42 CFR Part 51c.303(n)) |
| 12. | Financial Management and Control Policies | Section 330(k)(3)(D), Section 330(q) of the PHS Act and 45 CFR Parts 74.14, 74.21 and 74.26) |
| 13. | Billing and Collections | (Section 330(k)(3)(F) and (G) of the PHS Act) |
| 14. | Budget | (Section 330(k)(3)(D), Section 330(k)(3)(I)(i), and 45 CFR Part 74.25) |
| 15. | Program Data Reporting Systems | (Section 330(k)(3)(I)(ii) of the PHS Act) |
| 16. | Scope of Project | (45 CFR Part 74.25) |
| 17. | Board Authority | (Section 330(k)(3)(H) of the PHS Act and 42 CFR Part 51c.304) |
| 18. | Board Composition | subsection (g), (h), (i), or (p). (Section 330(k)(3)(H) of the PHS Act and 42 CFR Part 51c.304) |
| 19. | Conflict of Interest Policy | (45 CFR Part 74.42 and 42 CFR Part 51c.304(b)). |

4

not for publication in any form other than in litigation consulting with permission when retained

## CV ATTACHMENT 11 - Clinical Documentation, Coding, Billing, Reimbursement Training

1. National Correct Coding (NCCI) claims edits, Sept 2012.

2. Ambulance billing fees and trauma triage and State, Federal CDC trauma activation criteria Sept 2012.

3. Behavioral health, November 2013[ii]

4. Cardiology, November 2013

5. Family practice and internal medicine, November 2013

6. Obstetrics, November 2013

7. Oncology, November 2013

8. Urology, November 2013

9. Orthopedics, November 2013

10. General Surgery, and Dental, November 2013

11. Plastic Surgery, November 2013

12. HCC, risk adjustment, November 2013[iii]

13. DRG calculations, ICD-10, IPPS, OPPS payment systems November 2013[iv]

14. Diagnostic Imaging & Nuclear Medicine (PET-Scans) September 2014[v]

15. Medical Auditing, including focus on anesthesiology, pathology, evaluation management, radiology, chemotherapy, psychotherapy, physical therapy, modifiers, medical necessity. November 2015[vi]

16. Dietetics and Nephrology, insulin DME billing for diabetes, December 2015, AHIMA

17. Liens, balance billing, subrogation seminar, 2014

18. Affordable Care Act 'metal' plans, Medicaid expansion, Federal Poverty Level guidelines on cost of care, 2014

19. Coding and reimbursement for Pain Management, December 2015;

Outpatient physical, occupational, and speech therapy, ambulance and non-emergency transportation, January 2016[vii]

20. Valuing episodes of Care: a) episodic, b) bundled payments, c) value based payment / risk adjustments, d) episode groupers, methodologies, e) PBM / pharmacy charges, f) costs associated with complications, g) prospective, retrospective, and predictive modeling; h) claims adjudication in episodic processes, ACOs, MAOs, fiscal intermediaries, PROMETHIUS analytics payment model for risk adjustment, comorbid factors and cohorts, data required to produce episodic care analysis; June 2016[viii]

not for publication in any form other than in litigation consulting with permission when retained

## CV ATTACHMENT 12 – Medical / Laboratory Test Fees

Opinions regarding economic value and medical necessity (based on the diagnosis of a licensed medical professional or retained medical expert provided to me as a precursor to rendering my opinion) as determined in payor medical policies and coverage determinations for medical laboratory test that can be used to detect, diagnose, or monitor diseases, disease processes, and susceptibility to disease or predisposition based on genetics.  Areas of expertise include:

1. diagnosis (associated diagnosis codes are an important indicator of medical necessity as determined in payor medical policies and coverage determinations) and billing codes including:
   a. ICD-10-CM which is U.S. standard from October 1, 2015 forward
   b. ICD-9-CM – for dates of service prior to October 1, 2015
   c. CPT – for outpatient procedures (for example 8500 - Blood count; blood smear, microscopic examination with manual differential WBC count)
   d. NCCI – National Correct Coding Initiative to verify whether bundled procedures and other factors are acceptable
2. overview of the test
3. utility - when/why/how the test is used
4. diseases the test is often used to detect or monitor as this pertains to coding and billing and economic value of the test in a specific geographic market or based on national standards, as well as:
   a. specimen collection methods/procedures (for example, whole blood collection)
   b. testing methodology (for example, hematology)
   c. usual turnaround time (for example, days elapsed time)
   d. reference ranges for test results (normal, abnormal, male / female values etc.)
   e. additional or related tests

NOTE: Interpretation of tests is performed by a licensed medical professional and if that interpretation is provided to me in patient medical record(s), it may be useful in opinions regarding payer determinations or economic value.  I do not give medical opinions.

2

not for publication in any form other than in litigation consulting with permission when retained

## CV ATTACHMENT 13 – Ambulance, Trauma Activation Fees, Anesthesiology

Industry best practices and guidelines for determining economic value and medical necessity (which may be based on the diagnosis of a licensed medical professional or retained medical expert provided to me as a precursor to rendering my opinion) as determined in payor medical policies and coverage determinations

Ambulance Fees

1. Patient's condition - medically indicated / contraindicated
2. Medical Necessity as determined by CMS
3. Use of licensed personnel as a determinant of fees
4. Non-covered ambulance services
5. Transportation to or from one hospital or medical facility to another hospital or medical facility, skilled nursing facility, or free-standing dialysis center in order to obtain medically necessary diagnostic or therapeutic services
6. Mileage
7. Waiting time
8. Necessary equipment and supplies as determinant of fees
9. Supplies (bundled / unbundled, Date of Service and applicable standards)

Trauma Activation Fees

- CDC Guidelines for Field Triage of Injured Patients: Recommendations of the National Expert Panel on Field Triage
- County and Provider standards for Triage and documentation for Trauma Activation

Anesthesiology Fees

1. *Time unit* *intervals, or fraction thereof, starting from the time the physician begins to prepare the patient for induction and ending when the patient may safely be placed under post-operative supervision and the physician is no longer in personal attendance. Actual time units will be paid and are not to be rounded.*
2. *Base Units* *and their values are described by industry regulatory and standards bodies*
3. **Anesthesia Conversion Factors** for geographic adjustments
4. *Industry best practices for billing and coding*

# App. 085

3

not for publication in any form other than in litigation-consulting with permission when retained

## CV ATTACHMENT 14 – Staff and Operational Policies for Healthcare Providers

**Certification Review Process Guidelines and Best Practices:**
**Health Care Staffing Services Certification, Personnel File Review, Joint Commission Standards [3]:**

1. Current licensure, certification, or registration required by the state, the firm, or customer from primary sources

2. Education and training associated with residency or advanced practice, experience, and competency appropriate for assigned responsibilities

3. Clinical work history/references

4. Initial and ongoing evaluation of competency

5. Information on criminal background according to law, regulation, and customer requirements

6. Compliance with applicable health screening and immunization requirements established by the firm or customer

7. Information on sanctions or limitations against an individual's license is reviewed upon hire, and upon reactivation or expiration.

8. For individuals who are practicing as Licensed Independent Practitioners, in addition to the aforementioned requirements, the firm performs the following according to law, regulation, and firm policy: Voluntary and involuntary relinquishment of any license or registration is verified and documented

9. Voluntary and involuntary termination of *hospital* medical staff membership is verified and documented

10. Any evidence of an unusual pattern or an excessive number of professional liability actions resulting in a final judgment against the applicant is investigated and documented

11. Documentation that the staff person has received orientation from the organization

---

[3] In order for a health care organization to participate in and receive payment from the Medicare or Medicaid programs, it must meet the eligibility requirements for program participation, including a certification of compliance with the Conditions of Participation (CoPs) or Conditions for Coverage (CfCs), which are set forth in federal regulations. The certification is based on a survey conducted by a state agency on behalf of the federal government, the Centers for Medicare & Medicaid Services (CMS) or a national accrediting organization, such as The Joint Commission, that has been approved by CMS as having standards and a survey process that meets or exceeds Medicare's requirements. Health care organizations that achieve accreditation through a Joint Commission deemed status survey are determined to meet or exceed Medicare and Medicaid requirements.

4

not for publication in any form other than in litigation consulting with permission when retained

---

[i] Although the name 'health informatics' only came into use in about 1973 (Protti 1995) it is a study that is as old as healthcare itself.  It was born the day that a clinician first wrote down some impressions about a patient's illness, and used these to learn how to treat their next patient. The world is aging and there are increasing numbers of people with chronic disease; it is recognized that the only sustainable option is planning and delivery of healthcare through technology innovation. Biomedical Informatics seeks to discern the difference between data, information, knowledge and wisdom by increasing sharing and comprehension.  Professor Enrico Coiera of the Macquarie University argues that health informatics is the logic of healthcare.   Dr. Mark Musen MD PhD Professor, Medicine - Biomedical Informatics Research at Stanford points out that that digital information has made knowledge infinitely larger for clinicians, and they are now are in a knowledge management crisis – getting the right information at the right time is the challenge.

[ii] Training delivered by MD, board certified orthopedic surgeon and AHIMA certified trainer who advised CMS in all 50 states, AHIMA certified inpatient coder and chart auditor, AAPC certified outpatient coder and chart auditor

[iii] Used in Medicare Part C (Medicare Advantage "MAO") Accountable Care (ACO) organizations

[iv] Training delivered by MD, board certified orthopedic surgeon who advised CMS in all 50 states

[v] Training delivered by Radiology Certified Coder (RCC), Certified Interventional Radiology Cardiovascular Coder (CIRCC), Certified Professional Coder (CPC) credentialed instructor

[vi] American Academy of Professional Coders (AAPC)

[vii] Training delivered by National Association of Rehabilitation Providers (NARP) trainer

[viii] Health Care Incentives Improvement Institute, HC3i

App. 087

## Michael Mirando

**From:** WarLawyer@aol.com
**Sent:** Friday, January 27, 2017 11:20 AM
**To:** mike@holterlabs.com; jcarson@noworldborders.com
**Cc:** marrigo@noworldborders.com
**Subject:** Re: Mirando Retainer

J Carson,

This request is for Dr. Michael Arrigo.

**Kevin Barry Mc Dermott, Esq,**

**Law Offices of Kevin Barry Mc Dermott**
300 Spectrum Center Drive, Suite 1420
Irvine, California 92618

949-596-0102
949-861-3825 facsimile
*WarLawyer@aol.com*
*WarLawyer.com*

*(please note – as of February 2, 2015, our building address changed from 8001 Irvine Center Drive to 300 Spectrum Center Drive due to a local street readdressing.  This is an address change only, not a physical relocation of our offices.)*

The foregoing message(s) is confidential and intended for the designated recipient only.  The foregoing information may be protected by attorney-client and/or work product privilege.  Accordingly, if you have received this message in error, please contact this office immediately, and delete the message without reviewing, copying, or making further use of the information contained therein.

Confidentiality Notice:  This email message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information.  Any unauthorized review, use, disclosure or distribution is prohibited.

In a message dated 1/27/2017 11:18:22 A.M. Pacific Standard Time, mike@holterlabs.com writes:

> Hello,
>
>
> I would like to retain you regarding my case. I am represented by Kevin Mc Dermott. Your retainer agreement states that I will be able to submit payment via Credit Card and to contact your office to arrange payment.
>
>
> Please call me when you have time so that I can supply you will my payment information.
>
>
> Thanks,
>
>
> -Michael Mirando

1

App. 088

949-466-3015

App. 089

**Michael Mirando**

---

| | |
|---|---|
| **From:** | WarLawyer@aol.com |
| **Sent:** | Thursday, March 2, 2017 6:38 AM |
| **To:** | mike@holterlabs.com |
| **Cc:** | warlawyer@aol.com |
| **Subject:** | Initial expert review report |
| **Attachments:** | Arriego report.pdf |

We will discuss this today.  Both good and bad but a lot of work for the government to prove the case

***Kevin Barry Mc Dermott, Esq,***

**Law Offices of Kevin Barry Mc Dermott**
300 Spectrum Center Drive, Suite 1420
Irvine, California 92618

949-596-0102
949-861-3825 facsimile
*WarLawyer@aol.com*
*WarLawyer.com*

*(please note – as of February 2, 2015, our building address changed from 8001 Irvine Center Drive to 300 Spectrum Center Drive due to a local street readdressing.  This is an address change only, not a physical relocation of our offices.)*

The foregoing message(s) is confidential and intended for the designated recipient only.  The foregoing information may be protected by attorney-client and/or work product privilege.  Accordingly, if you have received this message in error, please contact this office immediately, and delete the message without reviewing, copying, or making further use of the information contained therein.

Confidentiality Notice:  This email message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information.  Any unauthorized review, use, disclosure or distribution is prohibited.

App. 090

DRAFT – PRIVILEDGED AND CONFIDENTIAL WORKPRODUCT
PREPARED BY M. ARRIGO
OBSERVATIONS ON DISCOVERY DOCUMENTS – US. v. MIRANDO
DRAFT 1 – NOT A COMPLETE ANALYSIS

PRELIMINARY FINDINGS FROM DOCUMENT PRODUCTION
US. V MIRANDO

PREPARED FOR ATTORNEY MCDERMOTT

PRIVILEDGED AND CONFIDENTIAL WORK PRODUCT IN FEDERAL CASE
DRAFT – NOT INTENDED FOR DISCOVERY PRODUCTION

DATE PREPARED:
MARCH 1, 2017

MICHAEL F. ARRIGO

NOT A COMPLETE OR FINAL ANALYSIS

1

App. 091

DRAFT – PRIVILEDGED AND CONFIDENTIAL WORKPRODUCT
PREPARED BY M. ARRIGO
OBSERVATIONS ON DISCOVERY DOCUMENTS – US. v. MIRANDO
DRAFT 1 – NOT A COMPLETE ANALYSIS

Overview on Document Intake ........................................................................................................... 3

There are 60,126 pages of documents ............................................................................................. 3

Incomplete Production ...................................................................................................................... 3

Specific Documents that I Cannot access ......................................................................................... 3

Incomplete or inconclusive Analysis by FBI ..................................................................................... 8

Interview with Patient Belen Perazzo Barber ................................................................................... 8

    Cross Check with Aetna Records for Patient Belen Perazzo Barber ............................................. 9

    Medical Necessity of Treatment Frequency for Patient Belen Perazzo Barber ......................... 9

FBI Interview with Jon Barron, Founder of Datrix ......................................................................... 10

Intricon Subpoena Production........................................................................................................ 11

Lynn Medical Subpoena Production................................................................................................ 11

Weaknesses in the Government's Case (Preliminary Observations)............................................... 11

Next Steps – Discussion Points........................................................................................................ 11

App. 092

DRAFT – PRIVILEDGED AND CONFIDENTIAL WORKPRODUCT
PREPARED BY M. ARRIGO
OBSERVATIONS ON DISCOVERY DOCUMENTS – US. v. MIRANDO
DRAFT 1 – NOT A COMPLETE ANALYSIS

## Incomplete or inconclusive Analysis by FBI

FBI Surveillance states Mirando has several registered firearms, but the purpose of the surveillance is to establish his "morning routine" "which car he drives." None of those observations are noted, simply that FBI has firearms.

Why, if the purpose was to observe his routine does the report contain a note regarding firearms and no documentation of his morning routine.

Document drafted by Caleb Williams 5/6/2016

## Interview with Patient Belen Perazzo Barber

There are several patient interviews that I have reviewed. I used patient Barber as a test and conducted an audit trail of his statements back to anything that corroborates his statements with regard to medical documentation and found none.

I searched Aetna records produced by the FBI and found a spreadsheet but nothing that states that Aetna produced it.

According to Barber she had one cardiac test but there is no documentation from a physician or provider of any kind corroborating this. Patients in my experience can forget their treatment regimen and appointments which is why providers do reminders. The Interview was conducted around the date of entry by the FBI of the report, April 9, 2014.

8

App. 093

DRAFT – PRIVILEDGED AND CONFIDENTIAL WORKPRODUCT
PREPARED BY M. ARRIGO
OBSERVATIONS ON DISCOVERY DOCUMENTS – US. v. MIRANDO
DRAFT 1 – NOT A COMPLETE ANALYSIS

### Cross Check with Aetna Records for Patient Belen Perazzo Barber

I checked Aetna claims report and I do find claims for this patient but they are over four years prior (see below).



### Medical Necessity of Treatment Frequency for Patient Belen Perazzo Barber

It may be possible that a cardiologist would prescribe this regimen. I can discuss to some extent in an expert report regarding medical documentation, coding, billing and insurance policy, but in the end the best criteria would be:

1. Independent medical opinion of a cardiologist
2. Based or supported by this patient's records which we don't have to my knowledge. That is the litmus test for whether these medical bills were appropriate or not
3. For any EEG (brain) prescribed services, the opinion of a neurologist

9

App. 094

DRAFT – PRIVILEDGED AND CONFIDENTIAL WORKPRODUCT
PREPARED BY M. ARRIGO
OBSERVATIONS ON DISCOVERY DOCUMENTS – US. v. MIRANDO
DRAFT 1 – NOT A COMPLETE ANALYSIS

## FBI Interview with Jon Barron, Founder of Datrix

Much of the case hinges on whether EEG and ECG may be performed with the same device and what determines whether that is possible to do with one device. Of the 60,126 pages in this case that I can review, one phrase here is all the FBI appears to have and it does not appear to be a certainty that the device cannot do both EEG (brain) and ECG (cardiac / heart) related monitoring.

Based on my own observations these two practices are converging since both are valuable indicators of a patient's condition. There are published studies I can cite.

This statement to me does not satisfy the 'reasonable degree of certainty test':

"BARRON believes that the DR512 model's sampling frequency rate is not sufficiently high enough to be used for an EEG. An EEG generally requires a higher sampling frequency rate than the model is capable of performing. Datrix also did not put in its FDA filing that performing an EEG was an intended use of the device. BARRON noted that the software used on the data collected from the DR512 would make no difference in whether or not an EEG could be conducted, since the device itself isn't able to sample data sufficiently for the test."

There also appears to be some confusion by the FBI on how to substantiate their case:

"Datrix has not filed with the FDA that an intended use of the DR512 model was to perform microvolt T-wave alternans [sic] for the assessment of ventricular arrhythmia"

This type of monitoring has nothing to do with EEG it is ECG related.

I will elaborate in our phone call.

10

App. 095

DRAFT – PRIVILEDGED AND CONFIDENTIAL WORKPRODUCT
PREPARED BY M. ARRIGO
OBSERVATIONS ON DISCOVERY DOCUMENTS – US. v. MIRANDO
DRAFT 1 – NOT A COMPLETE ANALYSIS

## Intricon Subpoena Production

There are grand jury subpoenas from the FBI but no damning production that I can see from Intricon

## Lynn Medical Subpoena Production

There are grand jury subpoenas from the FBI but no damning production that I can see from Lynn Medical. Merely inquiry emails from Mr. Mirando.

## Weaknesses in the Government's Case (Preliminary Observations)

1. I do not believe the Government has clearly established that the devices cannot do brain scans (EEG). There is much more to discuss this is only a quick briefing for you to determine next steps.
2. I do not believe the Government has clearly established without reasonable doubt that the billings are inappropriate.
3. The only way to clearly establish fraud or the absence of fraud is to look at the patient's medical records, what was prescribed by a physician, then the coding, billing and the payor's policies. We already know that there were few or no denials of insurance claims.

## Next Steps – Discussion Points

1. Discuss time and resources to be applied
2. Discuss strategies and experts and how I can rely on those experts for my testimony
3. Additional records to review

App. 096

**Michael Mirando**

---

| | |
|---|---|
| **From:** | WarLawyer@aol.com |
| **Sent:** | Friday, March 17, 2017 3:58 PM |
| **To:** | mike@holterlabs.com |
| **Cc:** | warlawyer@aol.com |
| **Subject:** | Re: Mirando - Updated findings report - DRAFT PRIVILEGED AND CONFIDENTIAL WO... |
| **Attachments:** | USA_001335_Anthem - 10.11.2005 to 12.31.2008 - annotated by arrigo.xlsx; USA_001337_BCBS - Jan 2005 to Dec 2008 - annotated by Arrigo (Autosaved).xlsx; USA_001337_BCBS - Jan 2005 to Dec 2008 - annotated by Arrigo.xlsx; USA_001372_Cigna - 2009 to 2013 - annotated by Arrigo.xlsx; Indictment.pdf; Guideline research.pdf |

Michael,

I have received your e-mails and certainly have passed them along. Your input is being considered by Mr. Arriego and he has taken your comments into consideration.  What you have to understand is that we have 60,000 pages of discovery that we are culling through and we are endeavoring to create a plausible defense to the charges that you are facing. As we have discussed, circumstances prevent you from being able to testify in your defense; too many doors that could be opened on cross-examination. [Quickly on that topic, found my invoice from 10/19/13 regarding our prior discussions and know exactly what we did and did not discuss] Accordingly, the expert is working through the documents in order to parse our way through a minefield of billings.

The very best news to date is the complete lack of any record purportedly from you that admits to knowing involvement in the offenses. Clearly, there are no prior statements from you, no e-mails that incriminate and the manner in which the billing was conducted does not directly point to you; signature on a submission does not amount to an admission of knowledge. In a case involving 18 U.S.C. 1347, the government must prove that you knowingly intended to defraud a healthcare provider. That means the government needs to put in the minds of a jury your state of mind.  The documents don't reveal any such knowledge. But the continuing review of the documents by Mr. Arriego is essential and I know that in his recent report and in the forwarded e-mail invoice from Jennifer, he has asked for additional funds.

Get it paid. Here is why, as I have made clear before. You face serious time.

As we have discussed, getting indicted by the federal government is like being diagnosed with cancer. Even though the bar is very low to get an indictment, it is as devastating an event that could ever occur in one's life. Accordingly, every conceivable effort and resource must be thrown at the government to defeat the charges. Failure to do so would mean substantial time in prison and the loss of all of your assets.

Attached to this e-mail are the four latest spreadsheets done by Mr. Arriego that came to me earlier this week. He is analyzing the specific counts in your indictment; if you don't recall the

1

counts, I have attached a copy of the indictment. Should you be convicted of these offenses, and if the government's calculation of loss is accepted by the court in sentencing, the sentence could range as high as 51 months in custody and the court will issue a forfeiture order allowing the government to seize every asset that you own to recover the losses suffered.

How is this calculated?  I am also attaching to this e-mail a three part document. The first part is entitled "Federal Fraud Sentencing Guidelines." The second part is entitled "Sentencing Table." The final part is from a blog post that I received from Mr. Arriego explaining the changes to the federal sentencing guidelines after the passage of Obamacare. In a nutshell, the punishment is harsher now than it was 10 years ago. In the event of a conviction, the base offense level would be calculated as 6. The loss, in excess of $1,000,000 but less than $2,500,000, adds 16 levels. In that you have no criminal history, your Sentencing Table category would be I.  As I have highlighted on the Table, the sentencing range could be 41-51 months.

These are just rough calculations but they are ballpark. Other factors can apply to increase or decrease the level of punishment.

As with any case, a plea is one way to mitigate the punishment and payment of a substantial portions of the loss would also mitigate the punishment but it would not assure you a sentence that did not include confinement. If an offer was made to repay what the government believes was the loss, negotiations could occur that gives you a shot at probation but there are no guarantees on that at all. In the case involving Parsons, he repaid $7,000,000 and still did a year and a day in custody.

If a plea and repayment is not an option, then a full throated defense needs to be waged as the government will not back down despite all of the negative evidence given to them about Cast and Crowley. That means spending what needs to be spent to put on the best possible defense. In light of the lack of evidence of admission on your part and the need for the government to use Cast and Crowley as witnesses to try and prove that, you have good odds. But Mr. Arrigo will be able to tell us more about how to attack the evidence related to the charges as long as he is able to work on the case and work on the case *now.*

What you also need to understand is that the government will ask for a forfeiture order if a conviction occurs. This court will give that order.  That will allow the Feds to seize every piece of property that you own, either directly or through any LLC that you control until they recover the entire amount of the loss. And dumping assets on family and friends in an effort to shield the assets would be easily unwound by the Feds.

Hence, I would suggest a soul searching weekend. Either commit to making the best possible deal or slugging this battle out to the end.

I am discussing Mr. Arrigo's research further over this weekend. We are fortunate to have someone of his credentials and he is certainly sympathetic, fully understanding the true nature of Cast and Crowley. But he needs to continue working. Let's get it done.

2

App. 098

*Kevin Barry Mc Dermott, Esq,*

**Law Offices of Kevin Barry Mc Dermott**
300 Spectrum Center Drive, Suite 1420
Irvine, California 92618

949-596-0102
949-861-3825 facsimile
WarLawyer@aol.com
*WarLawyer.com*

*(please note – as of February 2, 2015, our building address changed from 8001 Irvine Center Drive to 300 Spectrum Center Drive due to a local street readdressing. This is an address change only, not a physical relocation of our offices.)*

The foregoing message(s) is confidential and intended for the designated recipient only.  The foregoing information may be protected by attorney-client and/or work product privilege.  Accordingly, if you have received this message in error, please contact this office immediately, and delete the message without reviewing, copying, or making further use of the information contained therein.

In a message dated 3/16/2017 8:51:40 P.M. Pacific Daylight Time, mike@holterlabs.com writes:

> Kevin,
>
>
> This is much of the same as before when I commented on this via the attached e-mail. Did you ever forward the attached e-mail to the expert? I have sent you two lengthy explanations per your request (one is attached and the other one was regarding the Parsons case) and you have not responded to any of them. Are you not receiving them?
>
>
> -Michael Mirando
>
> _____
>
> **From:** WarLawyer@aol.com [mailto:WarLawyer@aol.com]
> **Sent:** Thursday, March 16, 2017 7:56 AM
> **To:** mike@holterlabs.com
> **Subject:** Fwd: Mirando - Updated findings report - DRAFT PRIVILEGED AND CONFIDENTIAL WO...
>
>
> Michael,
>
>
> Latest work up by our expert.  Please review thoroughly and provide me with written comments by tomorrow noon.   We will phone com tomorrow 1400.

3

App. 099

*Kevin Barry Mc Dermott, Esq,*

**Law Offices of Kevin Barry Mc Dermott**
300 Spectrum Center Drive, Suite 1420
Irvine, California 92618


949-596-0102
949-861-3825 facsimile
WarLawyer@aol.com
*WarLawyer.com*

*(please note – as of February 2, 2015, our building address changed from 8001 Irvine Center Drive to 300
Spectrum Center Drive due to a local street readdressing.  This is an address change only, not a physical
relocation of our offices.)*

The foregoing message(s) is confidential and intended for the designated recipient only.  The foregoing
information may be protected by attorney-client and/or work product privilege.  Accordingly, if you have received
this message in error, please contact this office immediately, and delete the message without reviewing, copying,
or making further use of the information contained therein.

Confidentiality Notice:  This email message, including any attachments, is for the sole use of the intended
recipient(s) and may contain confidential and privileged information.  Any unauthorized review, use, disclosure or
distribution is prohibited.

---

From: marrigo@noworldborders.com
To: WarLawyer@aol.com
Sent: 3/15/2017 7:57:11 P.M. Pacific Daylight Time
Subj: RE: Mirando - Updated findings report - DRAFT PRIVILEGED AND CONFIDENTIAL
WORKPRODUCT


Kevin please see attached.


Regards

Michael Arrigo


-----Original Message-----
From: "Michael Mirando" <mike@holterlabs.com>
To: <WarLawyer@aol.com>
Subject: RE: Initial expert review report
Date: Thu, 2 Mar 2017 11:46:37 -0700


Kevin,

I read the report and please let the expert know that I really appreciate him having my back on this. I really need
some great teammates right now.

4

App. 100

Regarding the code 95827, I was told by Stan Crowley that this code is to be used for the Sleep Apnea via ECG portion of the test; page 12-13 on the attached sample report. The attached report is an actual report from a real patient that wore one of our devices; I just changed the name and date-of-birth for privacy purposes. There is also a code (95806) that is also a code for Sleep Apnea, but to my knowledge (as been told by Stan) this is only billed if the first one (95827) was not being reimbursed or if the insurance company does not recognize the code. Code 93226 is the tech part of the report generation while physicians are to bill for the professional.

In regards to code 93271 which is for cardiac events, these are reflected in pages16-23 of the attached report. These strips clearly shows specific events during this patients recording. I was told to bill this anytime events are recorded. There is even an "Event" button at the top of the recorder so that patients can press in the event they feel an abnormality. To my knowledge, code 93229 is a newer version of code 93271 but has some other capabilities and pays at a higher rate. These are the codes that I specifically asked Medicare if we are allowed to bill. Medicare audited our services before we were issued a Medicare number. The two related e-mails are attached; one from 2014 and one from 2017.

Every paper claim that we submit, I send a description of services sheet (attached) along with the claim. I have NEVER been contacted or questioned about the services we render or the reimbursement codes that we are using. The attached sheet is set in on EVERY paper claim and clearly show a description of what (at least of what we thought) these services entailed. Never once was I questioned. This alone shows no intent of wrong doing. I am showing the insurance company exactly the descriptions of the codes billed.

When the expert mentions obtaining the patients' medical records, before I am even able to bill for services rendered, or even able to know a patients name, the patients primary care physician (PCP) faxes us the patients insurance along with their personal information; sex, DOB, address, phone and diagnosis (ICD). The PCP hooks their patient up with the monitor and after the recording gets summited to us and a report rendered, only then do I bill for our part.

We are potentially saving people's lives and deserve to receive reimbursements. I was taught to bill this way by Jim Cast and Stan Crowley that had been in the industry for years. I was never informed by a doctor, regulatory agency, nor any insurance company that I was in the wrong. Unlike the Cast and Crowley's former companies that they turned-in to the government, we only billed for the technical part of the test (not the doctors part or the global part) we did not change diagnosis codes (ICD9/10) to obtain a higher reimbursement, we did not pay kickbacks to any doctors, or obtain the patients pedigree and insurance information illegally.

I just want this over with as this is putting a great deal of stress on me and my family. Please have your expert call me anytime in the event he has questions regarding the aforementioned or anything else.

Thanks,

-Michael Mirando
949-466-3015


**From:** WarLawyer@aol.com [mailto:WarLawyer@aol.com]
**Sent:** Thursday, March 2, 2017 6:38 AM
**To:** mike@holterlabs.com
**Cc:** warlawyer@aol.com
**Subject:** Initial expert review report

We will discuss this today.  Both good and bad but a lot of work for the government to prove the case

*Kevin Barry Mc Dermott, Esq,*

**Law Offices of Kevin Barry Mc Dermott**
300 Spectrum Center Drive, Suite 1420

App. 101

Irvine, California 92618


949-596-0102
949-861-3825 facsimile
WarLawyer@aol.com
*WarLawyer.com*

*(please note – as of February 2, 2015, our building address changed from 8001 Irvine Center Drive to 300 Spectrum Center Drive due to a local street readdressing.  This is an address change only, not a physical relocation of our offices.)*

The foregoing message(s) is confidential and intended for the designated recipient only.  The foregoing information may be protected by attorney-client and/or work product privilege.  Accordingly, if you have received this message in error, please contact this office immediately, and delete the message without reviewing, copying, or making further use of the information contained therein.

Confidentiality Notice:  This email message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information.  Any unauthorized review, use, disclosure or distribution is prohibited.

App. 102

**Michael Mirando**

| | |
|---|---|
| **From:** | WarLawyer@aol.com |
| **Sent:** | Monday, April 3, 2017 4:25 PM |
| **To:** | marrigo@noworldborders.com; mike@holterlabs.com |
| **Subject:** | Re: US v. Mirando, 16-215--Plea Agreement |

Roger..

In a message dated 4/3/2017 4:25:11 P.M. Pacific Daylight Time, marrigo@noworldborders.com writes:

949-633-5664

On 4/3/17, 4:23 PM, "WarLawyer@aol.com" <WarLawyer@aol.com> wrote:

Roger.  Let me know what # you will be at and we can do a three way call.

In a message dated 4/3/2017 4:22:37 P.M. Pacific Daylight Time, marrigo@noworldborders.com writes:

I can do 11am tomorrow – please confirm?

Michael Arrigo

949-633-5664 mobile

949-335-5580 x101 office

marrigo@noworldborders.com

On 4/3/17, 8:06 AM, "WarLawyer@aol.com" <WarLawyer@aol.com> wrote:

1

App. 103

Gentlemen,

We have until close of business tomorrow to accept or close the door on the plea offer. I suggest we use today to wrap up as much a review of the discovery and conduct a conference call tomorrow around 1100 to finalize a decision. As I view the evidence, unless the dox tell us otherwise, there is no evidence of specific intent, at least not without Cast & Crowley.  And they are required to testify, I really like the odds

 *Kevin Barry Mc Dermott, Esq,*

**Law Offices of Kevin Barry Mc Dermott**
300 Spectrum Center Drive, Suite 1420
Irvine, California 92618

949-596-0102
949-861-3825 facsimile
*WarLawyer@aol.com*
*WarLawyer.com*

*(please note – as of February 2, 2015, our building address changed from 8001 Irvine Center Drive to 300 Spectrum Center Drive due to a local street readdressing.  This is an address change only, not a physical relocation of our offices.)*

The foregoing message(s) is confidential and intended for the designated recipient only.  The foregoing information may be protected by attorney-client and/or work product privilege.  Accordingly, if you have received this message in error, please contact this office immediately, and delete the message without reviewing, copying, or making further use of the information contained therein.

Confidentiality Notice:  This email message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information.  Any unauthorized review, use, disclosure or distribution is prohibited.

---

From: Michael.Freedman@usdoj.gov
To: WarLawyer@aol.com
Sent: 3/24/2017 3:31:14 P.M. Pacific Daylight Time
Subj: US v. Mirando, 16-215--Plea Agreement

Kevin,

Please see the attached letter and plea agreement offered to Mr. Mirando.  As noted, please let me know by April 4 whether Mr. Mirando accepts this agreement.

Regards,

App. 104

Michael

**Michael G. Freedman** | **Assistant United States Attorney**
1100 United States Courthouse | 312 North Spring Street | Los Angeles, California 90012
T: 213.894.0631 | F: 213.894.0141 | michael.freedman@usdoj.gov

App. 105

**Michael Mirando**

---

| | |
|---|---|
| **From:** | WarLawyer@aol.com |
| **Sent:** | Tuesday, April 4, 2017 4:00 PM |
| **To:** | mike@holterlabs.com |
| **Subject:** | Fwd: Mirando Filing |
| **Attachments:** | AUSAbios.docx; Stats.docx |

Michael,

Received a response back from Freedman. We will be gearing up for trial.

Per our discussion below, I need the balance of the retainer in the trust account by the end of the week. As almost everything in my office will be placed on the back burner while I concentrate on your case, I need to know I have payment for prep and trial.

Thanks

*Kevin Barry Mc Dermott, Esq.*

*Law Offices of Kevin Barry Mc Dermott*
300 Spectrum Center Drive Suite 1420
Irvine, California 92618

949-596-0102
949-861-3825 facsimile
*WarLawyer@aol.com*
*WarLawyer.com*

*(please note – as of February 2, 2015, our building address changed from 8001 Irvine Center Drive to 300 Spectrum Center Drive due to a local street readdressing.  This is an address change only, not a physical relocation of our offices.)*

The foregoing message(s) is confidential and intended for the designated recipient only.  The foregoing information may be protected by attorney-client and/or work product privilege.  Accordingly, if you have received this message in error, please contact this office immediately, and delete the message without reviewing, copying, or making further use of the information contained therein.

Confidentiality Notice:  This email message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information.  Any unauthorized review, use, disclosure or distribution is prohibited.

---

From: WarLawyer@aol.com
To: mike@holterlabs.com
Sent: 10/8/2016 1:16:08 P.M. Pacific Daylight Time
Subj: Re: Mirando Filing

Michael,

I am forwarding the language of the statutes as well as the bios on the AUSAs assigned to your case.  neither have had a high profile case that has hit the wire.

As we discussed, I will ask that you deposit $100,000 in my client trust account, Kevin Barry McDermott Attorney Client Trust Account, Wells Fargo acct # 0344641956, routing number 121000248. I will use $25,000 immediately and this amount will be non-fundable, and I will bill at $400 per hour through the course of the relationship and I will make the retainer work to cover pre-trial and trial.  If we need to retain experts for testimony. that will be extra.

App. 106

I am getting your e-mails.  As soon as you have a travel schedule, we will sit down and discuss.

**Kevin Barry Mc Dermott, Esq.**

**Law Offices of Kevin Barry Mc Dermott**
300 Spectrum Center Drive Suite 1420
Irvine, California 92618

949-596-0102
949-861-3825 facsimile
*WarLawyer@aol.com*
*WarLawyer.com*

*(please note – as of February 2, 2015, our building address changed from 8001 Irvine Center Drive to 300
Spectrum Center Drive due to a local street readdressing.  This is an address change only, not a physical
relocation of our offices.)*

The foregoing message(s) is confidential and intended for the designated recipient only.  The foregoing
information may be protected by attorney-client and/or work product privilege.  Accordingly, if you have received
this message in error, please contact this office immediately, and delete the message without reviewing, copying,
or making further use of the information contained therein.

Confidentiality Notice:  This email message, including any attachments, is for the sole use of the intended
recipient(s) and may contain confidential and privileged information.  Any unauthorized review, use, disclosure or
distribution is prohibited.

In a message dated 10/7/2016 6:53:04 P.M. Pacific Daylight Time, mike@holterlabs.com writes:

See attached.

-Mike

App. 107

**Michael Mirando**

| | |
|---|---|
| **From:** | WarLawyer@aol.com |
| **Sent:** | Wednesday, April 12, 2017 10:31 AM |
| **To:** | mike@holterlabs.com |
| **Subject:** | Re: Witness NOT taking Stand |

He is being told that he most likely will not.  But we may still receive additional  evidence prior to trial.

And we discussed why we needed his involvement,,,,

In a message dated 4/12/2017 8:21:55 A.M. Pacific Daylight Time, mike@holterlabs.com writes:

> Kevin,
>
>
> I have paid him just over $51,000 so far with this last invoice. Does he know that he is not taking the stand? The last time I spoke to him, he seemed to think that he was.
>
>
> -Michael Mirando
>
>
> **From:** WarLawyer@aol.com [mailto:WarLawyer@aol.com]
> **Sent:** Wednesday, April 12, 2017 7:55 AM
> **To:** mike@holterlabs.com
> **Subject:** Re: Updated hours and balance due - Arrigo
>
>
> So, the full $31k has been paid?
>
>
> In a message dated 4/12/2017 7:28:44 A.M. Pacific Daylight Time, mike@holterlabs.com writes:
>
>> Kevin,
>>
>>
>> As I stated before, I did not have the credit to put this on my credit card. I sent a check IN FULL and he had an issue with this. This invoice has been paid.
>>
>>
>> You need to stop sending me these panic e-mails and trust me. I have never NOT paid a bill.

App. 108

-Michael Mirando

---

**From:** Warlawyer [mailto:warlawyer@aol.com]
**Sent:** Wednesday, April 12, 2017 4:09 AM
**To:** mike@holterlabs.com
**Subject:** Fwd: Updated hours and balance due - Arrigo

What r u waiting on?  We are wasting an entire while u do this

Sent from my iPhone

Begin forwarded message:

> **From:** Michael Arrigo <marrigo@noworldborders.com>
> **Date:** April 12, 2017 at 3:10:53 AM EDT
> **To:** Kevin Mc Dermott <WarLawyer@aol.com>
> **Subject: Updated hours and balance due - Arrigo**
>
> Kevin, attached for your client is the updated statement of hours, billings, payments received and balance.
>
> We need the balance of the retainer paid to continue.  Michael Mirando has paid $10,000 of the total invoice so far.
>
> I have more to share this week that should be helpful.
>
> Thank you,
>
> Michael Arrigo
>
> 949-633-5664 mobile
>
> 949-335-5580 x101 office
>
> marrigo@noworldborders.com

2

App. 109

**Michael Mirando**

| | |
|---|---|
| **From:** | WarLawyer@aol.com |
| **Sent:** | Friday, April 14, 2017 5:58 AM |
| **To:** | mike@holterlabs.com |
| **Subject:** | Re: Trial Memo |

No,  that relevant..

In a message dated 4/14/2017 5:57:23 A.M. Pacific Daylight Time, mike@holterlabs.com writes:

Should we also put in the brief that Crowley intentionally missed 4 scheduled depositions? This shows me that he's hiding something.

Just a thought.

-Michael Mirando
 (sent via phone)

-------- Original message --------
From: WarLawyer@aol.com
Date: 4/14/17 4:37 AM (GMT-08:00)
To: mike@holterlabs.com
Subject: Re: Trial Memo

Done,  I am going to keep the $24k theft as it is...   the more it looks like Cast & Crowley colluded the better.  Besides, when we get Crowley on the stand we will make it look like that was the reason  Better spin.  All else good catches.   Also, want to keep Brown's role to a minimum until after Crowley is gone....

In a message dated 4/13/2017 8:13:20 A.M. Pacific Daylight Time, mike@holterlabs.com writes:

Kevin,


This is awesome. Below are some notes indicating some incorrect dates and details that need to be corrected. I added some details for clarification that you may or may not wish to use.


---------------------------------------------------------


Page 1, line 21: They raided my home around 5:45am when it was still dark out. They were all gone by 6:30am.


Page 1, line 27: I did not see "FBI" until I opened the front door. I put my home defense pistol back in its holster by my bed when I noticed flashing blue\red lights as I was walking down the stairs towards the front door. I thought it was the Portland Police.

1

App. 110

Page 2, line 3: I was released just after lunch, NOT in the evening after I was seen in court with handcuffs and ankle shackles.

Page 3, line 27: I was not aware that Casts wife worked at National Cardio. Crowley's wife  (Erika) worked there and performed billing along with Cast.

Page 4, line 16: The date on the operating agreement was March 2005, not May. We all signed in June 2005 in front of a notary.

Page 4, line 20: The CA filings for our company was in January 2005 (01/10/2005), not 2006.

Page 4, line 25: I was a Systems Engineer at Intel in charge of the Server and Network infrastructure; I had nothing to do with Phones.

Page 5, line 1: I knew that they were involved in a lawsuit as they would always talk about all of the money that they would get, but I did not know all the details. Crowley would always say, "I can't wait until I get Rob money". I knew that he was referring to "Rob" Parsons.

Page 5; line 11: <u>Casts</u> capital contribution was only supposed to be monetary to the tune of 30K not including equipment. He DID NOT put in a dime. Neither did Crowley; <u>Crowley</u> just put in some old devices that he <u>stole</u> from National Cardio to which we replaced shortly after he told me they were stolen from his old company.

Page 5; line 24: Crowley was NOT "asked" to join Specialized Medical, he formed it together with Steven Burns. Crowley's name was left off of the paperwork intentionally due to his involvement with Holter Labs and his tax issues (not filing returns). He was being paid under the table by Specialized Medical (and may still be?) so he did not have to file a tax return (this is my assumption).

Page 5; line 26: Specialized Medical was <u>formed on 12/19/2011</u> according to the CA Sec of State business database; <u>NOT in 2012</u>. I left for Oregon on October 7th 2011.

Page 6; line 7: Crowley stole 24k in CASH on 11/30/2012 via Chase Bank.

App. 111

Page 6; line 8-10: <u>Crowley</u> stole the 24k AFTER the suit was filed by Cast. <u>Cast</u> did not use this money since the suit was already filed and his attorney (Kevin Day) was on contingency. <u>Crowley</u> used the 24k to hire an attorney to mediate with me about breaking up the company in December 2012. This meeting took place in Joe's conference room. At this point, Crowley stated that he did not know about the Cast lawsuit; which we now know is not true.

Page 6; line 28: I purchased the Civil case for 60K in <u>April 2016</u>; NOT in 2015.

Page 7; line 6-7: Jim Brown has always been our software developer since our inception as a company in 2005. He acted as a tech, replacing Crowley's duties, since Crowley left the company in December 2012.

Page 7; line 15: Should this be "The Defendant attests"…?

--------------------------------------------------------

Hope this helps.

-Michael Mirando

---

**From:** WarLawyer@aol.com [mailto:WarLawyer@aol.com]
**Sent:** Wednesday, April 12, 2017 6:13 PM
**To:** mike@holterlabs.com
**Subject:** Trial Memo

Michael,

This will be filed Friday, If you have any comments or questions, I will respond tomorrow eve.

**Kevin Barry Mc Dermott, Esq.**

**Law Offices of Kevin Barry Mc Dermott**
300 Spectrum Center Drive, Suite 1420
Irvine, California 92618

App. 112

949-596-0102
949-861-3825 facsimile
WarLawyer@aol.com
*WarLawyer.com*

The foregoing message(s) is confidential and intended for the designated recipient only.  The foregoing information may be protected by attorney-client and/or work product privilege.  Accordingly, if you have received this message in error, please contact this office immediately, and delete the message without reviewing, copying, or making further use of the information contained therein.

Confidentiality Notice:  This email message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information.  Any unauthorized review, use, disclosure or distribution is prohibited.

App. 113

**Michael Mirando**

| | |
|---|---|
| **From:** | WarLawyer@aol.com |
| **Sent:** | Tuesday, April 18, 2017 8:33 AM |
| **To:** | mike@holterlabs.com |
| **Subject:** | Discovery |
| **Attachments:** | 2017 04 06.Interview_with_Stanton_Crowley.pdf; Under Seal Application_12APR2017.pdf; Under Seal Proposed Order_12APR2017.pdf |

*Kevin Barry Mc Dermott, Esq.*

*Law Offices of Kevin Barry Mc Dermott*
300 Spectrum Center Drive Suite 1420
Irvine, California 92618

949-596-0102
949-861-3825 facsimile
*WarLawyer@aol.com*
*WarLawyer.com*

*(please note – as of February 2, 2015, our building address changed from 8001 Irvine Center Drive to 300 Spectrum Center Drive due to a local street readdressing.  This is an address change only, not a physical relocation of our offices.)*

The foregoing message(s) is confidential and intended for the designated recipient only. The foregoing information may be protected by attorney-client and/or work product privilege. Accordingly, if you have received this message in error, please contact this office immediately, and delete the message without reviewing, copying, or making further use of the information contained therein.

Confidentiality Notice: This email message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited.

App. 114

**Michael Mirando**

| | |
|---|---|
| **From:** | WarLawyer@aol.com |
| **Sent:** | Tuesday, April 18, 2017 8:34 AM |
| **To:** | mike@holterlabs.com |
| **Subject:** | Discovery III |
| **Attachments:** | Criminal History.Mirando.Crowley.Cast.2017 04 10.pdf; Flow of Funds_Where Money Came From.pdf; Flow of Funds_Where Money Went To.pdf; Holter Labs DMS Report_DMSDQ1241 Holter Labs_Request.pdf; Holter Labs DMS Report_DMSDQ1241 Holter Labs_Spreadsheet.pdf; Holter Labs. FBI Holds in Evidence-Report.2017 04 07.pdf; Holter Labs. FBI_1A-1C-Report.2017 04 07.pdf |

*Kevin Barry Mc Dermott, Esq.*

*Law Offices of Kevin Barry Mc Dermott*
300 Spectrum Center Drive Suite 1420
Irvine, California 92618

949-596-0102
949-861-3825 facsimile
*WarLawyer@aol.com*
*WarLawyer.com*

*(please note – as of February 2, 2015, our building address changed from 8001 Irvine Center Drive to 300 Spectrum Center Drive due to a local street readdressing.  This is an address change only, not a physical relocation of our offices.)*

The foregoing message(s) is confidential and intended for the designated recipient only. The foregoing information may be protected by attorney-client and/or work product privilege. Accordingly, if you have received this message in error, please contact this office immediately, and delete the message without reviewing, copying, or making further use of the information contained therein.

Confidentiality Notice: This email message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited.

App. 115

**Michael Mirando**

| | |
|---|---|
| **From:** | WarLawyer@aol.com |
| **Sent:** | Tuesday, April 18, 2017 8:35 AM |
| **To:** | mike@holterlabs.com |
| **Subject:** | Discovery IV |
| **Attachments:** | Anthem Claims Analysis Submitted Since Arrest_Pivot Table.pdf; Anthem Claims Analysis Submitted Since Arrest_Request.pdf; Anthem Claims Analysis Submitted Since Arrest_Spreadsheet.pdf; Claims Request Letter.04062017.pdf |

***Kevin Barry Mc Dermott, Esq.***

***Law Offices of Kevin Barry Mc Dermott***
300 Spectrum Center Drive Suite 1420
Irvine, California 92618

949-596-0102
949-861-3825 facsimile
*WarLawyer@aol.com*
*WarLawyer.com*

*(please note – as of February 2, 2015, our building address changed from 8001 Irvine Center Drive to 300 Spectrum Center Drive due to a local street readdressing.  This is an address change only, not a physical relocation of our offices.)*

The foregoing message(s) is confidential and intended for the designated recipient only. The foregoing information may be protected by attorney-client and/or work product privilege. Accordingly, if you have received this message in error, please contact this office immediately, and delete the message without reviewing, copying, or making further use of the information contained therein.

Confidentiality Notice: This email message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited.

App. 116

**Michael Mirando**

**From:** WarLawyer@aol.com
**Sent:** Tuesday, April 18, 2017 8:36 AM
**To:** mike@holterlabs.com
**Subject:** Discovery V
**Attachments:** Bennett.pivot table of insurance claims.pdf; Foster Sixtos pivot table of Holter claims.pdf;
Hattrup.pivot table of insurance claims.pdf; Martha Bennett.patient medical records.pdf; Pivot table
of insurance claims for Lisa Solmor.pdf

*Kevin Barry Mc Dermott, Esq.*

*Law Offices of Kevin Barry Mc Dermott*
300 Spectrum Center Drive Suite 1420
Irvine, California 92618

949-596-0102
949-861-3825 facsimile
*WarLawyer@aol.com*
*WarLawyer.com*

*(please note – as of February 2, 2015, our building address changed from 8001 Irvine Center Drive to 300 Spectrum
Center Drive due to a local street readdressing.  This is an address change only, not a physical relocation of our offices.)*

The foregoing message(s) is confidential and intended for the designated recipient only. The foregoing information may
be protected by attorney-client and/or work product privilege. Accordingly, if you have received this message in error,
please contact this office immediately, and delete the message without reviewing, copying, or making further use of the
information contained therein.

Confidentiality Notice: This email message, including any attachments, is for the sole use of the intended recipient(s) and
may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited.

App. 117

**Michael Mirando**

| | |
|---|---|
| **From:** | WarLawyer@aol.com |
| **Sent:** | Tuesday, April 18, 2017 8:43 AM |
| **To:** | mike@holterlabs.com |
| **Subject:** | Discovery VI |
| **Attachments:** | Amended_Operating Agreement -Holter Labs LLC.pdf; HolterLabs Doc Address-MAIN_2005.pdf; HolterLabs Doc Address-MAIN_2006.pdf; HolterLabs Doc Address-MAIN_2007.pdf; HolterLabs Doc Address-MAIN_2008.pdf; HolterLabs Doc Address-MAIN_2009.pdf; HolterLabs Doc Address-MAIN_2010.pdf; HolterLabs Doc Address-MAIN_2011.pdf; HolterLabs Doc Address-MAIN_2012.pdf; HolterLabs Doc Address-MAIN_Contacts.pdf; HolterLabs Doc Address-MAIN_Dr. Address.pdf; HolterLabs Doc Address-MAIN_Holter Inventory.pdf; HolterLabs Doc Address-MAIN_Old Doctors.pdf; HolterLabs Doc Address-MAIN_Providers.pdf |

Check out the blank operating agreement Crowley provided

***Kevin Barry Mc Dermott, Esq.***

***Law Offices of Kevin Barry Mc Dermott***
300 Spectrum Center Drive Suite 1420
Irvine, California 92618

949-596-0102
949-861-3825 facsimile
*WarLawyer@aol.com*
*WarLawyer.com*

*(please note – as of February 2, 2015, our building address changed from 8001 Irvine Center Drive to 300 Spectrum Center Drive due to a local street readdressing.  This is an address change only, not a physical relocation of our offices.)*

The foregoing message(s) is confidential and intended for the designated recipient only. The foregoing information may be protected by attorney-client and/or work product privilege. Accordingly, if you have received this message in error, please contact this office immediately, and delete the message without reviewing, copying, or making further use of the information contained therein.

Confidentiality Notice: This email message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited.

App. 118

**Michael Mirando**

---

| | |
|---|---|
| **From:** | WarLawyer@aol.com |
| **Sent:** | Tuesday, April 18, 2017 8:27 AM |
| **To:** | mike@holterlabs.com |
| **Subject:** | Discovery received yesterday |
| **Attachments:** | Ally Bank - 09.10.2015 Declaration FGJ.pdf; Audi Wilsonville - 02.24.2015 Declaration FGJ.pdf; Bank of America - 09.29.2014 Declaration FGJ.pdf; Bank of the West - 09.10.2015 Declaration FGJ.pdf; JPMorgan Chase - 09.24.2014 Declaration FGJ.pdf |

Mike,

You will receive a series of e-mail today from me with copies of the records we received in discovery yesterday.  If anything needs to be discussed, let me know.

***Kevin Barry Mc Dermott, Esq.***

***Law Offices of Kevin Barry Mc Dermott***
300 Spectrum Center Drive Suite 1420
Irvine, California 92618

949-596-0102
949-861-3825 facsimile
*WarLawyer@aol.com*
*WarLawyer.com*

*(please note – as of February 2, 2015, our building address changed from 8001 Irvine Center Drive to 300 Spectrum Center Drive due to a local street readdressing.  This is an address change only, not a physical relocation of our offices.)*

The foregoing message(s) is confidential and intended for the designated recipient only. The foregoing information may be protected by attorney-client and/or work product privilege. Accordingly, if you have received this message in error, please contact this office immediately, and delete the message without reviewing, copying, or making further use of the information contained therein.

Confidentiality Notice: This email message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited.

App. 119

Bank of America Legal Order Processing
RE: Reference # ████████679
Court Case number: ████████
Court or Issuer: UNITED STATES ATTORNEY'S OFFICE
Court Case Name: MURRIETA MEDICAL SUPPLY

**AFFIDAVIT OF BANK OF AMERICA BANK OFFICER AND/OR CUSTODIAN OF RECORDS**

Before me, the undersigned authority, personally appeared,
Candice Charles
Who, being duly sworn by me, deposes and says as follows:

1.) **Authority.** I, Candice Charles, am a duly authorized bank officer and/or custodian of the records of Bank of America N.A with authority to execute this affidavit and certify to the authenticity and accuracy of the records produced with this affidavit.

2.) **Records.** The records produced herewith by Bank of America, N.A. are original documents or are true copies of records of a regularly conducted banking activity that:

a.)   Were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters;

b.)   Were made and kept in the course of regularly conducted banking activity by Bank of America, N.A. personnel or by persons acting under their control; and

c.)   Were made and kept by the regularly conducted activity of Bank of America N.A. as a regular practice, on or about the time of the act, condition, or event recorded.

**Additional Comments:** These records include:

- Signature Cards, Checks, Deposits for account number ending in 4536 in the name Michael J Mirando, Murrieta Medical Supply for the time period of September 2007 thru November 2012.
- Bank Statements for account number ending in 4536 in the name Michael J Mirando, Murrieta Medical Supply for the time period of February 2007 thru November 2012.

3.) **Production.** *(Select One)*

__X__The records produced herewith (together with any banking records produced by Bank of America N.A. previously in response to the subject request, order, or subpoena) constitute a complete production of bank records responsive to the subject request order or subpoena (or a complete production under the terms of a subject request, order, subpoena as subsequently limited by the issuer).

**OR**

_____ A thorough search has been conducted and no records could be located that are responsive to the subject request, order, or subpoena.

4.) I declare under penalty of perjury that the foregoing is true and correct.

Date: 09/24/2014    Signature: *Candice Charles*

The above named Bank of America N.A. bank officer and/or custodian of records is known to me (or satisfactorily proven) to be the person who subscribed the within document and acknowledged to me that he/she executed the same for the purposes stated there in.

___✓___ Signer is personally known to me.

_____ Signer has produced the following identification: _____

Sworn to and subscribed before me this __24__ day of _September 2014_ . In witness thereof I have set my hand and official seal.

_____
Signature of Notary Public in and for State of DE
City/County of Newark/New Castle
My Commission Expires _____

WILLIAM CURTIS EDGE
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires Dec. 24, 2015

App. 120



Bank of America
Legal Order Processing
DE5-024-02-08
P.O. Box 15047
Wilmington, DE 19850

September 24, 2014

FEDERAL BUREAU OF INVESTIGATION
KATHLEEN KENNEDY, SPECIAL AGENT
11000 WILSHIRE BLVD, SUITE 1700
LOS ANGELES, CA 90024

Regarding Reference number: ███████679
Case: MURRIETA MEDICAL SUPPLY
Case number: ████████████

**Enclosed are the documents requested in the subpoena/legal request issued in the above case.**

We consider your receipt of these records compliance with the above referenced subpoena/legal request and our file is now closed for this matter.

If you have any questions, please call us at 213-580-0702. We are available Monday through Friday 9 a.m. to 5 p.m. local time. If you need to forward any correspondence to us regarding this case, please mail it to the address listed above. When contacting us regarding this notice, please use the reference number listed above.

Legal Order Processing

♻ Recycled Paper

## DECLARATION OF CUSTODIAN CERTIFYING BUSINESS RECORD

I, _____Don Storc_____ (*name*), hereby declare as follows:

(1)   I am a custodian of records for _____Bank of the West_____ (*name of business or entity*), and in that capacity am knowledgeable about the matters set forth herein.

    (a)   My job title/position is: _____Operations Coordinator II_____.

    (b)   I have been employed in this capacity for _____110 months_____ (*duration*), and by the aforementioned business/entity for _____117 months_____ (*duration*).

    (c)   My job duties are:

        Providing account documentation for subpoena research requests.

    (d)   I am knowledgeable about the matters set forth herein and the relevant record-keeping practices of the aforementioned business/entity based upon the following (*check all that apply*):

       ☒   Training

       ☒   Familiarity with relevant policy/policies

       ☒   Hands-on experience

       ☐   Supervision of one or more others with hands-on experience

       ☐   Other (*describe*):

(2)   Attached hereto or enclosed herewith are ☐ originals ☒ true and correct duplicates (*check one of the boxes*) of a record or records of a regularly conducted activity of the business/entity named above.

App. 122

(3)    I certify that the attached record(s):

(a)    was/were made at or near the time of the occurrence of the matters set forth therein;

(b)    was/were made by, or from information transmitted by, a person with knowledge of those matters;

(c)    was/were kept in the course of the regularly conducted activity;

(d)    was/were made by and in the course of the regularly conducted activity as a regular practice; and

(e)    if not original records, are exact duplicates of original records.

I declare under penalty of perjury that the foregoing is true and correct.

Dated ___September 3, 2015_____ (*date document was signed*) and executed at

___Omaha, NE_____ (*place document was signed*).

_____
(*signature*)

_____
Don Storc
(*typed or printed name*)

2

App. 123

USA_026000

**JPMorganChase** ⟳

Stacy Ayala
Telephone:  (817) 399-6104
Facsimile:  (817) 399-5481

Texas Subpoena Processing
Mail Code TX1-0053
14800 Frye Road
Fort Worth, Texas 76155

9/17/2014

SA Kathleen I. Kennedy
Federal Bureau of Investigation
11000 Wilshire Blvd., Suite 1700
Los Angeles, CA 90024

RE:  **Subpoena Type:  Grand Jury Subpoenas**
       **Case Name:   Pelagic Properties of South Carolina, LLC**
            **Case No.:** █████████
       **JPMC File No.:** ███████**04-F1**

Dear SA Kathleen I. Kennedy :

In response to your request, enclosed please find copies of account records regarding the above-referenced matter served upon JPMorgan Chase Bank, N.A. .

In addition, please advise me of the following as soon as possible, so that we can properly prioritize our response.

- **Is the subpoena related to terrorism or money laundering?**
- **Does your investigation into possible criminal violations involve transactions conducted through the bank?**
- **Is our customer(s) the subject or the target of the investigation?**

Sincerely,

*Stacy Ayala*

Stacy Ayala
Document Review Specialist

App. 124

USA_026001

## INVENTORY LISTING

**CHASE FILE NO.:  SB586104-F1**

Customer Name: Pelagic Properties Of South Carolina LLC
Account No.: ████4200
Request Type: Checking -Signature Card
Date Range: 7/1/2005 - 12/31/2008

Request Type: Checking -Statements
Date Range: 7/1/2005 - 12/31/2008
Comment: 07/28/05 - 12/31/08

Unable to locate additional records responsive to the subpoena and/or request with the information provided.

Copies of items $1.00 or less have not been provided

App. 125

# AFFIDAVIT

## Case No. : 11-N0564

Stacy Ayala , certifies and declares as follows:

1.  I am over the age of 18 years and not a party to this action.
2.  My business address is 14800 Frye Road, Fort Worth, Texas 76155.
3.  I am a Document Review Specialist  and Custodian of Records for JPMorgan Chase Bank, N.A. in the National Subpoena Processing Department located in Fort Worth, Texas.
4.  Based on my knowledge of JPMorgan Chase Bank, N.A. 's business records practices and procedures, the enclosed records are a true and correct copy of the original documents kept by JPMorgan Chase Bank, N.A. in the ordinary course of business.
5.  Based on my knowledge of JPMorgan Chase Bank, N.A. 's business records practices and procedures, the records were made at or near the time of the occurrence of the matters set forth in the records by, or from, information transmitted by a person with knowledge of those matters.
6.  It is the regular practice of JPMorgan Chase Bank, N.A. to make such a record of transactions in the ordinary course of business.

I declare under penalty of perjury, under the laws of the State of Texas, that the foregoing is true and correct.

Dated: 9/17/14

By: _Stacy Ayala_

Stacy Ayala
Document Review Specialist
TEXAS SUBPOENA PROCESSING

Sworn to before me this 17 day of SEPTEMBER, 2014

Notary Public

10·22·16
Commission Expires

ELIZABETH RAMOS
Notary Public, State of Texas
My Commission Expires
October 22, 2016

App. 126

**DECLARATION OF CUSTODIAN CERTIFYING BUSINESS RECORD**
(Please type or print legibly except for signature.)

I, _Stacy McBride_, hereby declare as follows:
(name)

(1)  I am a custodian of records for _Audi Wilsonville_,
(name of business or entity)

and in that capacity am knowledgeable about the matters set forth herein.

(a)  My job title/position is: _Business Manager_

(b)  I have been employed in this capacity for _3 yrs 5 months_
(duration)

and by the aforementioned business/entity for _3 yrs 5 months_
(duration)

(c)  My job duties are: _Manage accounting office, prepare financial statements_

(d)  I am knowledgeable about the matters set forth herein and the relevant record-keeping practices of the aforementioned business/entity based upon (check all that apply):

[✓] Training.

[✓] Familiarity with relevant policy/policies.

[✓] Hands-on experience.

[✓] Supervision of one or more others with hands-on experience.

[ ] Other.  Describe:

(2)  ~~Attached hereto or enclosed herewith are~~ ~~originals/~~
(true and correct duplicates) of a record or records of a regularly conducted activity of the business or entity named above.
(Circle either "originals" or "true and correct duplicates" and strike out the other term.)

(3)  I certify that the attached record(s):

(a)  was/were made at or near the time of the occurrence of the matters set forth therein,

(b)  was/were made by, or from information transmitted by, a person with knowledge of those matters;

(c)  was/were kept in the course of the regularly conducted activity;

(d)  was/were made by and in the course of the regularly conducted activity as a regular practice;

(e)  if not original records, are exact duplicates of original records.

I declare under penalty of perjury that the foregoing is true and correct.

Dated _2/19/15_ and
(date document was signed)

executed at _Audi Wilsonville, Wilsonville, OR_.
(place document was signed)

_[signature]_
(signature)

_Stacy McBride_
(typed or printed name)

App. 127

## DECLARATION OF CUSTODIAN CERTIFYING BUSINESS RECORD

I, _Susan W. Green_ (*name*), hereby declare as follows:

(1)    I am a custodian of records for _Ally Bank_ (*name of business or entity*), and in that capacity am knowledgeable about the matters set forth herein.

    (a)    My job title/position is: _Deposit Operations Executive_.

    (b)    I have been employed in this capacity for _3 years_ (*duration*), and by

the aforementioned business/entity for _7 years_ (*duration*).

    (c)    My job duties are:
Oversight of all Bank Operations functions, including account maintenance, loss prevention and legal documentation.

    (d)    I am knowledgeable about the matters set forth herein and the relevant record-keeping practices of the aforementioned business/entity based upon the following (*check all that apply*):

        ☑    Training

        ☑    Familiarity with relevant policy/policies

        ☑    Hands-on experience

        ☑    Supervision of one or more others with hands-on experience

        ☐    Other (*describe*):

(2)    Attached hereto or enclosed herewith are ☐ originals ☑ true and correct duplicates (*check one of the boxes*) of a record or records of a regularly conducted activity of the business/entity named above.

App. 128

USA_025994

(3)    I certify that the attached record(s):

    (a)    was/were made at or near the time of the occurrence of the matters set forth therein;

    (b)    was/were made by, or from information transmitted by, a person with knowledge of those matters;

    (c)    was/were kept in the course of the regularly conducted activity;

    (d)    was/were made by and in the course of the regularly conducted activity as a regular practice; and

    (e)    ✓  if not original records, are exact duplicates of original records.

I declare under penalty of perjury that the foregoing is true and correct.

Dated ___*August 31, 2015*___ (*date document was signed*) and executed at

___*Ally Book*___ (*place document was signed*).

___*Susan W. Green*___
(*signature*)

___*Susan W. Green*___
(*typed or printed name*)

2

App. 129

USA_025995

**Michael Mirando**

---

| | |
|---|---|
| **From:** | WarLawyer@aol.com |
| **Sent:** | Tuesday, April 18, 2017 9:23 AM |
| **To:** | mike@holterlabs.com |
| **Subject:** | Re: Questions |

In a message dated 4/18/2017 9:16:01 A.M. Pacific Daylight Time, mike@holterlabs.com writes:

.    Can we bring up to the jury that this case was not handled like a normal white collar case? We need to convey to the Jury what I have been through that that the government has over stepped their bounds.

2.    Can we bring up that Crowley hasn't filed tax returns since 2002? This will go against their claim that I was instructing him not to file tax returns; which is untrue. He didn't file them even before we started in business in 2005. I know that we have Crowley not filing since 2008, but that was just because of the statute of limitations. **will get done**

3.    If he wanted his story heard, why did he refuse to show up for 4 scheduled civil depositions? Now he wants to talk. This is purely money driven and the jury HAS to know his history. **will get done**

4.    Jim Brown (Software Guy) states that these devices can record up to 15 days. Should we get a statement from him on this and that I know nothing about this software? **But not 30 days.**

5.    Will the jury know how much time that I will be facing if I am found guilty? I can't see them wanting to send be away for 51 months over this non-sense. Too much doubt. **no**

6.    Did they supply you all of the requested documents and information that you asked for when you declined their plea offer? **yes**

7.    My name was on everything due to Stan's poor credit. Bank account, credit card, office lease, billing software, fax software, everything!. This is the same thing that he is doing with Steve Burns at Specialized Medical.

8.    Murrieta Medical Supply was Stan's and Frank Flints idea (Parsons tax guy) he had me set this up due to his tax issues. Statute of limitations? Its been SIX YEARS since we used this company. If we can't mention the Cast messages, how can they admit this? **This has nothing to do with taxes but everything to do with false invoices...... <mark>this is WHY you cannot get on the stand.</mark>  If the jury hears that you participated in a scam to bury taxes through false invoices, they will convict you on the spot**

9.    Our reports provide all services that we billed for. The physician has billing sheets and descriptions of the codes used in the material that we sent them when they requested our services. See attached.

10.    The insurance company gets a description of codes billed with every claim we filed.

11.    Even if Crowley says he did not Bill. He still knew all of the billing codes in order for us to bill. That's all the knowledge that is needed for us to bill. He knew the codes very well as he has been in the business for 20 years.

12.    Can't we bring up Casts messages since Cast admits that Crowley instructed him what to write in the e-mails and what to say on the voicemails? Cast admits this in his depo.  **we can**

13.    The government never interviewed Jim Brown (Scanning Software) or the person that controls our Server and developed our transmission software. His name is Ryan Matson out of Texas. **This will be covered**

1

App. 130

14.   Can we get Specialized Medicals banking records to support that Crowley is working for Steven Burns.
Cast says this in his depo. Can we admit this? **No**

15.   Can we pick apart the Grand Jury transcripts? *Just sent it to you*

----------------------------------------

App. 131

**Michael Mirando**

---

**From:**            WarLawyer@aol.com
**Sent:**            Sunday, April 23, 2017 3:27 PM
**To:**              mike@holterlabs.com
**Subject:**         Govt version of the case
**Attachments:**     ExhibitList4.21.xlsx; TrialMemoFILED.pdf

Michael,

The government has filed a trial memo as well as an exhibit list.  They are actually questioning whether they will call Crowley which would be a huge mistake if they don't.  There examination of the records are almost as thorough as Arriego's review. They may try to argue that the billing deceit was so widespread, everyone involved had to know. With that argument, they will have to give Crowley a grant of immunity.

The exhibit list is largely a compilation of the discovery we have been provided.

***Kevin Barry Mc Dermott, Esq,***

**Law Offices of Kevin Barry Mc Dermott**
300 Spectrum Center Drive, Suite 1420
Irvine, California 92618


949-596-0102
949-861-3825 facsimile
*WarLawyer@aol.com*
*WarLawyer.com*

*(please note – as of February 2, 2015, our building address changed from 8001 Irvine Center Drive to 300 Spectrum Center Drive due to a local street readdressing.  This is an address change only, not a physical relocation of our offices.)*

The foregoing message(s) is confidential and intended for the designated recipient only.  The foregoing information may be protected by attorney-client and/or work product privilege.  Accordingly, if you have received this message in error, please contact this office immediately, and delete the message without reviewing, copying, or making further use of the information contained therein.

Confidentiality Notice:  This email message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information.  Any unauthorized review, use, disclosure or distribution is prohibited.

App. 132

| | A | B | C | D |
|---|---|---|---|---|
| 1 | Exhibit | Description | Bates Range | Stipulation |
| 2 | 1 | Holter Device | | |
| 3 | 2 | Images of Holter Device | USA_000001-000004 | |
| 4 | 3 | Datrix Flyer for Holter Device | USA_000646-000647 | |
| 5 | 4 | Datrix 510(K) Premarket Notification Summary | USA_028260-028265 | |
| 6 | 5 | Datrix Invoice to Caird Technology | USA_000690 | |
| 7 | 6 | Datrix Invoice to Lynn Medical | USA_000652-000670 | |
| 8 | 7 | Datrix Invoices to Holter Labs | USA_000703-000708 | |
| 9 | 8 | Summary Chart of Holter Labs Orders from Datrix | USA_029032 | |
| 10 | 9 | Holter Labs Website-FAQs | USA_000218-000219 | |
| 11 | 10 | Holter Labs Website-How to Start | USA_000220 | |
| 12 | 11 | Holter Labs Website-Services | USA_000221 | |
| 13 | 12 | Holter Labs Website-What We Do | USA_000222 | |
| 14 | 13 | Holter Labs Website-Your Benefit | USA_000223 | |
| 15 | 14 | Holter Labs Promotional Materials | USA_001264 | |
| 16 | 15 | Holter Labs Promotional Materials | USA_001265 | |
| 17 | 16 | Holter Labs Promotional Materials | USA_001269 | |
| 18 | 17 | Holter Labs Inventory List | USA_001227-001236 | |
| 19 | 18 | Holter Labs Order Form | USA_001129-001131 | |
| 20 | 19 | Intentionally Blank | | |
| 21 | 20 | Email from Stan Crowley to Michael Mirando, 11/30/2012 | USA_001132 | |
| 22 | 21 | Records of Holter Labs Claims Submitted to Blue Shield | USA_001065-001084, USA_001027-001064 | |
| 23 | 22 | Intentionally Blank | | |
| 24 | 23 | Holter Labs, LLC's Answer to the Verified First Amended Complaint | USA_000009-000014 | |
| 25 | 24 | Michael Mirando's Answer to the Verified First Amended Complaint | USA_000116-000120 | |
| 26 | 25 | Defendants Holter Labs, LLC's and Michael Mirando's Motion to Require Plaintiffs to Furnish a Secu | USA_000174-000217 | |
| 27 | 26 | Proffer Letter Re: Stanton Crowley, September 17, 2013 | USA_001212-001215 | |
| 28 | 27 | Martha Bennett Patient Medical Records | USA_028272-028275 | |
| 29 | 28 | Holter Order Form for Martha Bennett, 12/3/2012 | USA_001978-001980 | |
| 30 | 29 | Holter Labs Report for Martha Bennett, 12/3/12 | USA_025256-025282 | |
| 31 | 30 | Custodian Declaration for Order Form and Report (Identification Only) | USA_001973-001977 | ID Only |
| 32 | 31 | United Health Group Claims File for 12/3/12 Holter Labs Claim for Martha Bennett | USA_001843-001845 | |
| 33 | 32 | United Health Group Claims File for 12/4/12 Holter Labs Claim for Martha Bennett | USA_001846-001848 | |
| 34 | 33 | United Health Group Claims File for 12/6/12 Holter Labs Claim for Martha Bennett | USA_001849-001851 | |
| 35 | 34 | United Health Group Claims File for 12/10/12 Holter Labs Claim for Martha Bennett | USA_001852-001854 | |
| 36 | 35 | Checks from United Health Group to Holter Labs | USA_001366-001368 | |
| 37 | 36 | Summary Chart of Claims Submitted by Holter Labs to United Health Group for Martha Bennett | USA_026253 | |
| 38 | 37 | United Health Group Claims Data | USA_002363 | |
| 39 | 38 | United Health Group Claims Data | USA_002364 | |

App. 133

| | A | B | C | D |
|---|---|---|---|---|
| 40 | 39 | United Health Group Claims Data | USA_002365 | |
| 41 | 40 | United Health Group Custodian Certification (Identification Only) | | |
| 42 | 41 | John Hattrup Patient Medical Records | USA_001900-001903 | |
| 43 | 42 | Holter Labs Report for John Hattrup, 4/11/2011 | USA_025212-025222 | |
| 44 | 43 | Custodian Declaration for Order Form and Report (Identification Only) | USA_001833-001887 | |
| 45 | 44 | United Health Group Claims File for 4/11/11 Holter Labs Claim for Martha Bennett | USA_001826-001830 | |
| 46 | 45 | United Health Group Claims File for 4/12/11 Holter Labs Claim for Martha Bennett | USA_001831-001833 | |
| 47 | 46 | United Health Group Claims File for 4/15/11 Holter Labs Claim for Martha Bennett | USA_001834-001836 | |
| 48 | 47 | United Health Group Claims File for 4/18/11 Holter Labs Claim for Martha Bennett | USA_001840-001842 | |
| 49 | 48 | United Health Group Claims File for 4/18/12 Holter Labs Claim for Martha Bennett | USA_001837-001839 | |
| 50 | 49 | Checks from United Health Group to Holter Labs | USA_001448-001451 | |
| 51 | 50 | Summary Chart of Claims Submitted by Holter Labs to United Health Group for John Hattrup | | |
| 52 | 51 | United Health Group Claims Data | USA_002363 | |
| 53 | 52 | United Health Group Claims Data | USA_002364 | |
| 54 | 53 | United Health Group Claims Data | USA_002365 | |
| 55 | 54 | United Health Group Custodian Certification (Identification Only) | USA_002361-002362 | |
| 56 | 55 | Lisa Solmor Patient Medical Records | USA_002084-002086, USA_002108 | |
| 57 | 56 | Holter Labs Report for Lisa Solmor, 5/28/2013 | USA_025235-025255 | |
| 58 | 57 | Custodian Declaration for Order Form and Report (Identification Only) | USA_002027-002031 | |
| 59 | 58 | Holter Order Form for Lisa Solmor, 5/28/13 | USA_001633 | |
| 60 | 59 | Aetna Claims File for 5/29/2013 Holter Labs Claim for Lisa Solmor | USA_001756-001757 | |
| 61 | 60 | Aetna Claims File for 5/30/2013 Holter Labs Claim for Lisa Solmor | USA_001741-001742 | |
| 62 | 61 | Intentionally Blank | USA_001694-001724 | |
| 63 | 62 | Summary Chart of Claims Submitted by Holter Labs to Aetna for Lisa Solmor | USA_026261 | |
| 64 | 63 | Aetna Claims Data | USA_002153 | |
| 65 | 64 | Aetna Claims Data | USA_002154 | |
| 66 | 65 | Aetna Claims Data | USA_002155 | |
| 67 | 66 | Aetna Custodian Certification (Identification Only) | | |
| 68 | 67 | Intentionally Blank | USA_002150-USA_002151 | |
| 69 | 68 | Intentionally Blank | USA_002152 | |
| 70 | 69 | Intentionally Blank | | |
| 71 | 70 | Holter Labs Report for Stacey Foster, 8/10/2011 | USA_001928-USA_001971 | |
| 72 | 71 | Custodian Declaration for Holter Report (Identification Only) | USA_001916-USA_001920 | |
| 73 | 72 | Holter Order Form for Stacey Foster, 8/10/2011 | USA_001816 | |
| 74 | 73 | Cigna Claims File for 8/10/2011 Holter Labs Claim for Stacey Foster | USA_001815-001818 | |
| 75 | 74 | Cigna Claims File for 8/11/2011 Holter Labs Claim for Stacey Foster | USA_001821-001822 | |
| 76 | 75 | Cigna Claims File for 8/18/2011 Holter Labs Claim for Stacey Foster | USA_001819-001820 | |
| 77 | 76 | Cigna Claims File for 8/24/2011 Holter Labs Claim for Stacey Foster | | |
| 78 | 77 | Summary Chart of Claims Submitted by Holter Labs to Cigna for Stacey Foster | | |

App. 134

| | A | B | C | D |
|---|---|---|---|---|
| 79 | 78 | Cigna Claims Data | USA_002211 | |
| 80 | 79 | Cigna Claims Data | USA_002212 | |
| 81 | 80 | Cigna Claims Data | USA_002213 | |
| 82 | 81 | Cigna Custodian Certification (Identification Only) | | |
| 83 | 82 | Intentionally Blank | | |
| 84 | 83 | Michael Mirando DMV record | USA_000361 | |
| 85 | 84 | Summary Chart of All Claims Submitted by Holter Labs | USA_002371 | |
| 86 | 85 | Summary Chart of Claims for Beneficiaries | USA_001588 | |
| 87 | 86 | Articles of Conversion of Holter Labs, 3/15/2013 | USA_000368-000374 | |
| 88 | 87 | Articles of Organization, 3/15/2012 | USA_000367 | |
| 89 | 88 | Fictitious Business Name Statement ofr Murrieta Medical Supply, 1/30/07 | USA_001309-1310 | |
| 90 | 89 | Summary Chart of Assets and Bank Accounts | USA_029118 | |
| 91 | 90 | Summary Chart of Flow of Funds | USA_0029119 | |
| 92 | 91 | Summary Chart of Holter Labs Chase Bank Distributions | USA_025521 | |
| 93 | 92 | Summary Chart of Holter Labs Claims to Anthem Since October 2016 | | |
| 94 | 93 | Murrieta Medical Deposit Records | USA_001548-001587 | |
| 95 | 94 | Summary Chart of Indictment Counts | | |
| 96 | 95 | Summary Chart of Patient Claims | USA_0029120 | |
| 97 | 96 | Audi Wilsonville Records | USA_23191-023205 | |
| 98 | 97 | Bank of the West Records | USA_003144-003171 | |
| 99 | 98 | Bank of the West Records | USA_003710-003753 | |
| 100 | 99 | Chase Bank Signature Card for Holter Labs Account | USA_016042 | |
| 101 | 100 | Chase Bank Signature Card for Michael Mirando Account | USA_006578 | |
| 102 | 101 | Chase Bank Signature Card for Pelagic Properties of Mississippi Account | USA_016777 | |
| 103 | 102 | Chase Bank Signature Card for Pelagic Properties of South Carolina Account | USA_017227 | |
| 104 | 103 | Chicago Title Company of Oregon Escrow Documents for 9324 NW Finzer Ct | USA_004280-004343 | |
| 105 | 104 | Uniform Residential Loan Application | USA_018214-018219 | |
| 106 | 105 | Vanguard Redemption Checks | USA_023186-023188 | |
| 107 | 106 | Bank of the West Wire Transfers | USA_003825-003828 | |

App. 135

SANDRA R. BROWN
Acting United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
MICHAEL G. FREEDMAN (Cal. Bar No. 281279)
KATHERINE A. RYKKEN (Cal. Bar No. 267196)
Assistant United States Attorneys
General Crimes
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0631/3659
     Facsimile: (213) 894-6269
     E-mail:    michael.freedman@usdoj.gov
                katherine.rykken@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 16-215-PA |
|---|---|
| Plaintiff, | TRIAL MEMORANDUM |
| v. | Trial Date:  April 25, 2017<br>Trial Time:  8:30 a.m.<br>Location:    Courtroom of the<br>             Hon. Percy Anderson |
| MICHAEL MIRANDO, | |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Michael G. Freedman and Katherine A. Rykken, hereby submits its trial memorandum in the above-captioned case.

The government reserves the right to submit supplemental trial memoranda as appropriate before, or during, the trial.

App. 136

Dated: April 21, 2017                Respectfully submitted,

                                     SANDRA R. BROWN
                                     Acting United States Attorney

                                     LAWRENCE S. MIDDLETON
                                     Assistant United States Attorney
                                     Chief, Criminal Division


                                          /s/Michael G. Freedman
                                     MICHAEL G. FREEDMAN
                                     KATHERINE A. RYKKEN
                                     Assistant United States Attorney

                                     Attorneys for Plaintiff
                                     UNITED STATES OF AMERICA

2

App. 137

**TABLE OF CONTENTS**

**Table of Contents**

TABLE OF AUTHORITIES.................................................iii

TRIAL MEMORANDUM......................................................1

I.    STATUS OF THE CASE.............................................1

      A.    Trial Schedule..........................................1

      B.    Length of Trial.........................................1

      C.    Pre-Trial Status of Defendant...........................1

      D.    Jury Trial..............................................1

      E.    Witnesses...............................................1

II.   STATEMENT OF THE CHARGE AGAINST DEFENDANT.....................2

III.  STATEMENT OF FACTS............................................2

IV.   ELEMENTS OF THE OFFENSE AND PERTINENT LAW.....................5

      A.    Elements................................................6

            1.    Health Care Fraud.................................6

            2.    Causing an Act to be Done.........................6

      B.    HCBPs...................................................7

      C.    Knowledge...............................................7

      D.    Willfully...............................................7

      E.    Scheme to Defraud.......................................8

      F.    Fraudulent Intent.......................................8

      G.    No Anticipated Defense Case.............................9

V.    LEGAL AND EVIDENTIARY ISSUES..................................9

      A.    Trial Exhibit Stipulations..............................9

      B.    Patient Files and Medical Records.......................9

      C.    Victim Agency Testimony by HCBPs.......................10

      D.    Charts and Summaries...................................10

i

App. 138

Case 2:23-cv-04490-PA   Document 3-3   Filed 06/05/23   Page 134 of 156   Page ID
Case 2:16-cr-00285-PA   Document 39   Filed 04/21/17   Page 40 of 24   Page ID #:209
#:170

**TABLE OF CONTENTS (CONTINUED)**

DESCRIPTION                                                                    PAGE

    E.   Business Records......................................12

          1.    Foundational Requirements.........................13

          2.    "Qualified Witness"...............................13

          3.    Circumstances of Preparation......................14

          4.    Authentication by Declaration.....................15

          5.    Certified Public Records..........................15

    F.   Pecuniary Gain........................................16

    G.   Cross Examination.....................................16

    H.   Defense Witnesses....................................17

VI.  RECIPROCAL DISCOVERY.........................................18

VII. CONCLUSION...................................................19

App. 139

**TABLE OF AUTHORITIES**

DESCRIPTION                                                      PAGE

**CASES**

Barsky v. United States,
    339 F.2d 180(9th Cir. 1964)................................11

Bourjaily v. United States,
    483 U.S. 171 (1987).......................................13

Bryan v. United States,
    524 U.S. 184 (1998)........................................8

Carpenter v. United States,
    484 U.S. 19(1987)..........................................8

Crawford v. Washington,
    541 U.S. 36 (2004)........................................15

Irwin v. United States,
    338 F.2d 770(9th Cir. 1964)................................8

La Porta v. United States,
    300 F.2d 878(9th Cir. 1962)...............................13

Phillips v. United States,
    356 F.2d 297(9th Cir. 1965)...............................10

Tamarin v. Adam Caterers, Inc.,
    13 F.3d 51(2d Cir. 1993)..................................12

United States v. Aceves-Rosales,
    832 F.2d 1155(9th Cir.1987)...............................18

United States v. Amrep Corp. (Amrep I),
    545 F.2d 797(2d Cir. 1976).................................8

United States v. Awad,
    551 F.3d 930(9th Cir. 2009)................................8

United States v. Basey,
    613 F.2d 198(9th Cir. 1979)...............................14

United States v. Bland,
    961 F.2d 123(9th Cir. 1992)...............................13

United States v. Booth,
    309 F.3d 566(9th Cir. 2002)...............................16

United States v. Bush,
    522 F.2d 641(7th Cir. 1975)...............................10

App. 140

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                    PAGE

United States v. Caswell,
    825 F.2d 1228(8th Cir. 1987)...................................12

United States v. Catabran,
    836 F.2d 453(9th Cir. 1988)....................................15

United States v. Childs,
    5 F.3d 1328(9th Cir. 1993).....................................13

United States v. Cuozzo,
    962 F.2d 945(9th Cir. 1992)....................................17

United States v. Franco,
    874 F.2d 1136(7th Cir. 1989)...................................14

United States v. Gardner,
    611 F.2d 770(9th Cir. 1980)....................................12

United States v. Gay,
    967 F.2d 322(9th Cir. 1992)....................................17

United States v. Green,
    745 F.2d 1205(9th Cir. 1984)....................................8

United States v. Hagege,
    437 F.3d 943(9th Cir. 2006)....................................15

United States v. Hathaway,
    798 F.2d 902(6th Cir. 1986)....................................14

United States v. Hearst,
    563 F.2d 1331(9th Cir. 1977)...................................17

United States v. Huber,
    772 F.2d 585(9th Cir. 1985)....................................14

United States v. Johnson,
    594 F.2d 1253(9th Cir. 1979)...................................11

United States v. Jones
    (Jones II),
    425 F.2d1048,(9th Cir. 1970)....................................8

United States v. Laurins,
    857 F.2d 529(9th Cir. 1988).....................................6

United States v. Meyers,
    847 F.2d 1408(9th Cir.1988)....................................11

United States v. Miller,
    771 F.2d 1219(9th Cir.1985)....................................15

iv

App. 141

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                    PAGE

United States v. Miranda-Uriarte,
     649 F.2d 1345(9th Cir.1981)...................................16

United States v. Moore,
     208 F.3d 577(7th Cir. 2000)..................................19

United States v. Oren,
     893 F.2d 1057(9th Cir. 1990)..................................8

United States v. Radseck,
     718 F.2d 233(7th Cir. 1983)..................................11

United States v. Ranney,
     719 F.2d 1183(1st Cir. 1983).................................10

United States v. Ray,
     930 F.2d 1368(9th Cir. 1990).................................13

United States v. Saniti,
     604 F.2d 603(9th Cir. 1979)..................................16

United States v. Scholl,
     166 F.3d 964(9th Cir. 1999)..................................18

United States v. Silverman,
     449 F.2d 1341(2d Cir. 1971)..................................11

United States v. Utz,
     886 F.2d 1148(9th Cir.1989)...................................8

**STATUTES**

18 U.S.C. § 1347.........................................2, 6, 7

18 U.S.C. § 2............................................2, 6, 7

**RULES**

Fed. R. Evid. 104...........................................13

Fed. R. Evid. 404...........................................17

Fed. R. Evid. 611...................................12, 13, 16

Fed. R. Evid. 803...................................10, 13, 16

Fed. R. Evid. 902.......................................15, 16

Fed. R. Evid. 1006..........................................11

Fed. R. Evid. 1101..........................................13

v

App. 142

<u>**TRIAL MEMORANDUM**</u>

**I.   STATUS OF THE CASE**

    **A.   Trial Schedule**

Jury trial against defendant Mirando ("Mirando" or "defendant") is set for April 25, 2017, at 8:30 a.m.

    **B.   Length of Trial**

The estimated time for the presentation of the government's case-in-chief is approximately three to five days.

    **C.   Pre-Trial Status of Defendant**

Defendant is on bond pending trial.

    **D.   Jury Trial**

Jury trial has not been waived.

    **E.   Witnesses**

At this time, the government expects to call approximately 14[1] witnesses in its case-in-chief.  The witnesses are listed below in the approximate[2] order the government expects to call the witnesses:

    1.   Jon Barron – CEO and President of Datrix Labs

---

[1] As noted at the April 17, 2017 status conference, the parties are attempting to reach an agreement regarding a stipulation as to the admissibility of summary charts based upon insurance claims records previously produced to defendant.  Defendant, however, has raised a question as to the authenticity of these insurance claims records, and in the event the parties do not enter into a stipulation, the government may need to call up to an additional 35 witnesses to authenticate these insurance claims records.

[2] As the government also noted at the April 17, 2017 status conference, it is attempting to more precisely estimate the time needed for each witness' testimony and thus now estimates that its case-in-chief will take three to five days, assuming the stipulation discussed above, rather than four to six days.  With respect to the order of witnesses, the government is still coordinating scheduling with witnesses and expects that the order in which the government calls witnesses may still be adjusted further.  Finally, the government has not yet determined whether the testimony of all currently anticipated witnesses will prove necessary and therefore may decide during trial not to call certain witnesses, specifically Stanton Crowley.

App. 143

2.   Martha Bennett – Patient/beneficiary

3.   Ronald Richmond – Bennett's doctor

4.   John Hattrup – Patient/beneficiary

5.   Gregory Joy – Hattrup's doctor

6.   Suzanne Darsow – Representative of United Health Care,
     Bennett and Hattrup's insurer

7.   Lisa Solmor – Patient/beneficiary

8.   Ruby Simpkins – Solmor's doctor

9.   Robin Consiglio – Representative of Aetna, Solmor's insurer

10.  Stacey Foster Sixtos – Patient/beneficiary

11.  Jeffrey Globus – Foster Sixtos' doctor

12.  Emily Russell  – Representative of Cigna, Foster's insurer

13.  Stanton Crowley (if needed) – Former co-owner, Holter Labs

14.  Kathleen Kennedy – FBI Special Agent

The government will update this list, as necessary, in advance
of trial.  The government may call additional witnesses in rebuttal,
depending on whether defendant calls any witnesses and on what
testimony they give.

**II.   STATEMENT OF THE CHARGE AGAINST DEFENDANT**

The defendant is charged in the indictment with fifteen counts
of violating 18 U.S.C. § 1347 (health care fraud) and 18 U.S.C.
§ 2(b) (causing an act to be done).

**III. STATEMENT OF FACTS**

The government expects that the evidence at trial will establish
the following facts: From approximately January 2005 to April 2016,
defendant engaged in a scheme to defraud health insurance companies
(legally defined as health care benefit programs or "HCBPs").

2

App. 144

1    Defendant was a member and owner of Holter Labs, LLC ("Holter Labs"),

2    which he formed in 2005 with Stanton Crowley ("Crowley").

3         Holter Labs provided cardiac monitoring services to doctors.

4    Holter Labs provided a digital recorder, called a holter recorder, to

5    doctors for use on their patients.  The recorder is a portable device

6    that monitors cardiovascular activity for 24 or 48 hours.   The

7    device records electrical signals from the heart via a series of

8    electrodes attached to the chest.  The most common use of a holter

9    recorder is to monitor heart activity for electrocardiography

10    ("ECG").  Jon Barron, the manufacturer of the holter devices used by

11    Holter Labs, will testify to these details.

12         When doctors prescribed a holter recorder to their patients, the

13    doctors filled out an order form provided by Holter Labs, indicating

14    whether they were prescribing a 24-hour or 48-hour use of the device.

15    After the patient returned the device to the doctor's office, the

16    doctor's office sent the data from the device to Holter Labs.

17    Crowley, as Holter Lab's technician, used a software program to

18    create a medical report using the data retrieved from the device.  He

19    then completed a quality control review of the report and uploaded it

20    to Holter Labs' website for the physician to access.  Crowley then

21    sent to defendant, often via e-mail, the information for that

22    patient, including the patient's name, and insurance information.

23    Typically, Crowley included in the e-mail a copy of the order form

24    and the first page of the medical report.  Defendant's

25    responsibilities were to handle all of the other business activities

26    for Holter Labs, including purchasing the recorders, advertising,

27    managing the company's finances, and submitting the medical claims to

28    the patients' insurance companies.  These facts will be established

App. 145

1   at trial through examples of the documents referenced and, if

2   necessary, through Crowley's testimony.

3       Defendant billed the patient's insurance companies using the

4   Current Procedural Terminology ("CPT") set, which is a medical code

5   set maintained by the American Medical Association.  The CPT code set

6   describes medical, surgical, and diagnostic services and is designed

7   to communicate uniform information about medical services and

8   procedures among providers, beneficiaries, and HCBPs.  CPT codes

9   define the services rendered.  The CPT codes are used by health care

10  benefit programs in medical billings.

11      Defendant appropriately billed for a number of services

12  rendered with legitimate CPT codes, including the medical services

13  associated with the following CPT codes: 93226 (external

14  electrocardiogram recording up to 48 hours); and 93799 (unlisted

15  cardiovascular service or procedure).  But defendant often billed for

16  these same services on multiple dates of service, when, as the

17  patients and doctors will testify, the service associated with that

18  CPT code was only performed on a single date.

19      Defendant also billed for services that the holter devices never

20  performed and, in many cases, were incapable of performing.  The five

21  fraudulent CPT codes were: 93025 (microvolt T-wave alternans for

22  assessment of ventricular arrhythmias); 93229 (remote 30 day

23  electrocardiogram with tech support); 93271 (patient activated

24  external electrocardiogram recording with remote download capability

25  up to 30 days); 95806 (sleep study with simultaneous recording of

26  heart rate, oxygen saturation, respiratory airflow, and respiratory

27  effort); and 95827 (night electroencephalogram for measuring brain

28  waves).  The patients will testify that they never used these

4

App. 146

services.  The doctors will testify that they never prescribed these services.  The doctors' records and the order forms submitted to Holter Labs will confirm that the doctors only prescribed 24-hour use of the device on a single occasion for each patient.

Over the course of the scheme, defendant submitted claims to insurance companies for approximately $7.3 million and was paid approximately $2.6 million on these claims by the insurance companies.  The fraudulent billings represent approximately 82% of the total billings, or approximately $6 million in fraudulent claims and approximately $2.3 million in payments.  The insurance company representatives will explain the insurance claims process and testify that they paid Holter Labs for claims that defendant submitted, which included the CPT codes for services never performed.  The claims records will demonstrate defendant's use of the fraudulent CPT codes, including his description of the services purportedly performed on certain dates, and, in certain cases, banking records will show payment by the insurance companies to Holter Labs for these claims.

Holter Labs deposited the majority of the money received from insurance companies into its primary business bank account at Chase Bank, but defendant transferred large amounts of money from this account into a company he created called Murrieta Medical Supply. From Murrieta Medical Supply, defendant transferred significant sums of money into personal accounts of his own, and then used that money to invest in real estate around the country and internationally.  The summary charts of these bank records will show these transfers.

## IV.   ELEMENTS OF THE OFFENSE AND PERTINENT LAW

Defendant is charged with 15 counts of health care fraud.

App. 147

**A.    Elements**

1.    <u>Health Care Fraud</u>

Counts one through fifteen charge defendant with health care fraud, in violation of 18 U.S.C. § 1347, which has the following elements: (1) defendant knowingly and willfully participated in or devised a scheme or plan to defraud a health care benefit program, or a scheme or plan for obtaining money or property from a health care benefit program, by means of false or fraudulent pretenses, representations, or promises; (2) the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property of a health care benefit program; (3) the defendant acted with the intent to defraud; that is, the intent to deceive or cheat; and (4) the scheme involved the delivery of or payment for health care benefits, items, or services. <u>See</u> Ninth Circuit Model Criminal Jury Instruction No. 8.121 (2010) (modified for health care fraud).

2.    <u>Causing an Act to be Done</u>

Title 18, United States Code, Section 2(b) provides: whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

Under 18 U.S.C. § 2(b), a person who willfully causes another person to commit a criminal act is guilty as a principal regardless of whether the person actually committing the criminal act intended to commit, or knew that he or she was committing, a criminal act. <u>United States v. Laurins</u>, 857 F.2d 529, 535 (9th Cir. 1988).  To prove defendant guilty under this theory, the government must prove

6

App. 148

the following elements: (1) health care fraud was committed by someone and (2) defendant willfully ordered, directed, or otherwise brought about the commission of health care fraud.  18 U.S.C. § 2(b) (modified to specify defendant charged with health care fraud); <u>see also</u> <u>Laurins</u>, 857 F.2d at 535 (intent of person actually performing proscribed act is immaterial under 18 U.S.C. § 2(b); what matters is defendant's intent).

**B.    HCBPs**

The term "health care benefit program" means any public or private plan or contract, affecting commerce, under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service for which payment may be made under the plan or contract.  18 U.S.C. § 24.

**C.    Knowledge**

A defendant acts knowingly if the defendant is aware of the act and does not act or does not fail to act through ignorance, mistake, or accident.  <u>See</u> Ninth Circuit Model Criminal Jury Instruction No. 5.6 (2010 ed.).  In deciding whether a person acted knowingly, the jury may consider evidence of his words, acts, or omissions, along with all the other evidence.  <u>Id.</u>

**D.    Willfully**

A defendant acts willfully if he committed the act voluntarily and purposely, and with knowledge that his conduct was, in a general sense, unlawful.  <u>See</u> 18 U.S.C. § 1347(b); 42 U.S.C. § 1320a-7b(b)(h); Ninth Circuit Model Criminal Jury Instruction No. 5.5 (2010 ed.); <u>Bryan v. United States</u>, 524 U.S. 184, 189-91, 193-96, 198-99 (1998); <u>United States v. Awad</u>, 551 F.3d 930, 937-41 (9th Cir. 2009).

7

**E.   Scheme to Defraud**

A scheme to defraud includes any plan or course of conduct "reasonably calculated to deceive persons of ordinary prudence and comprehension." <u>United States v. Green</u>, 745 F.2d 1205, 1207 (9th Cir. 1984); <u>Irwin v. United States</u>, 338 F.2d 770, 773 (9th Cir. 1964) (same).  The government is not required to prove that defendant's scheme was successful, or that he actually caused any victim (i.e., Medicare) to lose money or property.  <u>See</u> <u>United States v. Utz</u>, 886 F.2d 1148, 1151 (9th Cir. 1989).

**F.   Fraudulent Intent**

Acting with "intent to defraud" means an intent to obtain money or property from someone by deceiving or cheating them.  Ninth Circuit Model Criminal Jury Instructions, No. 3.16 (2010 ed.); <u>see</u> <u>Carpenter v. United States</u>, 484 U.S. 19, 27 (1987).  In other words, it is knowingly acting with the intention or purpose to deceive or cheat.  <u>Carpenter</u>, 484 U.S. at 27.

Fraudulent intent may be, and often must be, shown by circumstantial evidence.  <u>See</u> <u>United States v. Jones</u> (Jones II), 425 F.2d 1048, 1058 (9th Cir. 1970).  Because of the difficulty in proving intent, any proof properly connected to a defendant that establishes the manner in which the fraudulent scheme was carried into execution is admissible.  <u>United States v. Amrep Corp. (Amrep I)</u>, 545 F.2d 797, 800 (2d Cir. 1976).

A defendant need not intend to cause an actual loss to be guilty of fraud.  <u>Carpenter v. United States</u>, 484 U.S. 19, 26-27 (1987); <u>United States v. Oren</u>, 893 F.2d 1057, 1061-1062 (9th Cir. 1990).

8

App. 150

Case 2:23-cv-04498-PA   Document 30-3   Filed 06/05/23   Page 146 of 156   Page ID
Case 2:16-cv-00218-PA   Document 39   Filed 04/21/17   Page 10 of 26   Page ID #:221
#:182

G.   **No Anticipated Defense Case**

During the April 10 and 17 status conferences with the Court, the government was informed that defendant does not anticipate presenting any witnesses in its case-in-chief at this time.

V.   **LEGAL AND EVIDENTIARY ISSUES**

At trial, the government intends to introduce into evidence, among other things, documents, summary charts, and testimony from percipient witnesses (i.e., Barron, the device manufacturer; patients/beneficiaries; doctors; and Crowley, if necessary); insurance company representatives; and Special Agent Kennedy, the case agent, who will testify regarding the summary charts and other records obtained during the investigation.

A.   **Trial Exhibit Stipulations**

The parties are attempting to reach stipulations concerning the admissibility of certain categories of exhibits: (1) summary charts of Holter Labs' and defendant's bank records, which defendant has stated he will stipulate to; (2) summary charts of claims data from insurance companies, which defendant has stated he will stipulate to once authenticity is established; and (3) various bank, legal, public, and business records obtained during the investigation.

B.   **Patient Files and Medical Records**

The government intends to introduce into evidence patient files and medical records (with redactions to preserve patient privacy) that were obtained pursuant to subpoenas and administrative requests. None of the documents in these patient files contain hearsay statements because they are statements of medical diagnosis or treatment and describe medical histories, see Fed. R. Evid. 803(4) (statements for medical diagnosis or treatment not hearsay).

9

App. 151

## C.  Victim Agency Testimony by HCBPs

The government intends to call three witnesses who work for the insurance company victims.  The government anticipates that these witnesses will testify about, among other things, how insurance companies operate and how they would not have authorized payments for fraudulent claims submitted by defendant had they known the truth.  This kind of testimony is proper in fraud scheme prosecutions because it goes to the victim's state of mind, and demonstrates whether the scheme was capable of misleading the victim.  See Phillips v. United States, 356 F.2d 297, 307-09 (9th Cir. 1965).

Moreover, as representatives of the victim of the fraud, these witnesses may answer hypothetical "what if" or "if you had known" questions regarding whether the insurance companies would have paid for the services at issue in this case if they had known of certain facts.  Such testimony tends to prove the existence of the scheme to defraud, the effect that the concealed facts would have had on the insurance companies had they known them, the materiality of the concealed facts, and the deceptive nature of the representations or omissions.  See United States v. Ranney, 719 F.2d 1183, 1187-89 (1st Cir. 1983); United States v. Bush, 522 F.2d 641, 649-51 (7th Cir. 1975).  While the government is not required to prove that the insurance companies were actually defrauded, it may use as proof testimony that the scheme did, in fact, deceive the insurance companies.  See Phillips, 356 F.2d at 308.

## D.  Charts and Summaries

Certain portions of the case involve a large number of documents and voluminous records, in particular, records of insurance claims defendant submitted and bank records of Holter Labs' and defendant's.

App. 152

The underlying records have been produced to defendant in discovery. To assist in the jury's understanding of the case, the government intends to present and introduce as exhibits charts and summaries of those materials, to save time at trial and to avoid the need to present the voluminous records themselves.

> The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by the parties at a reasonable time and place. The court may order that they be produced in court.

Fed. R. Evid. 1006; see also United States v. Meyers, 847 F.2d 1408, 1411-12 (9th Cir. 1988); United States v. Johnson, 594 F.2d 1253, 1255-57 (9th Cir. 1979). While the underlying documents must be admissible, they need not be admitted. See Meyers, 847 F.2d at 1412; Johnson, 594 F.2d at 1257 n.6. Summary charts need not contain the defendant's version of the evidence and may be given to the jury while a government witness testifies concerning them. See United States v. Radseck, 718 F.2d 233, 239 (7th Cir. 1983); Barsky v. United States, 339 F.2d 180, 181 (9th Cir. 1964).

Summary exhibits, such as those the government wishes to introduce into evidence, are admissible under Fed. R. Evid. 611(a) and have long been recognized as an appropriate means of clarifying a complicated or document-intensive case for the jury. See United States v. Silverman, 449 F.2d 1341, 1346 (2d Cir. 1971). Fed. R. Evid. 611(a) permits a court to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for ascertainment of the truth, (2) avoid needless consumption of time,

App. 153

and (3) protect witnesses from harassment or undue embarrassment."
See United States v. Gardner, 611 F.2d 770, 776 (9th Cir. 1980).

    Hence, under Federal Rules of Evidence 1006 and 611(a), courts
routinely admit into evidence summary charts that organize other
evidence and aid the jury's understanding, as long as the underlying
evidence is admissible, has been made available to the adverse party,
and a witness with knowledge of the preparation of the chart or
summary is available for cross-examination.  See Gardner, 611 F.2d at
776; Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 53 (2d Cir. 1993);
United States v. Caswell, 825 F.2d 1228, 1235-36 (8th Cir. 1987).

    The summary exhibits the government intends to present satisfy
all of the foregoing requirements.  The pertinent evidence, involving
claims data, bank account transactions, and related evidence, is
admissible and has been produced to the defendant in discovery.  The
government has advised defense counsel of its intention to use
summary charts and has made drafts of such charts available to
counsel.  The government will provide final versions to counsel prior
to introducing them at trial.  The summary witness, Special Agent
Kennedy, will be available for cross-examination.  Moreover, the
summary exhibits will serve to organize and clarify the government's
presentation and assist the jury's understanding of the case.  The
use and admission of summary exhibits at trial is thus appropriate.
Fed. R. Evid. 611(a); Gardner, 611 F.2d at 776.

    **E.  Business Records**

    In addition to the business records underlying the summary
charts, the government also expects to seek to admit certain business
records themselves, including doctors' records; insurance company
claims records and data; and certain bank records.

App. 154

### 1.   Foundational Requirements

The parties expect to stipulate to foundation, authenticity, and admission of certain business records (_i.e._, records of regularly kept activities), such as bank statements reflecting defendant's and others' financial transactions as well as insurance claims data.  If the parties do not agree to a stipulation, the following facts must be established through the custodian of the records or another qualified witness: (1) the records must have been made at or near the time by, or from information transmitted by, a person with knowledge; and (2) the records must have been made and kept in the course of a regularly conducted business activity. Fed. R. Evid. 803(6); United States v. Bland, 961 F.2d 123, 126-28 (9th Cir. 1992).  In determining whether these foundational facts are established, the court may consider hearsay and other evidence not admissible at trial.  _See_ Federal Rules of Evidence 104(a) & 1101(d)(1); Bourjaily v. United States,  483 U.S. 171, 178-79 (1987).

Challenges to the accuracy or completeness of business records ordinarily go to the weight of the evidence and not its admissibility.  _See, e.g._, La Porta v. United States, 300 F.2d 878, 880 (9th Cir. 1962).

### 2.   "Qualified Witness"

Even without a stipulation by the parties of certain business records, the phrase "other qualified witness" is broadly interpreted to require only that the witness understand the recordkeeping system. United States v. Childs, 5 F.3d 1328, 1334 (9th Cir. 1993); United States v. Ray, 930 F.2d 1368, 1370-71 (9th Cir. 1990) (welfare fraud investigator may testify about contents of defendant's welfare file where investigator was familiar with filing and reporting

13

App. 155

requirements and forms used, even though she did not record information and was not custodian); <u>United States v. Franco</u>, 874 F.2d 1136, 1139 (7th Cir. 1989) ("The witness 'need only be someone with knowledge of the procedure governing the creation and maintenance of the type of records sought to be admitted.'").

A qualified witness need not be employed by, or related to, the entity to whom the records belong; a federal agent or an independent witness may be a qualified witness for records seized from a company. <u>United States v. Hathaway</u>, 798 F.2d 902, 905-07 (6th Cir. 1986) (FBI agent could provide foundation testimony for admission of company records under Rule 803(6) as "there is no reason why a proper foundation for application of Rule 803(6) cannot be laid, in part or in whole, by the testimony of a government agent or other person outside the organization whose records are sought to be admitted. . . . [A]ll that is required is that the witness be familiar with the record keeping system.").

### 3. Circumstances of Preparation

Even without a stipulation by the parties as to certain business records, the government need not establish precisely when or by whom the document was prepared; all the rule requires is that the document be made "at or near the time" of the act or event it purports to record. <u>See</u> <u>United States v. Huber</u>, 772 F.2d 585, 591 (9th Cir. 1985); <u>United States v. Basey</u>, 613 F.2d 198, 201 n.1 (9th Cir. 1979). "There is no requirement that the government establish when and by whom the documents were prepared." <u>See</u> <u>Ray</u>, 930 F.2d at 1370; <u>Huber</u>, 772 F.2d at 591 ("[T]here is no requirement that the government show precisely when the [record] was compiled").

14

App. 156

Rule 803(6) does not require that the business rely on the document in a specific way; the rule merely requires that the record be "kept in the course of regularly conducted business activity." See United States v. Catabran, 836 F.2d 453, 457 (9th Cir. 1988) (citing United States v. Miller, 771 F.2d 1219, 1237 (9th Cir. 1985); United States v. Smith, 609 F.2d 1294, 1301 (9th Cir. 1979)).

### 4.   Authentication by Declaration

Likewise, certified domestic records of regularly conducted activity are self-authenticating when accompanied by a written declaration establishing that (1) the records must have been made at or near the time by, or from information transmitted by, a person with knowledge; and (2) the records must have been made and kept in the course of a regularly conducted business activity.  Fed. R. Evid. 902(11).  Custodian of records declarations may be utilized by the court to provide a foundation for the admission in evidence of business records without creating any confrontation issue under Crawford v. Washington, 541 U.S. 36 (2004).  See United States v. Hagege, 437 F.3d 943, 957 (9th Cir. 2006).

### 5.   Certified Public Records

The parties also hope to agree to a stipulation to the foundation, authenticity, and admission of public records, such as court filings and corporate filings.  Even without a stipulation, certain public records in the form of domestic public documents under seal, or certified copies of public records, which do not require extrinsic evidence of authenticity as a condition precedent to admissibility are admissible.  Fed. R. Evid. 902(1) and 902(4).  Such records are self-authenticating, Fed. R. Evid. 902(4), and not hearsay, Fed. R. Evid. 803(8).

App. 157

**F.   Pecuniary Gain**

The government intends to show that defendant made money during the course of the fraudulent scheme, which is admissible to show his participation in the fraud.  See United States v. Saniti, 604 F.2d 603, 604 (9th Cir. 1979).  The receipt and use of money derived from the scheme is also circumstantial evidence of fraud.  See United States v. Booth, 309 F.3d 566, 574 (9th Cir. 2002).

**G.   Cross Examination**

The scope of a cross-examination is within the discretion of the trial court.  Fed R. Evid. 611(b).  It should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness.  The trial court may, in the exercise of its discretion, permit inquiry into additional matters as if on direct examination.  Fed. R. Evid. 611(b).

On April 10 and April 17, 2017, defense counsel represented to the court that the defendant in this case did not plan to testify on his own behalf.  Importantly, if the defendant reverses his decision, a defendant who testifies at trial may be cross-examined as to all matters reasonably related to the issues he puts in dispute during cross-examination.  United States v. Miranda-Uriarte, 649 F.2d 1345, 1353-54 (9th Cir. 1981).  A defendant has no right to avoid cross-examination on matters which call into question his claim of innocence.  Id.  Moreover, a defendant who testifies at trial waives his Fifth Amendment privilege and may be cross-examined on matters made relevant by his direct testimony.  United States v. Black, 767 F.2d 1334, 1341 (9th Cir. 1985).

The scope of defendant's waiver is coextensive with the scope of relevant cross-examination.  United States v. Cuozzo, 962 F.2d 945,

App. 158

948 (9th Cir. 1992); <u>Black</u>, 767 F.2d 1334, 1341 (9th Cir. 1985).  The

extent of the waiver is determined by whether the question reasonably

relates to subjects covered by defendant's direct testimony.  <u>United

States v. Hearst</u>, 563 F.2d 1331, 1340 (9th Cir. 1977).  Federal Rule

of Evidence 608(b) provides that:

> [E]xtrinsic evidence is not admissible to prove specific
> instances of a witness's conduct in order to attack or support
> the witness's character for truthfulness.  But the court may, on
> cross-examination, allow them to be inquired into if they are
> probative of the character for truthfulness or untruthfulness of
> (1) the witness; or (2) another witness whose character the
> witness being cross-examined has testified about.

The defendant's credibility will be crucial if he chooses to

testify.  Accordingly, cross-examination of the defendant about other

fraudulent conduct in which he may have engaged is necessary for the

jury to weigh whether his denial of knowledge and fraudulent conduct

is credible given any other actions.  As the Ninth Circuit has held,

Rule 608(b) "specifically contemplates inquiries into prior behavior

in order to challenge a witness's credibility.  Evidence of prior

frauds is considered probative of the witness's character for

truthfulness or untruthfulness."  <u>United States v. Gay</u>, 967 F.2d 322,

328 (9th Cir. 1992).  Additionally, Fed. R. Evid. 404(b) does not

proscribe the use of other act evidence as an impeachment tool during

cross-examination.  <u>Id.</u>

## H.   Defense Witnesses

Defendant has not identified any witnesses he intends to call.

In fact, as of April 17, 2017, the defendant has indicated through

counsel that he does not plan to call any witnesses.  To the extent

defendant changes his mind and elects to call witnesses at trial, the

government requests that the Court order defendant to provide an

17

App. 159

offer of proof with respect to the anticipated testimony of those
witnesses so that the government may assess whether their testimony
would be relevant and otherwise admissible, and whether their
testimony would implicate any Fifth Amendment rights those witnesses
might have, before the witnesses take the stand.

**VI.   RECIPROCAL DISCOVERY**

Rule 16 of the Federal Rules of Criminal Procedure creates
certain reciprocal discovery obligations on the part of defendants to
produce three categories of materials that he or she intends to
introduce as evidence at trial: (1) documents and tangible objects;
(2) reports of any examinations or tests; and (3) expert witness
disclosure.  Rule 16 imposes on defendants a continuing duty to
disclose these categories of materials.  Fed. R. Crim. P.
16(b)(1)(A), (b)(1)(C), and (c).  In those circumstances where a
party fails to produce discovery as required by Rule 16, the rule
empowers the district court to "prohibit the party from introducing
evidence not disclosed, or it may enter such other order as it deems
just under the circumstances."  Fed. R. Crim. P. 16(d)(2)(C) and (D).

The Ninth Circuit has held that where a defendant fails to
produce reciprocal discovery or fails to provide timely notice of his
or her intention to call an expert witness, it is well within the
district court's discretion to exclude such defense evidence,
especially where the defense disclosure was made after the start of
trial.  See United States v. Scholl, 166 F.3d 964, 972 (9th Cir.
1999) (upholding district court's decision to exclude defense
evidence due to defendant's strategic decision to withhold discovery
until the last minute); United States v. Aceves-Rosales, 832 F.2d
1155, 1156-57 (9th Cir. 1987) (holding that district court did not

App. 160

abuse its discretion in precluding medical report that the defense wished to introduce in case-in-chief but which it disclosed for the first time after the government had rested); <u>United States v. Moore</u>, 208 F.3d 577, 578 (7th Cir. 2000) ("courts are entitled to exclude evidence that should have been produced during reciprocal discovery in criminal cases").

As of the filing of this brief, defendant has provided to the government approximately 500-600 pages of documents, some of which he has stated he may seek to use at trial.  Defendant has not provided notice of his intention to call an expert witness and has stated to the Court on April 10 and April 17, 2017 that he does not expect to call an expert witness.

**VII.  CONCLUSION**

The government respectfully requests permission to file additional trial memoranda if necessary.

Dated: April 21, 2017          Respectfully submitted,

                               SANDRA R. BROWN
                               Acting United States Attorney

                               LAWRENCE S. MIDDLETON
                               Assistant United States Attorney
                               Chief, Criminal Division


                                   */s/Michael G. Freedman*
                               MICHAEL G. FREEDMAN
                               KATHERINE A. RYKKEN
                               Assistant United States Attorney

                               Attorneys for Plaintiff
                               UNITED STATES OF AMERICA

19

App. 161