Michael S. Devereux  (State Bar No. 225240)
WEXFORD LAW
468 N. Camden Drive, Suite 200
Beverly Hills, California  90210
Telephone: (424) 444-0883

Attorney for Defendant, MICHAEL MIRANDO

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL MIRANDO,<br><br>Defendant. | Case No.: 2:16-CR-00215-PA<br>2:23-CV-04498-PA<br><br>REPLY TO GOVERNMENT'S OPPOSITION TO MICHAEL MIRANDO'S MEMORANDUM IN SUPPORT OF 28 U.S.C.§ 2255 MOTION |

Defendant Michael Mirando (Mr. Mirando), by and through his counsel, Michael Devereux, Esq., hereby respectfully submits this reply to the government's opposition to the memorandum in support of his motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C.§ 2255.

The Government contends that the Defendant's claims do no meet the two-prong test in *Strickland v. Washington* 446 U.S. 668 (1984).  Defendant Michael Mirando, respectfully disagrees.

This reply is based upon the attached memorandum of points and authorities, the declaration of Michael Mirando, exhibits attached, the files and records in this case, and such further evidence and argument as the Court may permit.

DATED: November 6, 2023                    Respectfully submitted,

                                           By *Michael Devereux*
                                               Michael Devereux
                                               Attorney for Michael Mirando

# Table of Contents

I. DEFENSE COUNSEL'S INACCURATE AND MISLEADING STATEMENTS ................... 1

II. MR. MIRANDO'S PETITION PASSES STRICKLAND'S FIRST PRONG ......................... 1

    A.    Counsel's Claim that Expert Report was Not Paid for Is Not Only Inaccurate, Demonstrates A Deficient Performance As Defined By the ABA Standards for Criminal Justice  ¶¶ 4-3.9, 4-4.1, and 4-4.6 .......... 2

        1.    Standard 4-4.1 Duty to Investigate and Engage Investigators ................... 3
        2.    Standard 4-4.6 Preparation for Court Proceedings ................................. 4
        3.    Standard 4-3.9 Duty to Keep Client Informed and Advised ..................... 4

    B.    Counsel's Claim that Witness Brown was Interviewed Is Not Only Inaccurate, Demonstrates A Deficient Performance as Defined in Strickland and Clearly in Violation of the ABA Standard ¶¶ 4-4.1 ............ 5

    C.    Counsel's Failure To Properly Advise Client Demonstrates A Deficient Performance as Defined in Strickland and Clearly in Violation of the ABA Standard ¶¶ 4-5.1 ........................................................ 6

    D.    Counsel's Refusal or Failure to Seek Detained Client's Release from Custody Clearly Demonstrates A Deficient Performance as Defined in Strickland and Clearly in Violation of the ABA Standard ¶¶ 4-3.2 ........ 7

    E.    Counsel's Demands Not Advises Defendant Not to Testify in violation of Strickland and the ABA Standard ¶¶ 4-5.2 ............................... 9

III. MR. MIRANDO'S PETITION PASSES STRICKLAND'S SECOND TEST ....................... 9

    A.    Strickland Definitionof Reasonable Probability ........................................... 10

    B.    Strickland Standard For Different Result Includes a Hung Jury ................ 10

    C.    The Government's Opposition Minimizes the Significance of the Expert Report ............................................................................................ 11

    D.    Ninth Circuit Recognizes that Mr. Mirando had the Opportunity to Mount a Meaningful Defense ................................................................ 13

    E.    Failing to Object ............................................................................................ 13

IV. THE GOVERNMENTS REQUEST TO DENY A CERTIFICATION OF APPEALABILITY IS WITHOUT MERIT .................................................................. 13

V. CONCLUSION .............................................................................................................. 14

WEXFORD LAW

# TABLE OF AUTHORITIES

**CASES**

*Hernandez v. Chappell*, 878 F.3d 843, 846 (9th Cir. 2017) .................................................. 10,11

*US v. Strickland*, 466 U.S. 668 (1984) ............................................................................. 1, 2, 9, 10

**RULES**

American Bar Association, *CRIMINAL JUSTICE STANDARDS* for
 the *DEFENSE FUNCTION,* Fourth Edition (2017), October 29, 2023, ......... 2, 3, 4, 5, 6, 7, 8

## I. DEFENSE COUNSEL'S INACCURATE AND MISLEADING STATEMENTS

Trial counsel's was quite passive throughout the trial process. There is a dearth of any work-product in the file with the exception of less than a handful of emails between trial counsel and the expert witness. There are a few emails between trial counsel and Mr. Mirando, but no mentions of any other work product.

At trial there were little to no objections by trial counsel throughout the trial, thereby waiving many of Mr. Mirando's rights. In addition, many, if not all, of trial counsel's statements in the government's opposition are seriously inaccurate and misleading. From a compassionate standpoint it doesn't appear that Trial Counsel is maliciously misleading the Court. It does appears that trial counsel is unaware of the harm that his conduct caused Mr. Mirando. Even if Trial Counsel's explanations in the opposition were accurate, they would not fit into the **reasonable** attorney standard set forth in *US v. Strickland*, 466 U.S. 668 (1984).

## II. MR. MIRANDO'S PETITION PASSES STRICKLAND'S FIRST PRONG

The government argued in their opposition that the first prong of the *Strickland* standard was a "competent attorney standard." The petitioner respectfully disagrees, *Strickland* clearly states that "the proper standsard for attorney performance is that oif a **reaonably** effective assistance." *Id.* at 687

In addition, *Strickland* stated that IAC cannot be attacked as based upon inadequate legal advice unless counsel was *not 'a reaonably competent*

*attorney'...." Id. at 688.* In addition, *Strick*land held that "[w]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of **reasonableness**." *Id.*

In regard to the first prong, what constitutes deficient performance depends upon the facts of the particular case and the prevailing norms of professional practice. *Id.* These prevailing norms are often found in attorney ethics rules and practice guides, such as "The Defense Function" in the ABA Standards for Criminal Justice.[1]  *Id.*

### A. Counsel's Claim that Expert Report was Not Paid for Is Not Only Inaccurate, Demonstrates A Deficient Performance As Defined By the ABA Standards for Criminal Justice ¶¶ 4-3.9, 4-4.1, and 4-4.6

Trial Counsel's defense that the expert report was not paid for is inaccurate, misleading and is either a total fabrication or a complete lack of preparation and understanding of the matter since the expert report was paid in full before trial. Trial Counsel was informed that the expert was paid in full nearly two weeks before

---

[1] American Bar Association, *CRIMINAL JUSTICE STANDARDS* for the *DEFENSE FUNCTION,* Fourth Edition (2017), October 29, 2023, https://www.americanbar.org/groups/criminal_justice/standards/DefenseFunctionFourthEdition/

2

trial. *See* Exhibit A, page 0017. The expert was paid in full before trial. *See* Exhibit A, pages 0001 and 0019.

Arguendo, even if Trial Counsel believed the claim that the expert was not paid so if was decided not to use the expert, is deficient performance as defined in "The Defense Function" in the ABA Standards for Criminal Justice. (the "Standard") It was important to have the expert report for the reasons stated in the opening brief.

1. Standard 4-4.1 Duty to Investigate and Engage Investigators

Standard 4-4.1(e) clearly states:

> (e) If the client lacks sufficient resources to pay for necessary investigation, counsel should seek resources from the court, the government, or donors. Application to the court should be made ex parte if appropriate to protect the client's confidentiality. Publicly funded defense offices should advocate for resources sufficient to fund such investigative expert services on a regular basis. If adequate investigative funding is not provided, counsel may advise the court that the lack of resources for investigation may render legal representation ineffective.

Here, if Counsel had actually believed as he claims that the client lacked the sufficient resources to pay for the expert witness, then the federal courts have a CJA

3

program in which Trial Counsel should have filed an ex parte requesting funds. That is what a reasonable attorney would have done.

2. Standard 4-4.6 Preparation for Court Proceedings

Standard 4-4.6(a) clearly states:

> (a) Defense counsel should prepare in advance for court proceedings. Adequate preparation depends on the nature of the proceeding and the time available, and will often include: reviewing available documents; considering what issues are likely to arise and the client's position regarding those issues; how best to present the issues and what solutions might be offered; relevant legal research and factual investigation; and contacting other persons who might be of assistance in addressing the anticipated issues. If defense counsel has not had adequate time to prepare and is unsure of the relevant facts or law, counsel should communicate to the court the limits of the defense counsel's knowledge or preparation.

Here, the record is completely devoid of Trial Counsel ever mentioning to the Court that the expert report was not complete. Moreover, Trial Counsel's work product lacks a final expert report, clearly indicating that Trial Counsel went to trial unprepared.

3. Standard 4-3.9 Duty to Keep Client Informed and Advised

Standard 4-3.9(a) clearly states:

> (a) Defense counsel should keep the client reasonably and currently informed about developments in and the progress of the lawyer's services, including developments in pretrial investigation, discovery, disposition negotiations, and preparing a defense. Information should be sufficiently detailed so that the client can meaningfully participate in the representation.

Here, if Trial Counsel had kept the defendant informed then the defendant would have been able to tell Trial Counsel that the expert was paid in full. Here, the client was questioning Trial Counsel whether or not the expert witness was testifying.

### B. Counsel's Claim that Witness Brown was Interviewed Is Not Only Inaccurate, Demonstrates A Deficient Performance as Defined in Strickland and Clearly in Violation of the ABA Standard ¶¶ 4-4.1

Standard 4-4.1(c) clearly states:

> (c) Defense counsel's investigative efforts should commence promptly and should explore appropriate avenues that reasonably might lead to information relevant to the merits of the matter, consequences of the criminal proceedings, and potential dispositions and penalties. Although investigation will vary depending on the circumstances, it should always be shaped by what is in the client's best interests, after consultation with the client. Defense counsel's investigation of the merits of the criminal charges should include efforts to secure relevant information in the possession of the prosecution, law enforcement authorities, and others, as well as independent investigation. Counsel's investigation should also include evaluation of the prosecution's evidence (including

possible re-testing or re-evaluation of physical, forensic, and expert evidence) and consideration of inconsistencies, potential avenues of impeachment of prosecution witnesses, and other possible suspects and alternative theories that the evidence may raise.

Here, with the exception of Trial Counsel's declaration, there is no record of Trial Counsel contacting Witness Brown. There is no phone record and there are no notes in the file. Moreover, the Defendant did speak to Mr. Brown and Mr. Brown claimed that he was never contacted. It was important to have Mr. Brown testify for the reasons outlined in the opening brief. **Moreover, Trial Counsel's admits in the opposition that he refused or failed to even contact Mr. Brown before determining that Mr. Brown wouldn't qualify as a witness.**

### C. Counsel's Failure To Properly Advise Client Demonstrates A Deficient Performance as Defined in Strickland and Clearly in Violation of the ABA Standard ¶¶ 4-5.1

Standard 4-5.1(g) clearly states:

> (g) Defense counsel should advise the client to avoid communication about the case with anyone, including victims or other possible witnesses, persons in custody, family, friends, and any government personnel, except with defense counsel's approval, although where the client is a minor consultation with parents or guardians may be useful. Counsel should advise the client to avoid any contact with jurors or persons called for jury duty; and to avoid either the reality or the appearance of any other improper activity.

Here, Trial Counsel admits that he never advised client to avoid any contact with jurors. Trial Counsel believed that the Court's admonishment was appropriate. That is completely unreasonable, specifically for a client who never has been to trial before.

The first thing a trial attorney learns: 1) is to advise the client before trial, not to use the same facility as the jurors, it's trial attorney 101 to notify jurors to use a restroom on an entirely different floor; 2) to avoid eye contact with anyone that they do not know; and 3) not to say anything to anyone that they do not know.

Then when the Court admonishes the defendant, the defendant has a better understanding of what the Court is indicating. **Since Trial Counsel admitted that in the trial transcript that he failed to properly advise Mr. Mirando the Standard 4-5.1(g), then Trial Counsel's failure was clearly not within the framework of a reasonable attorney pursuant to *Strickland* and the *ABA Standards*.**

### D. Counsel's Refusal or Failure to Seek Detained Client's Release from Custody Clearly Demonstrates A Deficient Performance as Defined in Strickland and Clearly in Violation of the ABA Standard ¶¶ 4-3.2

Standard 4-3.2 clearly states:

> (a) In every case where the client is detained, defense counsel should discuss with the client, as promptly as possible, the

7

client's custodial or release status and determine whether release, a change in release conditions, or less restrictive custodial conditions, should be sought. Counsel should be aware of applicable statutes and rules, and all alternatives less restrictive than full institutional detention. Counsel should investigate community and family resources that might be available to assist in implementing such alternatives.
(b) Counsel should investigate the factual predicate that has been advanced to support detention and custodial conditions, and not assume its accuracy.
(c) Once counsel has sufficient command of the facts, counsel should approach the prosecutor to see if agreement to release or a change in release or custodial conditions can be negotiated and submitted for approval by the court.
(d) If the prosecutor does not agree, counsel should submit to the court a statement of facts, legal argument, and proposed conditions if necessary, to support the client's release or a reduction in release or custodial conditions.

Here, not only did Trial Counsel refuse or failed to submit a statement to the Court with a legal argument, but more importantly Trial Counsel's failure to even object to the client being remanded deprived the Defendant of the ability to attack a sentencing enhancement for obstruction of justice on appeal.  By refusing to even object to being remanded, Trial Counsel waived defendant's right to appeal that issue.  Again, clearly Trial Counsel's performance did not meet the **reasonable attorney standard set by *Strickland* and the *ABA Standards*.**

### E. Counsel's Demands Not Advises Defendant Not to Testify in Violation of Strickland and the ABA Standard ¶¶ 4-5.2

Standard 4-5.2 Control and Direction of the Case

> (a) Certain decisions relating to the conduct of the case are for the accused; others are for defense counsel. Determining whether a decision is ultimately to be made by the client or by counsel is highly contextual, and counsel should give great weight to strongly held views of a competent client regarding decisions of all kinds.
>
> (b) The decisions ultimately to be made by a competent client, after full consultation with defense counsel, include: ….
>
> (vi) whether to testify in his or her own behalf;

The emails between trial counsel and Mr. Mirando are specific in nature. There is not a single email that says, "I advise (emphasis) you not to take the stand." Instead, the emails state "this is WHY you cannot get on the stand." *See* Exhibit A, page 0020. A reasonable attorney would have phrased it to "this is the reason that I advise (emphasis) not to take the stand."

### III. MR. MIRANDO'S PETITION PASSES STRICKLAND'S SECOND TEST

*Strickland* holds that, to establish prejudice, the petitioner must demonstrate "a reasonable probability that, but for counsel's ... errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

9

### A. *Strickland Definition of Reasonable Probability*

Note that the second sentence defines "reasonable probability" in a way that is different from how an ordinary person would think of "probability" – namely as something that is more likely to happen than not. That's important, because this ordinary definition of "probability" suggests that the "reasonable probability" needed to show IAC prejudice requires more than a 50/50 chance of a better result if counsel had performed competently. On the contrary, however, the cases make clear that the minimum showing for *Strickland*'s prejudice requirement in IAC cases is "even less than a fifty-fifty chance." (See, e.g., *Hernandez v. Chappell*, 878 F.3d 843, 846 (9th Cir. 2017). Granted, it is also clear from *Strickland* that more is required than a showing of the mere "possibility" of a different result.

Nevertheless, putting these limits together, *Strickland* defines the "reasonable probability" requirement as one that is more demanding than a showing that counsel's errors had some possible or conceivable effect on the outcome of the trial– but less stringent than a 50/50 showing or the 51% preponderance of the evidence needed in civil cases generally.

### B. *Strickland Standard For Different Result Includes a Hung Jury*

Again, the Strickland definition focuses on "undermining confidence in the outcome." The *Hernandez* case is helpful, because it reminds us that there are 12

jurors sitting in a criminal case, and that a conviction requires the unanimous consent of all 12. **Therefore, if there is a strong likelihood that even one juror who voted for conviction would have voted not guilty if counsel hadn't performed deficiently, IAC prejudice has been established.** Thus, in *Hernandez*, where counsel's error consisted of a failure to raise a diminished capacity defense to the charges, the court explained: "Our confidence in the outcome of [the] trial is undermined [because] we believe it likely that at least one juror would have concluded that Hernandez suffered from the mental impairment required for a successful defense of diminished mental capacity."

In sum, and integrating the unanimity requirement with the need for the government to prove guilt beyond a reasonable doubt, we wind up with the following definition of IAC prejudice: A reasonable probability (once again, more than a mere possibility but something less than a 51% probability) **that at least one juror**, **upon hearing the evidence which trial counsel should have introduced but did not, would have concluded that the prosecution had failed in its burden to prove the defendant guilty beyond a reasonable doubt.**

### C. The Government's Opposition Minimizes the Significance of the Expert Report

In its opposition, the government understates the value of the expert report (*see dckt # 93,* Exhibit "A") based upon Defense Counsel's representation at sentencing. Defense Counsel's primary objective at sentencing was to argue the parameters for sentencing and no other purpose. Despite the government's representation the expert report contained a plethora of information that could have been used in trial. Just imagine how much more the expert would have provided if he had testified at trial.

As stated at sentencing the expert report contained a plethora of information that should have been used in trial to confront government witnesses, challenge the government investigation, along valuable information to be used in rebuttal. That information at sentencing included, but was not limited to: 1) that health insurance routinely pays only thirty percent of what is billed; Mr. Mirando's business was in-line with industry averages of 30 cents on the dollar; 2) health insurance denial rates are five to twenty-five percent, Mr. Miranod business was below the industry norms; 3) re-billing is common when claims are denied and it creates duplicate claims, Mr. Mirando's duplicate claims were below industry norms; 4) providers who do their own billing have higher regulatory inquiries, Mr. Mirando was ill-advised to do his own billing; 5) the weaknesses in the Government's calculations regarding damages; 6) government sampling method provides 19% confidence

level versus 51% minimum standard; 7) the government's methodology leads to unreliable conclusions based on invalid sample sizes; etc. Accordingly, pursuant to the Strickland standards, there is a plethora of evidence that could have been used to mount a meaninful defense.

### D. Ninth Circuit Recognizes that Mr. Mirando had the Opportunity to Mount a Meaningful Defense

On appeal, Mr. Mirando challenged the Court's ruling limiting the scope of cross-examination. The Ninth Cicuit denied the claiming stating that Mr. Mirando had an opportunityh to mount a meaningful defense. However, it clearly is evident that trial counsel refused or failed to do such despite the evidence to do such.

### E. Failing to Object

## IV. THE GOVERNMENTS REQUEST TO DENY A CERTIFICATION OF APPEALABILITY IS WITHOUT MERIT

Mr. Mirando's has made a "made a substantial showing of the denial of a constitutional right" as to any of the issues. Accordingly, if needed Mr. Mirando is entitled to a certificate of appealability.

///

///

///

///

13

## V. CONCLUSION

Trial counsel provided constitutionally ineffective assistance of counsel. Mr. Mirando suffered prejudice from each and all of these failings. The outcome of his trial is not one in which we should have any confidence. Moreover, trial counsel's failure to object to Mr. Mirando remand for the trial, waiving an opportunity to appeal a sentencing enhancement for obstruction of justice.

For each of these reasons, Mr. Mirando respectfully requests this Court to vacate his conviction.

DATED: November 6, 2023            Respectfully submitted,


By *Michael Devereux*
Michael Devereux
Attorney for Michael Mirando

14