**Michael Mirando**

| | |
|---|---|
| **From:** | PayPal <service@paypal.com> |
| **Sent:** | Friday, January 27, 2017 11:46 AM |
| **To:** | Michae Mirando |
| **Subject:** | Your receipt for payment to No World Borders |



# You paid $10,000.00 USD to No World Borders



## Thanks for using PayPal, Michae Mirando

Create a PayPal account in just a few seconds so every checkout is a snap!

**Activate PayPal Now**

## Payment details

For your purchase on January 27, 2017

**Details**

Purchase from : No World Borders                                        $10,000.00 USD

Exhibit A (Reply) - Page 0001

| Subtotal | $10,000.00 USD |
|---|---|
| **Total** | **$10,000.00 USD** |

| Paid with | AMERICAN EXPRESS x-2000 |
|---|---|

The transaction will appear on your statement as PayPal * PAYPAL *NOWRLDBRDRS

**Ship to**

7327 SW Barnes Rd, Ste 325

Portland, OR 97225

UNITED STATES OF AMERICA

Invoice ID: INV2-FR3V-AJCC-JP4M-7BXL

**Merchant details**

No World Borders

support@noworldborders.com

949-335-5580



Help Center  |  Resolution Center  |  Security Center

Please do not reply to this email. To get in touch with us, click **Help & Contact**.

Exhibit A (Reply) - Page 0002

Copyright © 1999-2017 PayPal. All rights reserved.

PayPal PPC000885:deeee7c4e8121

**Exhibit A (Reply) - Page 0003**

## Expert Witness Retention Agreement

1. **Parties.**  This contract is made between Michael F. Arrigo and No World Borders, Inc. (Collectively, "Expert") and _____ ("Client") regarding the legal matter of _____.

2. **Retention and Scope of Work.**

    **a.** The parties agree that Expert will only become retained by Client once this contract has been mutually executed and Client has paid the initial retention retainer specified in paragraph 4.b. Expert has no duties to Client until such time.

    **b.** Client shall not represent to the Court or opposing counsel that Expert has been retained and shall not use Expert's name or credentials for any other purpose with respect to the Court or opposing counsel until conditions of paragraph 2 (a) have been met.

    **c.** **Scope of Work.** Client is requesting an opinion, assistance in preparing for depositions, trial, expert testimony, and related assistance in the following area(s):_____

    _____

3. **Expert's Fees, Expenses and Costs.**

    **a.** **Fees.**  The parties agree that the fee for the time Expert spends on the case will be compensated at a rate of:

        **i.** **$600 per hour** and varying lesser amounts per hour for lower level staff for records review, administrative and paralegal work.  It is agreed that this specifically includes (but is not limited to) research, conferences, consultations with Client, reviewing documents, organizing documents, analysis, testing, responding to discovery requests, report writing, investigating, reading and signing deposition transcripts, waiting time, preparing exhibits, preparing demonstrative aids, and preparation time (for testifying at deposition, trial, hearing, arbitration or other venues).

        **ii.** **$695 per hour for appearance at trial and depositions, minimum of two (2) hours**.  It is agreed that this specifically includes (but is not limited to) waiting time, and "off the record time" at depositions and trial while on site at the designated location.

        **iii.** Expert's time will be tracked and invoiced to the nearest quarter of an hour.

Exhibit A (Reply) - Page 0004

    b.  **Travel time and expenses**.  In lieu of the above hourly rate, duties that reasonably require portal-to-portal travel will be compensated at a rate of **$300 per hour portal to portal from a designated headquarters or regional office to be agreed upon between the parties** for trial appearances, and **depositions will be portal from an office to be determined the time of scheduling of any depositions**.  A listing of our offices may be found at http://www.noworldborders.com/contact/.  Client will be responsible for all reasonable out of pocket expenses and costs including, but not limited to travel, testing, research, copying, storage of evidence or documents, etc.  All airline flights taken by Expert shall be direct, non-stop, coach class where possible and all flights taken by Expert longer than 3.5 hours may be by business class, or first class if business class in unavailable.

    c.  **Costs.**  Document processing, duplication, data collection, data acquisition, chart review and analysis and other costs will be discussed with Client and Expert will secure Client approval before costs are incurred.

4. **Payment Terms.**

    a.  The retention of Expert shall commence with payment of a minimum retainer fee of **$10,000.**  Should the legal matter for which Expert is being retained fail to move forward for any reason, a minimum of **60% shall be deemed non-refundable and is earned upon receipt as an expert designation fee.**  Additionally, expert shall have earned all hours incurred against the retainer to the point when Expert is notified that their services on are no longer needed.  If the retainer is replenished and work concludes, 60% of any replenished retainer shall also be non-refundable.

    b.  Payments shall be made via **wire**, **ACH**, **overnight check**, or **credit card**.  If by credit card Client shall notify Expert's office which will then issue electronic payment request.  If by check, Although the legal matter may be served via one of our regional offices, <u>checks shall only be sent via FedEx, UPS overnight delivery service with tracking number to our</u> **headquarters office**

No World Borders, Inc.
620 Newport Center Drive
Suite 1100
Newport Beach CA 92660

    i.   A tracking number for overnight carrier shall be emailed to
jcarson@noworldborders.com for tracking purposes.  Please do not send paper
checks via regular mail.

**c.** Expert agrees to invoice client no less frequently than monthly.

**d.** All invoices will be paid within 15 days.  Client, by entering into this Agreement
acknowledges and understands that timely payment causes Expert to avoid stopping
work on the case which may result in delays and review of prior work or re-
familiarization with the facts.

**e.** Overdue invoices will accrue interest at a rate of 1.5% per month.

**f.** Fees for any time Expert is asked to reserve for testifying (at trial, hearing, deposition,
arbitration or other venue) and preparation for said testimony must be **paid in advance
in full 10 (ten) business days prior to the time reserved for the scheduled
testimony**. <u>If opposing counsel is paying deposition or other fees, Client shall notify
opposing counsel well in advance of these terms as well as those in Paragraph 5</u>. Expert
is under no contractual obligation to reserve the time or appear to testify and provide
opinions unless Expert has received this payment in full at least 10 (ten) business days
prior to the time reserved for the scheduled testimony.

**g.** Client is responsible for collecting any and all deposition fees owed by other lawyers or
parties. In the event Expert's deposition fees are reduced by court order, Client shall
still pay Expert Expert's full fee specified in paragraph 3.

**h.** Expert will invoice Client upon completion of Expert's report(s). All Fees, Expenses,
and Costs must be paid in full before a report is released to Client, other parties or
anyone else.  Expert is under no duty to release a report until Expert has been paid in
full for all work performed to date.

**i.** Expert will invoice Client before scheduled testimony for any outstanding Fees,
Expenses and Costs for work performed to date.  All such sums must be paid in full
before Expert testifies.  Expert is under no contractual duty to appear to testify and
provide opinions until Expert has been paid in full for all outstanding services
performed and expenses incurred on behalf of Client.

Exhibit A (Reply) - Page 0006

5.  **Fees for Late Notice Cancellation or Rescheduling of Testimony.**

   a.  Client understands that Expert will suffer damages from late notice cancellation or rescheduling of Expert's testimony and that since the precise amount of these damages would be difficult to determine, Expert shall instead be entitled to the cancellation and rescheduling fees specified in paragraphs 5.c.  Expert understands that changes to Court schedules can be made unilaterally by the Court without Client's consent.  The Parties agree to communicate openly concerning potential changes to trial schedules as soon as possible so as to minimize the risk that Expert suffers losses occasioned by cancellations or rescheduling that were outside Client's control, and so that Client understands Expert's other commitments in responding to any inquiries by the Court about changes to the Court schedule.

   b.  The fees specified in paragraph 4.f. are 100% refundable to Client in the event Expert's scheduled testimony is cancelled or rescheduled with notice to Expert of ten (10) or more business days.

   c.  In the event Expert's scheduled testimony is cancelled or rescheduled with less than ten (10) business days but more than seventy-two (72) hours' notice, Expert may retain a cancellation fee of 50 % the amount from paragraph 4. f.  The remaining amount will at Client's option be applied to future testimony or refunded to Client.

   d.  In the event cancellation or rescheduling of Expert's Testimony in less than seventy-two (72) hours prior to the scheduled commencement of the Expert's testimony, or if Expert's testimony is completed in less time than was reserved pursuant to paragraph 4. f., Expert may retain 100% of the amount specified in paragraph 4.f.

   e.  In the event of any cancellation or rescheduling of testimony, Client shall be responsible for all non-refundable out of pocket travel expenses incurred by Expert such as airline tickets and hotel rooms.

6.  **Duties of Client.**  The Client's duties specifically include, but are not limited to:

   a.  Abiding by the applicable rules of professional conduct for attorneys.

   b.  Making all payments as specified in Paragraphs 4 and 5 under the terms as specified in Paragraphs 4 and 5.

   c.  Providing Expert with copies of or access to all non-privileged, arguably relevant documents, evidence and other materials in the underlying legal matter.

Exhibit A (Reply) - Page 0007

    d.  Notifying Expert of all parties and attorneys in the case so that Expert can check for conflicts of interest.

    e.  Where circumstances reasonably allow, providing Expert with prompt notice of any *Daubert* motions, *Frye* motions, motions in Limine, Hallmark, or other pre-trial motions made by other parties or persons to restrict, exclude or in any way limit Expert's testimony or Expert's participation in the underlying legal matter.

    f.  Obtaining Expert's advance approval (for accuracy) of the relevant portions of any and all answers to interrogatories, motions, expert designations or other documents which summarize Expert's qualifications, methodology, opinion(s) and/or anticipated testimony.

    g.  Being available as reasonably requested to meet with Expert prior to anticipated testimony.

    h.  Promptly notifying Expert of when and where Expert may be requested to appear to testify.

    i.  Promptly notifying Expert of any issues related to paragraph 8 to which Client is or becomes aware of.

    j.  Promptly notifying Expert of the settlement or final adjudication of the underlying legal matter.

    k.  Client agrees that Expert's opinion(s) are not preordained, might be contrary to Client's position, and are subject to modification as a result of new or additional information.

7. **Duties of Expert.**  The Expert's duties are:

    a.  To truthfully represent Expert's credentials.

    b.  To formulate with honesty and due care and truthfully express Expert's opinion(s) in those areas (and only those areas) where Expert feels qualified to render an opinion and where Client has requested an opinion.

    c.  To cease work on the underlying legal matter and promptly inform Client whenever Expert has accrued unpaid fees and expenses totaling more than $2,500.00.  In this event, Expert shall not perform further work on the underlying legal matter until Client gives approval.

Exhibit A (Reply) - Page 0008

   **d.**  Expert is under no duty to provide and express opinions if Expert is given time deadlines or cost-based or other restrictions by Client that would not reasonably allow Expert to in good faith formulate and express his opinions with reasonable care.

   **e.**  Subject to paragraph 7.d., to prepare a written report if Client requests one.

   **f.**  Subject to paragraph 7.d. and to circumstances beyond the Expert's control, to meet all reasonable deadlines requested by Client.

   **g.**  To retain and preserve during this engagement all evidence provided to Expert from the underlying legal matter unless Client gives written permission for destructive testing or the like.

   **h.**  To be available on reasonable notice to testify.

   **i.**  To be available on reasonable notice to consult with Client.

   **j.**  To work exclusively with Client in the underlying legal matter unless the parties mutually agree in writing otherwise.

   **k.**  Upon receipt from Client of the list of attorneys and parties specified in paragraph 6.d., to within 30 days check for conflicts of interest with due care and within the same 30-day period to notify Client of any conflicts of interest discovered that preclude Expert's further involvement in the underlying legal matter.

   **l.**  To maintain any paper based Protected Health Information (PHI) or electronic Protected Health Information (ePHI) received according to Privacy and Security Rules under HIPAA and the ARRA HITECH Act as well as state laws where applicable, and if the Parties deem necessary to sign a separate confidentiality, Business Associate Agreement, or a Protective Order if applicable before receiving or accessing PHI.

**8. Expert's Right of Withdrawal from Case.** Expert shall have the absolute right to withdraw, without any liability, from the case if Client violates any of the duties specified in paragraph 6 above or if Expert discovers a conflict of interest which precludes Expert's further involvement in the underlying legal matter.

**9. Withdrawal.** Notice of withdrawal under Paragraph 8 shall be in writing from Expert to Client. In the event of withdrawal, the parties agree that Client remains fully liable for all accrued but unpaid fees, expenses, and interest.

**10. Termination.** This contract shall be terminated upon written notice to Expert from Client at any time, by Expert's withdrawal pursuant to paragraph 8, at such time as Client is no longer

Exhibit A (Reply) - Page 0009

involved in the underlying legal matter, or upon the settlement or final adjudication of the underlying legal matter.  In the event of termination Client is still responsible for all sums owed Expert.  Other than sums owed, this contract may be terminated for any one or more of such reasons by written notice from one party to the other without liability.

11. **Document / Evidence Retention.**  Expert shall have no duty to retain any documents, reports, evidence, transcripts, exhibits, e-mails, electronic files or other materials from the underlying legal matter for more than 30 (thirty) days following the termination of this agreement.  Expert shall return at Client's expense all records and evidence in the underlying legal matter to Client if a written request to do so is received by Expert within the 30 (thirty) days following the termination of this agreement.

12. **Disputes.**  Any controversy, claim or dispute arising out of or relating to this Contract, shall be resolved through binding arbitration conducted in accordance with Judicial Arbitration and Mediation Services' (JAMS) or Judicial Dispute Resolution (JDR4ADR) comprehensive arbitration rules in the State in which the Expert is domiciled, with a preference for JDR4ADR venue. The law of the State in which the Expert is domiciled will be the governing law.  The arbitration award will be enforceable in any state or federal court.  In any arbitration or court proceeding, the prevailing party shall be entitled to recover reasonable attorneys' fees and costs.   In addition, Client shall be responsible for payment of attorneys' fees and expenses associated with the Expert's efforts to collect monies owed under the terms of this Contract.

13. **Standard of Care; Limitation of Liability.**  Expert will perform the services with the standard of care normally exercised by professional consulting firms performing comparable services under similar conditions, judged as of the time the services are rendered.    Other than this commitment to a standard of care Expert makes no guarantees or warranties, express or implied, with respect to the services to be provided, or that any particular outcome can result from our services.  In any event, except to the extent finally judicially determined to have resulted from the bad faith or intentional, reckless, or grossly negligent conduct of Expert and other than for injuries to third persons or to personal property, the cumulative liability of Expert and any of its officers, directors, Principals, employees, agents, assigns and successors in interest for all claims related to our services, regardless of whether sounding in contract, tort or otherwise, shall be limited to the amount the Client(s) paid to Expert for the services giving rise to the claim. Further, UNDER NO CIRCUMSTANCES SHALL EXPERT OR ITS OFFICERS, DIRECTORS, PRINCIPALS, EMPLOYEES, AGENTS, ASSIGNS OR

Exhibit A (Reply) - Page 0010

SUCCESSORS IN INTEREST BE LIABLE FOR INDIRECT, CONSEQUENTIAL
(INCLUDING BUT NOT LIMITED TO LOST REVENUE OR PROFITS), SPECIAL OR
EXEMPLARY DAMAGES OF ANY KIND, REGARDLESS OF THE CAUSE OR THE
FORESEEABILITY THEREOF AND   WHETHER   EXPERT HAD REASON TO KNOW
OF THE POSSIBILITY OF SUCH LOSSES.

14. **Assignment.**  Each party agrees that it may not assign its interest, rights or duties under this
Contract to any other person or entity without the other party's prior approval. (Expert is under
no duty to work for successor law firms on the underlying legal matter.)

15. **Miscellaneous**. The performance of this contract by either party is subject to acts of God,
death, disability, government authority, disaster or other emergencies,  any of which may make
it illegal or impossible  to carry out the agreement.  If either party agrees to waive its right to
enforce any term of this contract, it does not waive its right to enforce any other terms of this
contract.  This written contract represents the entire understanding between the Expert and
Client and may not be modified except in writing by mutual consent of the parties to this
Agreement.

Exhibit A (Reply) - Page 0011

The individual signing this contract on behalf of Client represents and warrants that he / she is duly authorized to bind Client

EXPERT, by                                    CLIENT, by

_____        _____
Signature                                     Signature


_____        _____
Print Name                                    Print Name


Date:_____        Date:_____

Exhibit A (Reply) - Page 0012

**Michael Mirando**

| | |
|---|---|
| **From:** | Warlawyer <warlawyer@aol.com> |
| **Sent:** | Monday, March 20, 2017 10:38 AM |
| **To:** | Michael Mirando |
| **Subject:** | Re: Mirando - DRAFT PRIVELEDGED CONFIDENTIAL WORKPRODUCT |

Michael. I am in hearings all day. Please respond to Michael Arriego directly and cc me. Get him working asap. Please feel free to talk to him directly. ==Get him the additional retainer now.== McD

Sent from my iPhone

On Mar 20, 2017, at 10:36 AM, Michael Mirando <mike@holterlabs.com> wrote:

> Kevin,
>
> My comments are as follows.
>
> Regarding the spreadsheets (there were 3) that you sent to me Friday showing billings starting from 2005 to 2008. I notice that there are duplicate billings and I have no explanation for this. During this time, Stan was in the office with me so there is no proof that I myself sent in all of these claims. Stan had both the access and the knowhow. Back then, I would only bill for services to which Stan instructed. He would have a manila envelope in a file box that read "completed" and I would bill the codes as I was trained.
>
> Regarding the forth spreadsheet (USA_001372, tab: Holter East) there were only 5 claims that paid. I do not recognize the other tabs located at the bottom.
>
> I moved to Oregon in October of 2011 and I wasn't settled to conduct business until November 2011. This was the exact same business that it was when I was in California. On the recommendation of my CPA, my company Holter Labs went from an "LLC" over to an "S-Corp". Because of this company tax designation change, I had to change my Tax ID and NPI (provider number). I did not perform these actions to hide anything, I had to change my Tax ID and NPI by law. I only bring this up since your expert brought me moving to Oregon up many times. Stan Crowley was fine with me moving to Oregon and it was business as usual. I was not aware that he started a competing business with Steven Burns and had Jim Cast put together a smear campaign until over a year later.
>
> Regarding the code 95827, I was told by Stan Crowley that this code is to be used for the Sleep Apnea via ECG portion of the test. This "brain scan" is news to me. There is also a code (95806) that is also a code for Sleep Apnea, but to my knowledge (as been told by Stan) this is only billed if the first one (95827) was not being reimbursed or if the insurance company does not recognize the code. Code 93226 is the tech part of the report generation while physicians are to bill for the professional. Code 93232 was replaced by 93226.
>
> Would it be easier if you expert spoke to me directly? I want to ensure that we are all on the same page.
>
> Thanks,
>
> -Michael Mirando
>
> ---
> **From:** WarLawyer@aol.com [mailto:WarLawyer@aol.com]
> **Sent:** Monday, March 20, 2017 9:49 AM

**Exhibit A (Reply) - Page 0013**

**To:** mike@holterlabs.com
**Subject:** Fwd: Mirando - DRAFT PRIVELEDGED CONFIDENTIAL WORKPRODUCT

Michael,

He awaits your response and commitment.

McD

---

From: marrigo@noworldborders.com
To: WarLawyer@aol.com
Sent: 3/19/2017 8:01:53 P.M. Pacific Daylight Time
Subj: Re: Mirando - DRAFT PRIVELEDGED CONFIDENTIAL WORKPRODUCT

Kevin

Part of the Government's case hinges on the statement from the founder of Datrix that he doesn't believe that the device in question is capable of frequencies used for brain related diagnostics (EEGs) but only cardiac (EKG / ECG).  I have found FDA 510k certifications for brain (EEG) devices that have the <u>exact same frequency</u> as the Datrix device which is certified for cardiac.  Technically 510Ks only authorize use of the device for a specific diagnostic but we can disprove the statement that the frequency is only capable of cardiac since FDA cert says the opposite.  I need to explain the details.

Then we would match up ECG and EKG (cardiac) billings which are nearly all of the procedures and potentially account for 100% of procedures when Mr. Mirando move to Oregon.  This would decouple this part of the Government's case in my opinion.

I do look forward to hearing what your client thinks about duplicate billings in those spreadsheets. There were more – I just highlighted some of them quickly for purposes of discussion.

I'm available Monday / Tuesday to discuss at your convenience – looks like we're both more available first thing.

Michael

On 3/16/17, 5:35 PM, "Michael Arrigo" <marrigo@noworldborders.com> wrote:

I have some updates regarding the device issue we can also discuss.

**Exhibit A (Reply) - Page 0014**

On 3/16/17, 7:54 AM, "WarLawyer@aol.com" <WarLawyer@aol.com> wrote:

Michael,

Very informative work. Will pass along to the client.

McD

**Kevin Barry Mc Dermott, Esq,**

**Law Offices of Kevin Barry Mc Dermott**
300 Spectrum Center Drive, Suite 1420
Irvine, California 92618

949-596-0102
949-861-3825 facsimile
WarLawyer@aol.com
WarLawyer.com

*(please note – as of February 2, 2015, our building address changed from 8001 Irvine Center Drive to 300 Spectrum Center Drive due to a local street readdressing.  This is an address change only, not a physical relocation of our offices.)*

The foregoing message(s) is confidential and intended for the designated recipient only.  The foregoing information may be protected by attorney-client and/or work product privilege.  Accordingly, if you have received this message in error, please contact this office immediately, and delete the message without reviewing, copying, or making further use of the information contained therein.

Confidentiality Notice:  This email message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information.  Any unauthorized review, use, disclosure or distribution is prohibited.

In a message dated 3/15/2017 7:57:11 P.M. Pacific Daylight Time, marrigo@noworldborders.com writes:

Kevin please see attached.

Regards

Michael Arrigo

**Exhibit A (Reply) - Page 0015**

**Michael Mirando**

| | |
|---|---|
| **From:** | Michael Mirando <mike@holterlabs.com> |
| **Sent:** | Saturday, April 8, 2017 6:09 PM |
| **To:** | 'Michael Arrigo' |
| **Cc:** | 'Ward Jewell' |
| **Subject:** | Proof of Payment |
| **Attachments:** | Final Payment.pdf |

Michael,

Attached you will find proof of payment for the final amount regarding US v Mirando as requested.

Thank you for everything.

-Mike Mirando
949-466-3015

Exhibit A (Reply) - Page 0016

**Michael Mirando**

| | |
|---|---|
| **From:** | WarLawyer@aol.com |
| **Sent:** | Wednesday, April 12, 2017 10:31 AM |
| **To:** | mike@holterlabs.com |
| **Subject:** | Re: Witness NOT taking Stand |

He is being told that he most likely will not. But we may still receive addittional  evidence prior to trial.

And we discussed why we needed his involvement,,,,

In a message dated 4/12/2017 8:21:55 A.M. Pacific Daylight Time, mike@holterlabs.com writes:

Kevin,

I have paid him just over $51,000 so far with this last invoice. Does he know that he is not taking the stand? The last time I spoke to him, he seemed to think that he was.

-Michael Mirando

**From:** WarLawyer@aol.com [mailto:WarLawyer@aol.com]
**Sent:** Wednesday, April 12, 2017 7:55 AM
**To:** mike@holterlabs.com
**Subject:** Re: Updated hours and balance due - Arrigo

So, the full $31k has been paid?

In a message dated 4/12/2017 7:28:44 A.M. Pacific Daylight Time, mike@holterlabs.com writes:

Kevin,

As I stated before, I did not have the credit to put this on my credit card. I sent a check IN FULL and he had an issue with this. This invoice has been paid.

You need to stop sending me these panic e-mails and trust me. I have never NOT paid a bill.

**Exhibit A (Reply) - Page 0017**

-Michael Mirando

---

**From:** Warlawyer [mailto:warlawyer@aol.com]
**Sent:** Wednesday, April 12, 2017 4:09 AM
**To:** mike@holterlabs.com
**Subject:** Fwd: Updated hours and balance due - Arrigo

What r u waiting on?  We are wasting an entire while u do this

Sent from my iPhone

Begin forwarded message:

> **From:** Michael Arrigo <marrigo@noworldborders.com>
> **Date:** April 12, 2017 at 3:10:53 AM EDT
> **To:** Kevin Mc Dermott <WarLawyer@aol.com>
> **Subject: Updated hours and balance due - Arrigo**
>
> Kevin, attached for your client is the updated statement of hours, billings, payments received and balance.
>
> We need the balance of the retainer paid to continue.  Michael Mirando has paid $10,000 of the total invoice so far.
>
> I have more to share this week that should be helpful.
>
> Thank you,
>
> Michael Arrigo
>
> 949-633-5664 mobile
>
> 949-335-5580 x101 office
>
> marrigo@noworldborders.com

**Exhibit A (Reply) - Page 0018**

**Payments Submitted**

 No World Borders
Xando

Your $31,050.00 payment has been submitted.

**Memo**   Final Payment for US v Mirando

**Confirmation**   LKH38-W7C6L

 CHECK

DELIVER BY

**Apr 14**

**Payment Total** $31,050.00

**Exhibit A (Reply) - Page 0019**

## Michael Mirando

| | |
|---|---|
| **From:** | WarLawyer@aol.com |
| **Sent:** | Tuesday, April 18, 2017 9:23 AM |
| **To:** | mike@holterlabs.com |
| **Subject:** | Re: Questions |

In a message dated 4/18/2017 9:16:01 A.M. Pacific Daylight Time, mike@holterlabs.com writes:

.    Can we bring up to the jury that this case was not handled like a normal white collar case? We need to convey to the Jury what I have been through that that the government has over stepped their bounds.

2.    Can we bring up that Crowley hasn't filed tax returns since 2002? This will go against their claim that I was instructing him not to file tax returns; which is untrue. He didn't file them even before we started in business in 2005. I know that we have Crowley not filing since 2008, but that was just because of the statute of limitations. **will get done**

3.    If he wanted his story heard, why did he refuse to show up for 4 scheduled civil depositions? Now he wants to talk. This is purely money driven and the jury HAS to know his history. **will get done**

4.    Jim Brown (Software Guy) states that these devices can record up to 15 days. Should we get a statement from him on this and that I know nothing about this software? **But not 30 days.**

5.    Will the jury know how much time that I will be facing if I am found guilty? I can't see them wanting to send be away for 51 months over this non-sense. Too much doubt. **no**

6.    Did they supply you all of the requested documents and information that you asked for when you declined their plea offer? **yes**

7.    My name was on everything due to Stan's poor credit. Bank account, credit card, office lease, billing software, fax software, everything!. This is the same thing that he is doing with Steve Burns at Specialized Medical.

8.    Murrieta Medical Supply was Stan's and Frank Flints idea (Parsons tax guy) he had me set this up due to his tax issues. Statute of limitations? Its been SIX YEARS since we used this company. If we can't mention the Cast messages, how can they admit this? **This has nothing to do with taxes but everything to do with false invoices......** this is WHY you cannot get on the stand. **If the jury hears that you participated in a scam to bury taxes through false invoices, they will convict you on the spot**

9.    Our reports provide all services that we billed for. The physician has billing sheets and descriptions of the codes used in the material that we sent them when they requested our services. See attached.

10.    The insurance company gets a description of codes billed with every claim we filed.

11.    Even if Crowley says he did not Bill. He still knew all of the billing codes in order for us to bill. That's all the knowledge that is needed for us to bill. He knew the codes very well as he has been in the business for 20 years.

12.    Can't we bring up Casts messages since Cast admits that Crowley instructed him what to write in the e-mails and what to say on the voicemails? Cast admits this in his depo. **we can**

13.    The government never interviewed Jim Brown (Scanning Software) or the person that controls our Server and developed our transmission software. His name is Ryan Matson out of Texas. **This will be covered**

**Exhibit A (Reply) - Page 0020**

14.    Can we get Specialized Medicals banking records to support that Crowley is working for Steven Burns.
Cast says this in his depo. Can we admit this? **No**

15.    Can we pick apart the Grand Jury transcripts? **Just sent it to you**

----------------------------------------

Exhibit A (Reply) - Page 0021

**Michael Mirando**

| | |
|---|---|
| **From:** | WarLawyer@aol.com |
| **Sent:** | Wednesday, April 19, 2017 8:34 AM |
| **To:** | mike@holterlabs.com |
| **Subject:** | Expert review |
| **Attachments:** | Bk Holter tax returns.pdf; PatientAnalysisandLandisExample.xlsx |

Michael,

I have attached an analysis done for one patient who is listed in the indictment.  The basis of this analysis comes from dox that Arriego retrieved personally. Hit the Landis button and review.

Also,  I have attached Holter Lab tax returns that were part of the Crowley bankruptcy file.  We will discuss later this am.

*Kevin Barry Mc Dermott, Esq.*

*Law Offices of Kevin Barry Mc Dermott*
300 Spectrum Center Drive Suite 1420
Irvine, California 92618

949-596-0102
949-861-3825 facsimile
*WarLawyer@aol.com*
*WarLawyer.com*

*(please note – as of February 2, 2015, our building address changed from 8001 Irvine Center Drive to 300 Spectrum Center Drive due to a local street readdressing.  This is an address change only, not a physical relocation of our offices.)*

The foregoing message(s) is confidential and intended for the designated recipient only. The foregoing information may be protected by attorney-client and/or work product privilege. Accordingly, if you have received this message in error, please contact this office immediately, and delete the message without reviewing, copying, or making further use of the information contained therein.

Confidentiality Notice: This email message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited.

**Exhibit A (Reply) - Page 0022**